IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBIN D. NICHOLS,                          CIVIL ACTION

        Plaintiff,|

v.                                         No. 05-055 KAJ

BENNETT DETECTIVE &
PROTECTIVE AGENCY, INC.,
A Delaware corporation and                 JURY TRIAL DEMANDED
ALLEN'S FAMILY FOODS, INC.,
A Delaware corporation,

        Defendants.


**OPENING BRIEF IN SUPPORT OF DEFENDANT
BENNETT DETECTIVE & PROTECTION AGENCY, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**


MURPHY SPADARO & LANDON
ROGER D. LANDON (ID#: 2460)
PHILIP T. EDWARDS(ID#: 4393)
1011 Centre Road, Suite 210
Wilmington, DE 19805
(302) 472-8100

Attorneys for defendant
Bennett Detective &
Protection Agency, Inc.


January 27, 2006

## TABLE OF CONTENTS

NATURE AND STAGE OF PROCEEDINGS........................... 1

SUMMARY OF ARGUMENT....................................... 1

STATEMENT OF FACTS....................................... 3

ARGUMENT................................................. 8

I.   THE SUMMARY JUDGMENT STANDARD....................... 8

II.  CLAIMS UNDER 42 U.S.C. § 1981 AND 19 Del. C. § 710 ET
     SEQ. ARE INDISTINGUISHABLE FOR PURPOSES OF SUMMARY
     JUDGMENT........................................... 9

III. PLAINTIFF'S ALLEGATIONS OF RACE AND SEX
     DISCRIMINATION PURSUANT TO 42 U.S.C. § 1981 AND
     19 Del. C. § 710 ET SEQ. FAIL PURSUANT TO THE
     STANDARD ESTABLISHED FOR SUCH CLAIMS UNDER
     MCDONNEL DOUGLAS CORPORATION V. GREEN AND ITS
     PROGENY............................................ 9

     a.   Plaintiff cannot establish a prima facie
          case of discrimination because she cannot
          establish she suffered an adverse employment
          action resulting in her constructive discharge,
          and her transfer does not create an inference
          of discrimination because her position was
          filled by an African American woman........... 10

     b.   Bennett's legitimate non-discriminatory reason
          for transferring plaintiff from the Allen's
          plant was that Allen's demanded she be
          transferred.................................. 16

CONCLUSION.............................................. 22

**TABLE OF AUTHORITIES**

**CASE**                                                                      **PAGE**

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).. 8, 9

Andrews v. City of Philadelphia, 895 F.2d 1469 (3d Cir.
1990)................................................. 13

Brown v. Grabowski, 922 F.2d 1097 1111 (3d Cir. 1990)
cert. denied,501 U.S. 1218 (1991)........................ 8

Cardenas v. Massey, 269 F.3d 251 (3d Cir. 2001)........ 12

Celotex Corp. v. Catrett, 477 U.S. 317 (1986)........ 8, 9

Connors v. Chrysler Fin. Corp., 160 F.3d 971
(3d Cir. 1998)...................................... 11,15

Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp.,
812 F.2d 141 (3d Cir. 1987)............................ 8

Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)......... 16

Goss v. Exxon Office Systems, 747 F.2d 885
(3d Cir. 1984)......................................... 13

Jones v. School District of Philadelphia, 198 F.3d 403
(3d Cir. 1999)....................... 9,11, 15, 16, 20, 21

Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101 (3d
Cir. 1997)............................................ 16

Marcangelo v. Boardwalk Regency Corp., 847 F. Supp. 1222
(D.N.J. 1994)......................................... 9

McDonnell Douglas Corporation v. Green. McDonnell Douglas
Corporation v. Green, 411 U.S. 792 (1973)........... 2, 10

Parker v. State of Delaware Department of Public Safety,
11 F.Supp. 467 (D. Del. 1998)..................... 13, 14

Pivirotto v. Innovative Sys., inc., 191 F.3d 344 (3d Cir.
1999)................................................. 11

Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir.
1997)................................................. 12

Sheridan v. E.I. DuPont de Nemours and Co.,
100 F.3d 1061 (3d Cir. 1996).................... 11, 15, 16

Storey v. Burns International Society, 390 F.2d 760 (3d
Cir. 2004)........................................ 11, 12

<u>Torre v. Casio, Inc.</u>, 42 F.3d 825 (3d Cir. 1994)........ 12

<u>Waldron v. S.L. Industries, Inc.</u>, 56 F.3d 491 (3d Cir. 1995)............................................. 11, 15

**STATUES**

19 <u>Del. C.</u> § 710 <u>et</u> <u>seq</u>............................. 1, 2, 9

28 U.S.C. § 1441(b)..................................... 1

42 U.S.C. § 1981.................................... 1, 2, 9

FED. R. CIV. P. 56(c).................................... 8

## NATURE AND STAGE OF PROCEEDINGS

On December 28, 2004, plaintiff filed a complaint in the Superior Court for the State of Delaware alleging violations of 42 U.S.C. § 1981 and 19 Del. C. § 710 et seq. against defendants Bennett Detective & Protection Agency, Inc. ("Bennett") and Allen's Family Foods, Inc. ("Allen's").  On February 2, 2005, the matter was removed to United States District Court for the District of Delaware pursuant to 28 U.S.C § 1441(b).  On January 3, 2006, the Court entered an Order amending the original Scheduling Order, which changed the discovery cut-off to January 6, 2006 and the dispositive motion deadline to January 27, 2006.  Trial is scheduled in this matter for July 10, 2006.  Discovery has been completed.  Bennett filed the instant Summary Judgment Motion in accordance with the amended Scheduling Order.

## SUMMARY OF ARGUMENT

1.   Defendant Bennett Detective & Protection Agency, Inc. has moved for summary judgment against plaintiff Robin Nichols ("Plaintiff").  It seeks a ruling that in this discrimination-related dispute between the plaintiff and Bennett, there are no genuine issues of material fact that would permit plaintiff to prevail on the allegations

1

in her complaint under 42 U.S.C. § 1981 and 19 Del. C. §
710 et seq. against Bennett.

     2.   Plaintiff's allegations of racial and sex
discrimination against Bennett pursuant to 42 U.S.C. § 1981
and 19 Del. C. § 710 et seq. fail at every stage of the
analysis for such claims established by the United States
Supreme Court's holding in McDonnell Douglas Corporation v.
Green. McDonnell Douglas Corporation v. Green, 411 U.S. 792
(1973).

     3.   Plaintiff cannot establish a prima facie case of
discrimination against Bennett because she cannot establish
an adverse employment action resulting in her constructive
discharge.

     4.   Plaintiff's transfer from the Allen's plant did
not create an inference of discrimination because her
position was filled by another black female.

     5.   Bennett had a legitimate non-discriminatory
purpose for transferring plaintiff from the Allen's site.
Namely, Allen's, Bennett's client, demanded she be
transferred from the site.

     6.   Plaintiff cannot establish by a preponderance of
the evidence that the legitimate non-discriminatory reason
for transferring plaintiff from the Allen's site was a
pretext for discrimination.

## STATEMENT OF FACTS

Bennett is a business that provides security guards to about 50 or 60 different customers at different locations.  Ex. A. (Mark Habicht's Deposition) at 7. Bennett provided security guards to Allen's at several of its locations, including the Harbeson plant where plaintiff worked as a security guard.  Ex. A. at 13. Plaintiff is a thirty seven year old black female.  Ex. B. (Robin Nichols' Deposition) at 22 – 23.  She began her employment with Bennett as a security guard on July 30, 2001 at the Harbeson plant.  Ex. C. (Wayne Keller's Deposition) at 9.  Plaintiff was promoted by Bennett to supervisor at the Harbeson plant and continued in her position as supervisor until she was transferred from the site in December 2003.  Ex. A. at 17; Ex. C. at 13.

As the supervisor, plaintiff was responsible for overseeing the other Bennett employees at the Allen's site, including several older white males. Ex. B. 39, 40. One of these older white males under plaintiff's supervision was Joseph Josh Whiteman.  Ex. B. 39, 40.  On December 11, 2003, plaintiff was involved in a work related altercation with Mr. Whiteman as a result of which plaintiff called the police to the Allen's plant. Ex. B. 39 – 50.  During her time at Allen's, plaintiff had

similar work related altercations with her co-workers,
including two black females named Diane Stokes and Linda
Fooks.  Ex. C. 11 – 13.  These incidents are documented by
Bennett in its response to plaintiff's EEOC Complaint.
Ex. D. (Bennett Answer to Plaintiff's EEOC Complaint).
Plaintiff's altercation with Mr. Whiteman resulting in the
police being called to the plant was the "last straw" for
Allen's and resulted in Allen's demanding Bennett transfer
plaintiff from the plant.  Ex. A. at 20 – 26; Ex. C at 17.
But, Allen's denies it demanded plaintiff be removed from
the plant.  Rather, it claims it acquiesced in Bennett's
offer to remove plaintiff after learning of Allen's
displeasure with plaintiff over the Whiteman incident.

   Greg Miller was the Human Resource Director at the
Allen's Harbeson location.  Ex. E. (Greg Miller's
Deposition) at 4.  As the director of human resources at
the plant, it was Mr. Miller's responsibility to deal with
plaintiff and the other Bennett security guards at the
plant.  Ex. E. at 8.  Bennett had a written contract with
Allen's that stated: all the security guards at the plant
were Bennett employees as opposed to Allen's employees.
Ex. A. at 32.

   Although plaintiff did not have a written contract
*per se* with Bennett, she was required by Bennett to sign a

4

document called "Conditions of Employment".  Ex. F.
(Conditions of Employment).  It is undisputed that the
Conditions of Employment granted Bennett the right to
transfer plaintiff from one location to another for any
reason, whenever it deemed necessary.  Ex. F.

Plaintiff's altercation with Mr. Whiteman and
plaintiff's ultimate transfer from the plant at the
request of Allen's occurred as follows.  On December 11,
2003, plaintiff was on the shift that ended at 3:00 p.m.
Ex. B. at 39 – 42.  Mr. Whiteman came in a little bit
before 3:00 p.m. to start his shift, which began at 3:00
p.m.  Ex. B. at 39 - 42.  Greg Miller contacted the
security guard office and told plaintiff that he wanted to
see Mr. Whiteman.  Ex. B. 39 – 42.  When the plaintiff
told Mr. Whiteman that Mr. Miller wanted to see him in his
office, Mr. Whiteman responded that he would not go to Mr.
Miller's office because he had not begun his shift yet.
Ex. B. 39 – 42.  As a result, plaintiff and Mr. Whiteman
got into an argument during which plaintiff claims that
Mr. Whiteman and her got into a pushing match.  Ex. B. 39
– 42.  Plaintiff then called the Delaware State Police.
Ex. B. 39 – 42.  The police arrived at the plant but
plaintiff did not press charges against Mr. Whiteman.  Ex.
B. 39 – 42.

After learning of the incident and the police presence at his plant, Greg Miller contacted Mark Habicht who was a Vice President at Bennett. Ex. A. at 19. Mr. Miller told Mr. Habicht that the police were on his property because of the plaintiff, and Mr. Miller demanded to Mr. Habicht that "Enough is enough, she's gotta go." Ex. A. at 20. Mr. Habicht then called his co-vice president at Bennett, Wayne Keller, and informed him of the situation. Ex. A. at 22. Mr. Habicht and Mr. Keller met with Mr. Miller at Allen's the next day about the situation. Ex. A. at 22. Mr. Miller began the meeting by saying something to the effect of, "I like you guys, but she's gotta go." Ex. A. at 23; Ex. C. at 16, 17. Not wanting to impair their business relationship with Allen's, who was a good client, Bennett ceded to Mr. Miller's demand to transfer plaintiff from the site. Ex. A. at 26, 27; Ex. C. at 21, 22.

This was not the first time Allen's had demanded Bennett remove a guard from its plant. Ex. A. at 41, 42. Previously, Mr. Miller demanded Bennett remove a guard named David Leggings, who was a black male, and a guard named Daniel Steel, who was a white male. Ex. A. at 41, 42. In these instances, Bennett transferred Mr. Leggins and Mr. Steele from the Allen's site, even though it was a

6

disruption to Bennett's business, because Allen's was the client and needed to be kept happy.  Ex. A. at 15; Ex. C. at 30, 39, 40.

With Mr. Miller's permission, Bennett let plaintiff stay through the end of her weekly shift, which ended on December 15, 2003, so as not to cause any further problems at the Allen's plant.  Ex. A. at 23, 24; Ex. C. 21, 22. On December 15, 2003, Wayne Keller spoke to plaintiff by phone and told her she was going to be re-assigned.  Ex. C. at 29.   Mr. Keller did not state the reason for the transfer in his telephone conversation with plaintiff. Ex. C. at 29.

A few days later, Mr. Keller offered plaintiff a thirty-two hour a week job at the Perdue Plant.  Mr. Keller informed plaintiff that she needed to attend training before she started her job at Perdue. Ex. C. at 32 – 33.  Plaintiff had been working forty hours a week at Allen's, so Mr. Keller informed her that he would try to find her another eight hours at another location.  Ex. C. at 33, 34.  Plaintiff called him back the night before she was to report for training at Perdue and said she was sick.  Ex. B. at 105; Ex. C. at 33.  A few days later, Mr. Keller found her a position at the Sussex County Family Court. Ex. B at 106.  Plaintiff worked at the Family Court

for a couple of days and then gave her two week notice to Bennett that she was quitting on January 5, 2004.  Ex. B at 29.

Back at Allen's, Bennett filled plaintiff's vacant supervisor's position with Linda Fooks, a black female. Ex. A. at 43, 44.

## ARGUMENT

### I.   THE SUMMARY JUDGMENT STANDARD.

Summary judgment is appropriate where there are no genuine issues of material fact, and the evidence is so one-sided that a party is entitled to judgment as a matter of law.  Brown v. Grabowski, 922 F.2d 1097, 1111 (3d Cir. 1990), cert. denied, 501 U.S. 1218 (1991) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986)).  See also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (same).  The Court will consider the pleadings, admissions on file and affidavits in making its determination.  FED. R. CIV. P. 56(c).

To be sure, the moving party initially bears the burden of showing that no genuine issues of material fact exist.  Celotex, 477 U.S. at 423; Equimark Commercial Fin. Co. v. C.I.T. Fin. Servs. Corp., 812 F.2d 141, 144 (3d Cir. 1987).  If a properly supported motion shows no

8

genuine issues of material fact, however, the burden shifts to the nonmoving party to prove the existence of genuine issues of material fact. <u>Anderson</u>, 477 U.S. at 248. Further, the nonmoving party cannot create a genuine issue for trial with bare assertions, conclusory allegations, vague statements or general denials. <u>See Celotex</u>, 477 U.S. at 324. <u>See also Marcangelo v. Boardwalk Regency Corp.</u>, 847 F. Supp. 1222, 1226 (D.N.J. 1994) (same).

**II.  CLAIMS UNDER 42 U.S.C. § 1981 AND 19 Del. C. § 710 ET SEQ. ARE INDISTINGUISHABLE FOR PURPOSES OF SUMMARY JUDGMENT.**

The standards for determining a summary judgment motion for claims under 42 U.S.C. § 1981 and 19 <u>Del. C.</u> § 710 <u>et seq.</u> are identical. <u>Jones v. School District of Philadelphia</u>, 198 F.3d 403, 409 (3d Cir. 1999) (holding the standards for claims pursuant to 42 U.S.C. § 1981 and a similar Pennsylvania statute are the same).

**III.  PLAINTIFF'S ALLEGATIONS OF RACE AND SEX DISCRIMINATION PURSUANT TO 42 U.S.C. § 1981 AND 19 DEL. C. § 710 ET SEQ. FAIL PURSUANT TO THE STANDARD ESTABLISHED FOR SUCH CLAIMS UNDER MCDONNELL DOUGLAS CORPORATION V. GREEN AND ITS PROGENY.**

The analysis for a claim of discrimination made pursuant to 42 U.S.C. § 1981 and 19 <u>Del. C.</u> 710 <u>et seq.</u> proceeds in three stages: first, the plaintiff must establish a prima facie case of discrimination; second, if

9

the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate some legitimate, non-discriminatory reason for the employee's rejection; third, if the defendant meets his or her burden, the plaintiff must prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were untrue and were a pretext to the discrimination. McDonnell Douglas Corporation v. Green. McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973).

In the present action, Plaintiff cannot satisfy this standard because she cannot meet the elements to establish a prima facie case of discrimination, nor can she show by a preponderance of the evidence that Bennett's legitimate non-discriminatory reason for transferring plaintiff from the Allen's plant was a pretext to discrimination.

> a.   **Plaintiff cannot establish a prima facie case of discrimination because she cannot establish she suffered an adverse employment action resulting in her constructive discharge, and her transfer does not create an inference of discrimination because her position was filled by an African American woman.**

In order to establish a prima facie case of discrimination, plaintiff must establish the following: first, she is a member of a protected class; second she is qualified for the position; third, she suffered an adverse employment action resulting in her being denied a

10

position, her termination or her constructive discharge;
lastly, this must all occur under circumstances that give
rise to an inference of unlawful discrimination such as
might occur when the position is filled by someone not of
the protected class.  Sheridan v. E.I. DuPont de Nemours
and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc); Waldron
v. S.L. Industries, Inc., 56 F.3d 491 (3d Cir. 1995);
Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir.
1998); Jones, 198 F.3d at 410 - 412.  Plaintiff has the
burden of meeting this standard by a preponderance of the
evidence.  Storey v. Burns International Society, 390 F.2d
760, 764 (3d Cir. 2004) (holding plaintiff failed to
establish a prima facie case by failing to establish an
adverse employment situation by a preponderance of the
evidence).  The standard for determining a prima facie
case is not a rigid standard and depends highly on the
facts of the specific case.  Pivirotto v. Innovative Sys.,
Inc., 191 F.3d 344, 352 (3d Cir. 1999).  Although this
standard is highly fact specific, plaintiff must generally
present evidence that "raises an inference of
discrimination".  Storey, 390 F.2d at 764.

    Although the Third Circuit has held that job
transfers may be considered an adverse employment action
for the purposes of meeting the third element of the prima

facie case standard, in this specific case plaintiff's
transfer from the Allen's plant, by Bennett at the request
of Allen's, did not result in the constructive discharge
of the plaintiff from Bennett or create an inference of
discrimination.  Torre v. Casio, Inc., 42 F.3d 825 (3d
Cir. 1994).  Since Torre, the Third Circuit has defined
adverse employment action under Title VII as "an action by
an employer that is "serious and tangible enough to alter
an employee's compensation, terms, conditions or
privileges of employment."" Storey, 390 F. Supp. at 764
(quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir.
2001)) (quoting Robinson v. City of Pittsburgh, 120 F.3d
1286, 1300 (3d Cir. 1997)).

        In the instant matter, plaintiff alleges that she was
subjected to an adverse employment action when she was
transferred from the Allen's plant.  Plaintiff further
alleges that her transfer from Allen's forced her to quit
on January 4, 2005, which amounted to her constructive
discharge from Bennett.  But, there are no facts at issue
that support plaintiff's claim that her transfer caused
her constructive discharge or created an inference of
discrimination.

        "A constructive discharge claim requires the
establishment of a hostile work environment followed by

proof that the conditions created by the hostile work
environment were so intolerable a reasonable person
subject to them would resign." Parker v. State of
Delaware Department of Public Safety, 11 F.Supp. 467, 476
(D. Del. 1998) (holding plaintiff could not establish a
constructive discharge claim based on a hostile work
environment from two isolated incidents of sex
discrimination); Goss v. Exxon Office Systems, 747 F.2d
885, 887-888 (3d Cir. 1984).

In order to establish a hostile work environment,
plaintiff must prove: first, she suffered intentional
discrimination; second, the discrimination was pervasive
and regular; third, the discrimination had a detrimental
affect on her; fourth, the discrimination would
detrimentally affect a reasonable person; finally, the
existence of respondeat superior liability. Parker, 11 F.
Supp. at 475, (citing Andrews v. City of Philadelphia, 895
F.2d 1469, 1472 (3d Cir. 1990)).

In the instant matter, plaintiff's discrimination
claim is based on her being subjected to an adverse
employment action (her being transferred) that resulted in
her constructive discharge from Bennett. Plaintiff cannot
establish an adverse employment action resulting in her
constructive discharge for several reasons. First, the

13

facts taken in a light most favorable to plaintiff do not establish anything close to a hostile work environment necessary to support a constructive discharge claim. The record is devoid of any evidence that plaintiff suffered pervasive and regular discrimination at the hands of Bennett or Allen's. Plaintiff's entire claim of constructive discharge is based on her transfer from Allen's because of the December 11, 2003 altercation with Mr. Whiteman, which had no racial or sexual undertones. By all accounts, plaintiff and Mr. Whiteman's disagreement dealt with a work related matter.

Further, if two incidents of sexual discrimination could not support a constructive discharge claim in Parker, then one incident having nothing to do with plaintiff's race or sex cannot establish a claim of constructive discharge in the instant matter. Parker v. State of Delaware Department of Public Safety, 11 F.Supp. 467(D. Del. 1998). As such, there are no facts in dispute that create an inference of pervasive and regular discrimination by Bennett. Therefore, plaintiff cannot satisfy the third element of her prima case that she suffered an adverse employment action resulting in her constructive discharge.

Plaintiff also failed to establish the final element of her prima facie case: that the evidence taken in a light most favorable to the plaintiff shows that her resignation from Bennett occurred under circumstances that give rise to an inference of unlawful discrimination such as might occur when the position is filled by someone not of the protected class.  Sheridan v. E.I. DuPont de Nemours and Co., 100 F.3d 1061 (3d Cir. 1996) (en banc); Waldron v. S.L. Industries, Inc., 56 F.3d 491 (3d Cir. 1995); Connors v. Chrysler Fin. Corp., 160 F.3d 971, 974 (3d Cir. 1998); Jones, 198 F.3d at 410 - 412.  It is undisputed that Bennett filled plaintiff's vacant supervisor's position at Allen's with a black female.  As such, plaintiff's replacement with a black female actually creates the opposite inference that plaintiff's transfer had nothing to do with her race or sex.  Therefore, the circumstances surrounding plaintiff's transfer do not give rise to an inference of discrimination needed to establish the fourth element of her prima facie case of discrimination against Bennett.

> **b.   Bennett's legitimate non-discriminatory reason for transferring plaintiff from the Allen's plant was that Allen's demanded she be transferred.**

Assuming, *arguendo,* the Court finds plaintiff has established her prima facie case of discrimination, the burden shifts to Bennett to put forth a legitimate non-discriminatory reason why plaintiff was transferred. Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d. Cir. 1997). Plaintiff may defeat a motion for summary judgment by pointing to direct or circumstantial evidence that would enable a reasonable fact finder to either: "(1) disbelieve the employer's articulated reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determining cause of the employer's action." Jones, 198 F.3d at 410 - 412, (holding a school's proffered reasons for transferring a teacher were not a pretext to discrimination and the teacher could not establish the school's motives were pre-textual simply on his belief that he was discriminated against without actual proof); (citing Fuentes v. Perskie, 32 F.3d 759 (3d Cir. 1994)); Sheridan, 100 F.3d at 1067. Here, plaintiff can point to no evidence that would cause a reasonable fact-finder to surmise that it was more likely than not that Bennett's

proffered legitimate non-discriminatory reason for
transferring plaintiff was a pretext to discrimination.

Bennett's legitimate non-discriminatory reason for
transferring plaintiff was that its client, Allen's,
demanded she be transferred from its plant. Plaintiff had
a history of altercations with other employees at the
Allen's plant.  Ex. C. 11 – 13; Ex. D.  After two of these
altercations, plaintiff found it necessary to call the
police to the site.  Ex. D.  Whether her actions in
calling the police were legitimate or unnecessary, Greg
Miller from Allen's was not pleased with the police
presence at his facility.  Upon learning that plaintiff
called the police to the site after her altercation with
Mr. Whiteman, Mr. Miller demanded Bennett transfer her
from the site.  Mr. Miller's demand that she be
transferred from the site had nothing to do with
plaintiff's race or sex: he was simply fed up with her
antics.

Mr. Miller's demand placed Bennett in a very
difficult situation.  But, as Mr. Habicht and Mr. Keller
testified, Allen's was a valuable client.  Bennett was not
in a position to tell Allen's "no" in this situation.  If
Bennett rejected Mr. Miller's demand, Mr. Habicht and Mr.
Keller felt very strongly that Bennett would not only lose

17

their account at the Harbeson plant but their accounts at the other Allen's facilities as well.  Ex A. at 40; Ex. C. at 21 - 23.  This was not a risk Bennett or any reasonable business man, who wanted to stay in business, would be willing to take in this position.  And since Mr. Miller's demand was reasonable and Bennett's Conditions of Employment granted Bennett the right to transfer plaintiff at anytime and for any reason, Bennett agreed to transfer plaintiff.

In light of plaintiff's previous altercations with other employees at the plant and Mr. Miller's stern demand that plaintiff be transferred, Bennett handled this situation in a manner deferential to plaintiff.  Bennett did not fire the plaintiff outright, which it could have. Instead, Bennett worked diligently to provide plaintiff with another position during the holiday season when many facilities are closed and security jobs dry up.  In fact, Bennett placed plaintiff in another position at the Purdue plant within days of her removal from the Allen's plant, but this was not good enough for plaintiff and she called in sick.  Not stopping there, Bennett then immediately sought to place plaintiff in a position at the Family Court, but plaintiff rejected this position as well and immediately quit.

It is anticipated that plaintiff will attempt to ignore the reasonable steps taken by Bennett to find plaintiff another position, plaintiff's questionable work history, Allen's demand that she be transferred, and that plaintiff was replaced by a black female. It is further anticipated plaintiff will hinge her entire argument that she was subjected to unlawful discrimination on the fact that plaintiff, and not Mr. Whiteman, was transferred after their altercation. But, plaintiff's refusal to acknowledge these facts does not mean they do not exist or defeat her claim.

If Bennett's reason for transferring plaintiff from the plant was solely because she was a black female, logic dictates several things: first, Bennett would never have promoted plaintiff to supervisor, second, Bennett would have fired plaintiff to forever end its relationship with her, and third, Bennett would not have replaced plaintiff with another black female. As the record shows, Bennett not only continued its employment relationship with plaintiff after the transfer, but Bennett worked diligently to find her a new position. Bennett did not create a hostile work environment to drive her from the company. It sought to make her transfer as smooth as possible and ensure that she would be transferred to a

19

work environment that would enable her to thrive.  Also,
Bennett had many white males to fill her supervisor's
position with, but Bennett chose a black female to replace
her.  Further, plaintiff's work history with Bennett is
devoid of any prior incidents that give rise to even the
inference of discrimination.  Plaintiff's work history
with Bennett is actually highlighted by her promotion to
supervisor over other white males.  These facts clearly do
not create the inference that plaintiff's transfer was a
result of discrimination.

     It is further anticipated that plaintiff will argue
in the alternative that Allen's demanded Bennett to
transfer plaintiff from its plant because plaintiff was a
black female, and Bennett acquiesced knowing of Allen's
discriminatory purpose.  But, there is no evidence in the
record, beyond plaintiff's beliefs and conclusory
allegations that supports this argument.  This situation
is analogous to the situation in Jones.  Jones v. School
District of Philadelphia, 198 F.3d 403(3d Cir. 1999).  In
Jones, the Court granted a defendant's summary judgment
motion because plaintiff did not put forth any evidence,
beyond plaintiff's own unsupported beliefs, that the
legitimate reason put forth by the defendant for an
adverse employment action was a pretext to discrimination.

Jones, 198 F.3d at 412 – 415.  This holding must be applied to mean that in the instant matter plaintiff's claim that Bennett's proffered legitimate reason for transferring her was a pretext for discrimination cannot survive without any evidence beyond plaintiff's own conclusory and unsupported beliefs.

Further, if Allen's demanded plaintiff be removed from the plant because she was a black female, logic dictates that Bennett would not take the first step acquiescing to Allen's discriminatory demand by transferring plaintiff, but then anger its client by filling plaintiff's position with another black female. It is clear based on the facts taken in a light most favorable to plaintiff that Bennett's legitimate non-discriminatory reason for transferring plaintiff was not a pretext to discrimination.

## CONCLUSION

For the reasons set forth above, defendant Bennett Detective & Protective Agency, Inc. respectfully requests the entry of summary judgment in its favor and against plaintiff.

Respectfully submitted,

MURPHY SPADARO & LANDON

/s/ Roger D. Landon
Roger D. Landon (ID #: 2460)
Philip T. Edwards (ID #: 4393)
1011 Centre Road, Suite 210
Wilmington, DE 19805

Attorneys for defendant
Bennett Detective & Protective
Agency, Inc.

January 27, 2006

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ROBIN D. NICHOLS, | CIVIL ACTION |
| Plaintiff, | |
| v. | No. 05-055 KAJ |
| BENNETT DETECTIVE & PROTECTIVE AGENCY, INC., A Delaware corporation and ALLEN'S FAMILY FOODS, INC., A Delaware corporation, | JURY TRIAL DEMANDED |
| Defendants. | |

**CERTIFICATE OF SERVICE**

I, Roger D. Landon, Esq., do hereby certify that on this 27th day of January, 2006, two copies of the foregoing OPENING BRIEF IN SUPPORT OF DEFENDANT BENNETT DETECTIVE & PROTECTIVE AGENCY, INC.'S MOTION FOR SUMMARY JUDGMENT were e-filed and delivered in the manner indicated to the following individual(s):

**<u>Via First Class Mail</u>**
William D. Fletcher, Jr., Esq.
Schmittinger & Rodriguez
414 S. State Street
P.O. Box 497
Dover, DE  19903

**<u>Via Hand Delivery</u>**
Matthew F. Boyer, Esq.
Connolly Bove Lodge & Hutz
1007 N. Orange Street
Wilmington, DE  19801

**<u>Via First Class Mail</u>**
Arthur M. Brewer, Esq.

127867

Laura A. Pierson Scheinberg, Esq.
Shawe & Rosenthal, LLP
Sun Life Building, 11th Floor
20 S. Charles Street
Baltimore, MD  21201


MURPHY SPADARO & LANDON


/s/ Roger D. Landon
Roger D. Landon (ID #: 2460)
Philip T. Edwards (ID #: 4393)
1011 Centre Road, Suite 210
Wilmington, DE 19805

Attorneys for defendant
Bennett Detective & Protective
Agency, Inc.

127867