**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

ROBIN D. NICHOLS,           *

                            *

          Plaintiff      *

                            *

     v.                 *      Civil Action No. 05-55 (KAJ)

                            *

BENNETT DETECTIVE & PROTECTIVE *

AGENCY, INC. and            *

ALLEN FAMILY FOODS, INC.,    *

                            *

         Defendants   *

_____/

**OPENING BRIEF IN SUPPORT OF
DEFENDANT ALLEN FAMILY FOODS, INC.'S
MOTION FOR SUMMARY JUDGMENT**

Matthew F. Boyer (Del. Bar No. 2564)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
(302) 884-6585

Arthur M. Brewer (admitted *pro hac vice*)
Laura A. Pierson Scheinberg
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201
(410) 752-1040

*Counsel for Defendant Allen Family Foods, Inc.*

Dated: January 27, 2006

# **TABLE CONTENTS**

TABLE OF AUTHORITIES ........................................................................................... ii

NATURE AND STAGE OF PROCEEDINGS ................................................................. 1

SUMMARY OF ARGUMENT ....................................................................................... 2

STATEMENT OF UNDISPUTED FACTS ..................................................................... 3

    A.   Background Information. ........................................................................... 3

    B.   Incident Between Ms. Nichols and Mr. Whiteman.................................. 4

    C.   Mr. Miller Contacts and Meets with Bennett Representatives. .............. 6

    D.   Bennett Attempts to Place Ms. Nichols at Another Location................. 9

    E.   Factual Allegations for Ms. Nichols' 42 U.S.C. § 1981 and Defamation
        Claims. ................................................................................................... 10

ARGUMENT .................................................................................................................. 11

    A.   Standards for Summary Judgment ......................................................... 11

    B.   Ms. Nichols Cannot Establish her 42 U.S.C. §1981 Claim Against Allen's........ 12

    C.   Ms. Nichols Cannot State a Claim for Tortious Interference with Her
        Employment Contract with Bennett....................................................... 14

    D.   Ms. Nichols Cannot State a Claim for Defamation. .............................. 17

CONCLUSION................................................................................................................ 19

CERTIFICATE OF SERVICE ....................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby Inc.*
   477 U.S. 242 (1986) ................................................................................................ 11

*Bloss v. Kershner and Labware Inc.*
   2000 WL 303342 *6 (Del. Super. 2000) .................................................................. 19

*Brown v. Philip Morris Inc.*
   250 F.3d 789 (3d Cir. 2001) .................................................................................... 12

*Celotex Corp. v. Catrett*
   477 U.S. 317 (1986) ................................................................................................ 11

*Chauhan v. M. Alfieri Co.*
   897 F.2d 123 (3d Cir. 1990) .................................................................................... 13

*Davis v. West Center City Neighborhood Planning Advisory Committee, Inc.*
   2003 WL 908885 *2 (Del. Super. 2003) .................................................................. 19

*E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.,*
   229 A.2d 499 (Del. Super. 1967) ............................................................................. 19

*Flagg v. Control Data*
   806 F.Supp. 1218 (E.D.Pa.1992), *aff'd,* 998 F.2d 1002 (3d Cir. 1993) ................. 13

*General Bldg. Contractors Ass'n v. Pennsylvania*
   458 U.S. 375 (1982) ................................................................................................ 13

*Gray v. York Newspapers, Inc.*
   957 F.2d 1070 (3d Cir. 1992) .................................................................................. 12

*Griffin Corporate Services, LLC., v. Jacobs et. al.*
   2005 WL 2000775 *4-5 (Del. Ch. 2005) ................................................................. 17

*Irwin & Leighton Inc. v. W.M. Anderson Co.*
   532 A.2d 983 (Del. Ch. 1987) ................................................................................. 15

*Klein v. Sunbeam Corp.*
   94 A. 2d 385 (Del. 1952) ......................................................................................... 18

*Leblanc v. Redrow*
   2001 WL 428686 *2 (Del. Super. 2001) ............................................................. 15, 16

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*
   475 U.S. 574 (1986) ................................................................................................ 12

*Nelson v. Fleet Natl' Bank et al.*
  949 F. Supp. 254 (D. Del. 1996).................................................................. 15

*Olson v. General Elec. Aerospace*
  101 F.3d 947 (3d Cir. 1996) ....................................................................... 12

*Q-Tone Broadcasting, Co. v. Musicradio of Maryland Inc.*
  1994 WL 555391 (Del. Super. 1994) .......................................................... 18

*Ramunno v. Cawley*
  705 A.2d 1029 (Del. Super. 1998)............................................................... 18

*Rizzo v. E.I. Du Pont De Nemours & Co.*
  1989 WL 135651 *1 (Del. Super. 1989) ..................................................... 15

*Spence v. Funk,*
  396 A.2d. 967 (Del. 1978) ........................................................................... 18

*Village of Arlington Heights v. Met. Hous. Dev. Corp.*
  429 U.S. 252 (1977).................................................................................... 13

*Williams v. L.H. Howe*
  2004 WL 2828058 *4 (Del. Super. 2004) .................................................. 19

**Statutes**

42 U.S.C. § 1981................................................................................... 10, 12, 13

Del. Code Ann. tit. 19, §710 .............................................................................. 1

**Other Authorities**

Restatement (Second) of Torts § 558 (1977).................................................... 18

**Rules**

Fed. R. Civ. P. 56............................................................................................... 11

## NATURE AND STAGE OF PROCEEDINGS

Ms. Nichols filed a three count Complaint against Bennett Detective & Protective Agency Inc. (hereinafter Bennett) and Allen Family Foods, Inc. (hereinafter Allen's). Ms. Nichols alleges that Bennett discriminated against her on the basis of her race and sex in violation of Del. Code Ann. tit. 19, §710 *et. seq*. Ms. Nichols further alleges that both Bennett and Allen's discriminated against her on the basis of her race in violation of 42 U.S.C. §1981. Additionally, Ms. Nichols claims that Allen's tortiously interfered with her employment contract with Bennett and defamed her by making false oral statements about her.

Ms. Nichols worked for Bennett and was never an employee of Allen's. Ms. Nichols fails to present any genuine issue of fact necessary to survive summary judgment against her. Specifically, Ms. Nichols made several admissions during her deposition that preclude her from establishing her claims of §1981 race discrimination, tortious interference and defamation. As result, Allen's Motion for Summary Judgment should be granted.

## SUMMARY OF ARGUMENT

Plaintiff cannot sustain her allegations against Allen's.  With respect to Ms. Nichols' claim that Allen's discriminated against her in violation of §1981, she failed to produce any evidence that Allen's had an intent to discriminate against her on the basis of her race.

Ms. Nichols' tortious interference claims must similarly fail.  Plaintiff cannot establish any of the elements for her claim that Greg Miller, Human Resources Manager for Allen's, tortiously interfered with her employment contract with Bennett.  Specifically, Ms. Nichols cannot demonstrate the existence of a contract for employment.  Even if she had an employment contract, she admits that Mr. Miller would have no knowledge of the contract.  She likewise cannot establish an intentional act on the part of Mr. Miller, and even if his request for a transfer is deemed sufficient to constitute an intentional act, Ms. Nichols cannot show that his request was unjustified.  Finally, Ms. Nichols cannot show that she suffered damages as result of Mr. Miller's actions.  Thus, Plaintiff fails to establish any of the elements for a claim of tortious interference and, therefore, this claim must similarly fail.

Plaintiff's defamation allegations must also be dismissed.  Ms. Nichols failed to present any evidence of a defamatory communication.  No claim for defamation can lie without a defamatory communication to a third party.  Therefore, summary judgment is appropriate.

## STATEMENT OF UNDISPUTED FACTS

### A.     Background Information.

Bennett had a contractual arrangement with Allen's to furnish uniformed security officers at the Allen's Harbeson, Delaware and Cordova, Maryland plants. A 054/Keller p. 7; A 043/Habicht p. 12; A 003/Habicht Ex. 1, ¶ 1.[1] The contract provided in relevant part:

> It is mutually understood that Bennett is an independent contractor and that all guards employed by Bennett to perform the services as herein provided are and shall be employees of Bennett and not employees of AFF [Allen's]. Employees of Bennett may not be employed by AFF, for any position, within six months of the termination of this Agreement. If a Bennett employee is hired within the six month period, you will be charged by Bennett a fee of Two Thousand Dollars per employee hired.

A 048-A 049/Habicht p. 32-33; A 004/Habicht Ex. 1 ¶5; A 063/Keller p. 41.

Plaintiff, Robin Nichols, (African-American female) was hired as a Security Guard for Bennett in August 2001. Bennett subsequently promoted her to Supervisor. A 044- A045/Habicht p. 16-17. For the majority of her employment with Bennett, Ms. Nichols was stationed at Allen's Harbeson plant. Ms. Nichols was never an employee of Allen's. A 012/Nichols p. 25.

Mark Habicht (Caucasian Male) is the Vice President of Operations for Bennett. A 042/Habicht p. 5. Wayne Keller (Caucasian Male) is a Vice President for Bennett and is senior to Mr. Habicht. A 053/Keller p. 4. Mr. Habicht and Mr. Keller have

---

[1] References to deposition excerpts are included in the Appendix filed contemporaneously herewith, cited as: A[page-number/[Deponent][transcript page].

overlapping duties and they jointly supervised Ms. Nichols.  A 043/Habicht p. 10; A 055/Keller p. 11; A 012/Nichols p. 25.

Greg Miller (Caucasian Male) is the Manager of Human Resources for Allen's Harbeson plant.  A 033/Miller p. 4.  Mr. Miller was responsible for approving the payments for Bennett's invoices for the Harbeson plant and was generally Bennett's point of contact.  A 035/Miller p. 9; A 044/Habicht p. 14.  Mr. Miller did not have a role in Allen's decision to contract with Bennett for its security services.  A 034/Miller p. 8.  Additionally, Mr. Miller did not have a role in hiring Ms. Nichols.  He was not responsible for supervising or overseeing Ms. Nichols in any capacity, but did have contact with her on a daily basis. A 034/ Miller p. 8; A 063/Keller p. 42.

Ms. Nichols was an at-will employee of Bennett and did not have a contract of employment.  A 021/Nichols p. 62; A 062/Keller p. 39.  Even if Ms. Nichols did have a contract of employment with Bennett, Ms. Nichols admits that Mr. Miller would have no knowledge of the contract.  A 022/Nichols p. 65-66.

Joseph Whiteman (Caucasian Male) was also a Bennett Security Officer stationed at Allen's.  Ms. Nichols was his supervisor.  A 015/Nichols p. 37.

**B.    Incident Between Ms. Nichols and Mr. Whiteman.**

On or about December 11, 2003 there was a confrontation between two drivers to which Mr. Whiteman was a witness.  A 015, A 017/Nichols p. 39, 45; A 037/Miller p. 19. Mr. Miller was investigating the matter and wanted to speak with Mr. Whiteman regarding the incident.  A 015/Nichols p. 39.  According to Ms. Nichols, Mr. Miller called her and asked her to have Mr. Whiteman report to his office.  A 015, A 016-A 017/Nichols p. 39-40, 44-45.

Pursuant to Mr. Miller's request, Ms. Nichols instructed Mr. Whiteman to report to Mr. Miller's office.  A 015/Nichols p. 40.  Mr. Whiteman refused and Ms. Nichols repeated her directive.  A 015, A 017/Nichols p. 40, 46.  Mr. Whiteman began arguing with Ms. Nichols and "laid into" her.  A 015/Nichols p. 40.  Mr. Whiteman then pushed Ms. Nichols and she pushed him back and told him, "Don't push me anymore.  Don't put your hands on me."  A 015/Nichols p. 40.  Mr. Whiteman pushed Ms. Nichols a second time and she pushed him back.  A 015/Nichols p. 40.  Mr. Whiteman then pushed Ms. Nichols a third time into the file cabinet and the CB radio.  A 016/Nichols p. 41.  In response, Ms. Nichols called the Delaware State Police and reported the incident.  A 016, A 017/Nichols p. 41, 46.

After Ms. Nichols called the police, she called Mr. Habicht to inform him of the incident and the fact that she had called the police.  A 017-A 018/Nichols p. 47-49.  Mr. Habicht told Ms. Nichols to let the police handle the matter.  A 017, A 018/Nichols p. 47, 49.

At some point thereafter, Mr. Whiteman complied with Ms. Nichols' request and reported to Mr. Miller's office.  Ms. Nichols remained in the security office, met the police when they arrived at the plant, and provided a statement to the police.  A 018/Nichols p. 50.

After providing her statement, Ms. Nichols went to Mr. Miller's office and interrupted his meeting with Mr. Whiteman to inform Mr. Whiteman that the police would like to speak with him.  A 016, A 018/Nichols p. 41, 49-52.  This was the first

instance that Mr. Miller learned that the police were at the plant.[2]  A 018/Nichols p. 52.

When Mr. Miller learned of the incident, he left his office for the security post and

greeted the State Trooper.  A 035/Miller p. 11.

Mr. Miller asked Ms. Nichols was what going on and she provided him a

summary of the events explained above with the State Trooper present.  A 035/Miller p.

12.  After Ms. Nichols explained what had happened, Mr. Miller thanked the State

Trooper for coming out and the Trooper assured Mr. Miller that everything was handled.

The State Trooper and Mr. Miller left the security post concurrently.  A 035/Miller p. 12.

Mr. Miller did not speak to Mr. Whiteman about the incident.  A 035/Miller p. 12.

### C.    Mr. Miller Contacts and Meets with Bennett Representatives.

Later that day, Mr. Miller called Bennett to inform them that there was an internal

conflict between Bennett's staff that they needed to resolve, and "deal with it."  The

purpose of Mr. Miller's call was "to make them aware of the situation that occurred when

the state police were there that seemingly created a disruptive environment.  It was an

internal thing, and they should be aware of it and they should address it."  A 039-A

040/Miller p. 32-33.  Mr. Miller wanted to make sure that the disruption did not happen

again.  A 040/Miller p. 33.  Mr. Habicht remembers the conversation differently only to

the extent that he claims that Mr. Miller said, "… enough is enough, she's got to go,"

---

[2] According to Mr. Miller's recollection of the events, he was not meeting with Mr. Whiteman in his office at the time that the police arrived at the plant, but explained that he was in his office alone and someone notified him that the police were at the plant.  A 035, A 038/Miller p. 10, 28.  For the purposes of this Motion, however, it is of no consequence as to whether Mr. Miller was in his office alone or with Mr. Whiteman at the time the police arrived.

referring to Ms. Nichols.  A 045/Habicht p. 20.  A meeting was set up between Mr.

Keller, Mr. Habicht and Mr. Miller at the plant.  A 036/Miller p. 16.

        The following day, Mr. Miller met with Mr. Habicht and Mr. Keller to discuss the

incident.  A 036/Miller p. 14; A 046/Habicht p. 21; A 016/Nichols p. 42.  Ms. Nichols

was not present at the meeting and has no knowledge of what was discussed.  A

023/Nichols p. 80.  At that point Mr. Keller and Mr. Habicht were aware of the incident

and the details.  A 036/Miller p. 15.  Mr. Miller voiced his concern that the State Police

were called and caused a disruptive environment at the plant.  A 036/Miller p. 15.  Mr.

Miller explained:

> [W]hen you hear about these things out of the blue, you
> don't know if some act of violence may have taken place or
> just exactly what, if somebody got hurt on the job.  You
> just don't know and so that was my concern.

A 036/Miller p. 15.  Mr. Habicht and Mr. Keller confirmed that Mr. Miller's primary

concern was the police being called to the plant without his knowledge and that he found

the police presence disruptive to plant operations.  A 046/Habicht p. 23; A 059/Keller p.

26.

        According to Mr. Miller, at some point in the conversation, either Mr. Habicht or

Mr. Keller offered to make a change, referring to transferring Ms. Nichols from Allen's.

Mr. Miller agreed.  A 037/Miller p. 17-18.  Mr. Habicht recalled that Mr. Miller brought

up the issue of removing Ms. Nichols from Allen's and said "that she [Ms. Nichols] had

to go, that he [Mr. Miller] couldn't have that kind of activity going on in his plant, it was

too disruptive."  A 046/Habicht p. 23.   Mr. Keller's  recollection was consistent with

Mr. Habicht's;  Mr. Keller said that Mr. Miller was displeased with the situation and

commented, "I don't think he [Mr. Miller] cared whether she [Ms. Nichols] was

transferred or not, he just didn't want her on his property." A 056-A 057/Keller p. 15-18.

Bennett did not discuss with Mr. Miller its future plans for Ms. Nichols beyond the fact

that she was being transferred.[3] A 047/Habicht p. 27. Mr. Keller explained that they did

not discuss Bennett's future plans with respect to Ms. Nichols because, "as long as she

wasn't working at his plant, I don't think he [Miller] really cared." A 058/Keller p. 21.

Mr. Miller testified that he was not aware of what happened to Ms. Nichols after she

completed her work week at Allen's. A 037/Miller p. 20.

Mr. Miller did not ask Bennett to terminate Ms. Nichols, nor did he threaten to

terminate Allen's business with Bennett if Bennett refused to transfer Ms. Nichols. A

050, A 051/Habicht p. 40, 44. That would not have been Mr. Miller's role; he could

request that Bennett replace Ms. Nichols at the Harbeson plan, but Mr. Miller could not

terminate her.[4] A 063/Keller p. 43-44.

Ms. Nichols completed her workweek at Allen's and was transferred. A 016, A

027/Nichols p. 42, 101; A 046/Habicht p. 24. Bennett did not consider the transfer to be

disciplinary action toward Ms. Nichols. A 048/Habicht p. 30; A 061/Keller p. 36.

---

[3] Ms. Nichols had differences with two other co-workers in the past, prior to this incident.
In both of these incidents Ms. Nichols was not reassigned. One of the incidents involved
Linda Fooks, and Ms. Fooks was transferred to another location. A 055/Keller p. 12.

[4] Mr. Miller had requested Bennett to remove two of its security guards in the past,
Daniel Steele (Caucasian Male) and David Leggins (African-American Male). These
requests were also granted. A 051/Habicht p. 41-42; A 062/Keller p. 37-38. Bennett
explicitly states in its "Condition of Employment" that it "has the right to move any
security officer to another job site at any time." A 001-A 002/Nichols Depo Ex. 1. Ms.
Nichols admits that from time to time security guards were reassigned to different
locations. A 027/Nichols p. 102. Mr. Habicht and Mr. Keller further explained that
Bennett has routinely transferred its security guards at the customer's request. A
047/Habicht p. 26-27; A 064/Keller p. 51.

Linda Fooks (African-American Female) replaced Ms. Nichols as the Security Supervisor at the Harbeson plant.  A 051/Habicht p 43-44.

### D.    Bennett Attempts to Place Ms. Nichols at Another Location.

On December 15, 2003, Mr. Keller called Ms. Nichols and left a message on her answering machine instructing her not to report to work at the Allen's facility; he stated that he would be in touch when he found her another position at another location.   A 016, A 027/Nichols p. 43, 101; A 060/Keller p. 29.

Subsequently, Mr. Keller offered Ms. Nichols a position at Perdue's plant in Milford, DE.  A 026, A 027-A 028/Nichols p. 89, 104-105; A 048/Habicht p. 30; A 061/Keller p. 33-34.  Ms. Nichols initially accepted the position, but the day that she was scheduled to work, she called out sick and could not attend training.  A 026, A 028/Nichols p. 90, 106.  Because Perdue needed someone immediately, Bennett was forced to assign someone else to fill this position.  A 061/Keller p. 33-34.

Ms. Nichols was next offered a position and worked briefly at the Georgetown Family Courthouse. A 026, A 027/Nichols p. 90, 104; A 061/Keller p. 35.  Ms. Nichols took off for Christmas and resigned shortly thereafter.  A 061/Keller p. 35; A 051/Habicht p. 44; A 027/Nichols p. 103.  Ms. Nichols last day of employment with Bennett was January 19, 2004.  A 011, A 013/Nichols p. 8, 29.  Ms. Nichols admits that she was not terminated.  A 016/Nichols p. 43.

That same day, January 19, Ms. Nichols began her position as a Certified Nursing Assistant (CNA) at Millford Center.  A 014, A 028/Nichols p. 33, 108; A 005-A 009/Nichols Ex. 3.  The CNA position paid $7.00 per hour during the training and $9.35 per hour thereafter compared to the $7.00 per hour she made at Bennett.  A 029, A

031/Nichols p. 109, 122. Thus, she was making more money after her resignation. A 029/Nichols p. 109.

E.     **Factual Allegations for Ms. Nichols' 42 U.S.C. § 1981 and Defamation Claims.**

Ms. Nichols claims that Allen's discriminated against her based on her race because Mr. Miller allowed Mr. Whiteman (Caucasian male) to provide his version of the events of what transpired between him and Ms. Nichols, while not providing her with the same opportunity. A 019/Nichols p. 54-56. Ms. Nichols admits, however, that she does not know whether Mr. Miller ever spoke to Mr. Whiteman about the incident. A 019, A 030/Nichols p. 54-56, 115. According to Mr. Miller, he only spoke to Ms. Nichols about the altercation between her and Mr. Whiteman and never discussed the incident with Mr. Whiteman. A 035/Miller p. 12.

Ms. Nichols also claims that she was unfairly disciplined (her transfer) as result of the incident with Mr. Whiteman while Mr. Whiteman was not similarly disciplined. A 024/Nichols p. 82-83. She admits that Bennett reassigned her, not Allen's. A 024/Nichols p. 83. Additionally, Bennett did not consider Ms. Nichols' transfer a disciplinary action. A 048/Habicht p. 30; A 061/Keller p. 36.

According to Ms. Nichols, on December 12, 2003, Valerie Brittingham (African-American Female), Time and Attendance Clerk for Allen's, came to the security office asking what happened the day before. A 020/Nichols p. 57-58. Ms. Brittingham allegedly said: "Mr. Miller is down there telling everybody that everything was Ms. Nichols' fault [referring to the incident with Mr. Whiteman] and that she was not capable of doing her job." A 020/Nichols p. 58. Ms. Nichols asked Ms. Brittingham why Mr.

Miller would say something like that about her and Ms. Brittingham allegedly responded that Mr. Miller was racist.  A 020/Nichols p. 57-58.

When Ms. Brittingham was asked what she knew about the incident between Ms. Nichols and Mr. Whiteman she responded, "rumors you hear around the plant…[T]here was an incident, the police were called, Robin was involved, and there was a push, that's it."  A 066/Brittingham p. 7-8.  Ms. Brittingham was not aware that Mr. Whiteman was even involved in the incident.  A 066/Brittingham p. 8.  Ms. Brittingham further testified that she never spoke to Ms. Nichols or Mr. Miller about the incident.  A 066, A 067/Brittingham p. 7, 11.  Ms. Brittingham also denies that she told Ms. Nichols that Mr. Miller was racist.  A 067/Brittingham p. 11.  Consistent with Ms. Brittingham's version of the events, when Mr. Miller was questioned about whether he ever discussed the incident with Ms. Brittingham he responded, "In my role [as Manager of Human Resources] that is one thing you do not do, is visit regarding matters that are no one else's business.  They are personal."  A 039/Miller p. 32

Ms. Nichols admits that she does not know of anything that Mr. Miller said to Bennett that she would consider to be a false statement.  A 022, A 025/Nichols p. 67, 85.

## ARGUMENT

### A.    Standards for Summary Judgment

A moving party is entitled to summary judgment if it can demonstrate that:  (1) there is no genuine dispute as to any material fact; and (2) summary judgment is appropriate as a matter of law.  Fed. R. Civ. P. 56.  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *Matsushita*

*Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986).  The Third Circuit

has recognized:

> [a] disputed fact is 'material' if it would affect the outcome
> of the suit as determined by the substantive law. . . . Thus,
> while the facts must be viewed in the light most favorable
> to the nonmoving party and all inferences must be drawn in
> that party's favor, there is no issue for trial unless there is
> sufficient evidence favoring the nonmoving party for a jury
> to return a verdict for that party....  If the evidence is merely
> colorable, ... or is not significantly probative, ... summary
> judgment may be granted.

*Gray v. York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992) (citations and

internal quotations omitted).  Moreover, the evidence supplied by the nonmoving party

must be more than "mere allegations."  *Olson v. General Elec. Aerospace*, 101 F.3d 947,

951 (3d Cir. 1996).

> **B.     Ms. Nichols Cannot Establish her 42 U.S.C. §1981 Claim Against
> Allen's.**

In order establish a §1981 claim against Allen's, Ms. Nichols must show:  (1) that

she is a member of a racial minority; (2) an intent to discriminate on the basis of race by

Allen's; and (3) discrimination concerning one or more of the activities enumerated in the

statute.  *Brown v. Philip Morris Inc.,* 250 F.3d 789, 797 (3d Cir. 2001).  Section 1981

prohibits racial discrimination in the making and enforcement of contracts and property

transactions, and provides:

> All persons within the jurisdiction of the United States shall
> have the same right in every State and Territory to make
> and enforce contracts, to sue, be parties, give evidence, and
> to the full and equal benefit of all laws and proceedings for
> the security of persons and property as is enjoyed by white
> citizens, and shall be subject to like punishment, pains,
> penalties, taxes, licenses and exactions of every kind, and
> to no other.

42 U.S.C. § 1981(a).

The Supreme Court has made clear that §1981 reaches only purposeful discrimination. *General Bldg. Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 389, 391 (1982); *see also Chauhan v. M. Alfieri Co.,* 897 F.2d 123, 126 (3d Cir. 1990). Purposeful or intentional discrimination "may be demonstrated through disparate impact, departures from procedural norms, a history of discriminatory actions, and other relevant facts." *Flagg v. Control Data,* 806 F.Supp. 1218, 1223 (E.D.Pa. 1992), *aff'd,* 998 F.2d 1002 (3d Cir.1993) (citing *Village of Arlington Heights v. Met. Hous. Dev. Corp.,* 429 U.S. 252, 264-68 (1977)).

Ms. Nichols' Complaint is unclear as to what specific actions she is alleging that Allen's engaged in that would constitute race discrimination. She merely states, "[A]s a direct result of the discriminatory conduct of Defendants, Plaintiff has suffered damages…WHEREFORE, Plaintiff demands judgment against Defendants jointly and severally…" without any indication as to what discriminatory conduct Allen's allegedly engaged. Complaint Count II ¶ 28. When asked for clarification at her deposition, Ms. Nichols claimed that Allen's discriminated against her based on her race because Mr. Miller allowed Mr. Whiteman (Caucasian male) to provide his version of the events as to what transpired between him and Ms. Nichols, while not providing her the same opportunity. A 019/Nichols p. 54-56. Ms. Nichols admits, however, that she does not know whether Mr. Miller ever spoke to Mr. Whiteman about the incident, and according to Mr. Miller, he only spoke to Ms. Nichols about the altercation; he never discussed the incident with Mr. Whiteman. A 019, A 030/Nichols p. 54-56, 115; A 0035/Miller p. 12. Thus, this assertion cannot support a claim for discrimination under §1981.

Ms. Nichols also claims that she was discriminated against because of her race and unfairly disciplined (her transfer) as result of the incident with Mr. Whiteman while Mr. Whiteman was not similarly disciplined. A 024/Nichols p. 82-83. She admits that Bennett's reassigned her, not Allen's. A 024/Nichols p. 83. Additionally, Bennett did not consider Ms. Nichols' transfer a disciplinary action. A 048/Habicht p. 30; A 061/Keller p. 36. Even if Mr. Miller's request to have her transferred is seen by the Court as sufficient to impute Allen's, there is absolutely no evidence that Mr. Miller's request was based on Ms. Nichols' race. In fact, the record establishes that Mr. Miller requested the transfer because of the disruptive environment Ms. Nichols' call to the police caused and her failure to notify him of the call. Moreover, in the past, Mr. Miller requested the transfer of two other Security Officers, one of whom, Daniel Steele, was Caucasian. This undermines Ms. Nichols' claim that Mr. Miller's request was racially motivated. Additionally, the fact that Ms. Nichols' supervisory position was ultimately filled by another African-American female, Linda Fooks, also fails to support Plaintiff's assertions that the decision to transfer her was racially motivated.

In sum, Ms. Nichols' §1981 claims must fail and summary judgment is appropriate because she is unable to present any evidence that Allen's intended to discriminate against her on the basis of her race.

### C.   Ms. Nichols Cannot State a Claim for Tortious Interference with Her Employment Contract with Bennett.

To establish a claim for tortious interference with a contract a plaintiff must show: (1) the existence of a contract, (2) about which the interferer knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without

justification (5) that causes injury. *Irwin & Leighton Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).

Plaintiff Nichols cannot establish any of the elements for her claim that Mr. Miller tortiously interfered with her employment contract with Bennett. Specifically, Plaintiff cannot demonstrate the existence of a contract. Plaintiff and Mr. Keller testified that Ms. Nichols was an employee at-will and did not have a contract of employment. A 021/Nichols p. 62; A 062/Keller p. 39. Therefore, Mr. Miller had no contract with which to interfere. Where an employee's employment is at-will, there is no cause of action for tortious interference with contractual relations. *See Leblanc v. Redrow*, 2001 WL 428686 *2 (Del. Super. 2001);[5] *Rizzo v. E.I. Du Pont De Nemours & Co.*, 1989 WL 135651 *1 (Del. Super. 1989) *Cf. Nelson v. Fleet Natl' Bank et al.*, 949 F. Supp. 254, 259-263 (D. Del. 1996)(declining to adopt unreported opinions of State Court in absence of binding State law). Even if Ms. Nichols is able to establish an employment contract, Ms. Nichols admits that Mr. Miller would have no knowledge of the contract. A 022/Nichols p. 65-66.

Moreover, Plaintiff is unable to show that Mr. Miller engaged in an intentional act that is a significant factor in causing the breach of an employment contract. Even when taking the facts most favorable to the Plaintiff, Mr. Miller, at worst, only asked that Ms. Nichols be transferred from Allen's Harbeson plant. A 037/Miller p. 17-18; A 046/Habicht p. 23; A 056-A 057/Keller p. 15-18. On December 12, Mr. Miller, Mr. Habicht and Mr. Keller met to discuss Mr. Miller's concern that the police were called to

---

[5] Unreported opinions are arranged alphabetically in the Compendium of Unreported Opinions filed contemporaneously herewith.

the plant without his knowledge and that it caused an environment disruptive to plant operations. *Id.* The testimony is clear that Mr. Miller did not opine on the incident, assess blame, or make any comments regarding Ms. Nichols, other than his alleged request that she be transferred. Mr. Miller never asked for Ms. Nichols to be terminated, he did not threaten to terminate Allen's business with Bennett if Bennett refused to transfer Ms. Nichols, and in fact, Ms. Nichols was not terminated, she resigned. A 050, A 051/Habicht p. 40, 44. Thus, there is no evidence to establish an intentional act on Mr. Miller's behalf to cause a breach of an employment contract, even if one existed.

Even if the Court were to determine that Ms. Nichols could establish the above elements, she would not be able to establish that Mr. Miller's alleged request to have her transferred was without justification. Mr. Miller was justified in voicing his concern that the State Police were called and caused a disruptive environment at the plant. A 036/Miller p. 15. Mr. Miller explained:

> [W]hen you hear about these things out of the blue, you don't know if some act of violence may have taken place or just exactly what, if somebody got hurt on the job. You just don't know and so that was my concern.

A 036/Miller p. 15. A legitimate complaint to a plaintiff's employer cannot be "tortious." *Leblanc v. Redrow*, 2001 WL 428686 *2 (Del. Super. 2001) (a customer is entitled to voice a grievance about an employee of a business).

Finally, Plaintiff is unable to show that she was injured. Plaintiff alleges in her Complaint that she has suffered damages, "including but not limited to, physical and emotional injury, pain and suffering, mental anguish, humiliation and lost wages." Complaint ¶ 31. Ms. Nichols' deposition testimony does not support that she suffered **any** damages as result of Mr. Miller's conduct. After being transferred, Ms. Nichols was

offered a position at the Perdue plant.  A 016, A 027/Nichols p. 43, 101; A 060/Keller p. 29.  Thereafter she worked briefly at the Georgetown Family Court.  A 026, A 027/Nichols p. 90, 104; A 061/Keller p. 35.  Plaintiff then subsequently **resigned**.  When she left Bennett she immediately found a position as a Certified Nursing Assistant (CNA) at Millford Center.  A 014/Nichols p. 33; A 005-A 009/Nichols Ex. 3.  The CNA position paid $7.00 per hour during the training and $9.35 per hour thereafter, compared to the $7.00 per hour she made at Bennett.  A 029, A 031/Nichols p. 109, 122.  Since she was making more money as a CNA than she did in her position with Bennett, she cannot show she was economically injured.  Additionally, there was no evidence that Ms. Nichols suffered physical or emotional injury, mental anguish or humiliation.  In fact, Ms. Nichols made a point to tell Mr. Keller and Mr. Habicht that the matter had been resolved between her and Mr. Whiteman.  A 016/Nichols p. 42.  Therefore, Plaintiff cannot show that she was injured and "conclusions of law or fact unsupported by factual allegations will not be assumed to be true." *Griffin Corporate Services, LLC., v. Jacobs et. al.*, 2005 WL 2000775 *4-5 (Del. Ch. 2005) (no tortious interference where plaintiffs failed to allege any breach of the employment agreements or support their conclusory allegations of resultant damages).

Based on the foregoing, Plaintiff's claim for tortious interference must be dismissed.

      **D.**      **Ms. Nichols Cannot State a Claim for Defamation.**

In order to establish a case of defamation a plaintiff must show: (1) a defamatory communication; (2) publication to a third party; (3) a communication referring to the plaintiff; (4) a third party's understanding of the communication's defamatory character;

and (5) injury. *Spence v. Funk*, 396 A.2d 967 (Del. 1978); Restatement (Second) of Torts § 558 (1977). Generally defamation is not actionable without showing special damages. *Klein v. Sunbeam Corp.*, 94 A. 2d 385, 390 (Del. 1952); *Q-Tone Broadcasting, Co. v. Musicradio of Maryland Inc.*, 1994 WL 555391 (Del. Super. 1994). A statement is not defamatory unless it "tends to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Ramunno v. Cawley*, 705 A.2d 1029, 1035 (Del. Super. 1998).

Plaintiff has offered no evidence to establish any of the above elements necessary for her defamation claim. Specifically, Ms. Nichols cannot show that a defamatory statement was made. According to Ms. Nichols, on December 12, 2003, Valerie Brittingham (African-American Female), Time and Attendance Clerk for Allen's, came to the security office asking what happened the day before, referring to Ms. Nichols' altercation with Mr. Whiteman. A 020/Nichols p. 57-58. According to Ms. Nichols, Ms. Brittingham said: "Mr. Miller is down there telling everybody that everything was Ms. Nichols' fault [referring to the incident with Mr. Whiteman] and that she was not capable of doing her job." A 020/Nichols p. 58. Ms. Nichols asked Ms. Brittingham why Mr. Miller would say something like that about her and Ms. Brittingham allegedly responded that Mr. Miller was racist. A 020/Nichols p. 57-58. Ms. Brittingham denied that Mr. Miller made these alleged comments about Ms. Nichols. A 066, A 067/Brittingham p. 7, 11. Ms. Brittingham further testified that she never spoke to Ms. Nichols or Mr. Miller about the incident. *Id.* Ms. Brittingham also denied that she told Ms. Nichols that Mr. Miller was racist. A 067/Brittingham p. 11. Consistent with Ms. Brittingham's version of the events, when Mr. Miller was questioned about whether he ever discussed the

18

incident between with Ms. Brittingham he responded: "In my role [as Manager of Human Resources] that is one thing you do not do, is visit regarding matters that are no one else's business. They are personal." A 039/Miller p. 32. Thus, Ms. Nichols' evidence in support of her defamation claim fails because Ms. Brittingham and Mr. Miller specifically deny that any such statements were ever made. Ms. Nichols' bald assertions are not enough. She must allege specific facts which demonstrate a genuine issue of material fact. *E.K. Geyser Co. v. Blue Rock Shopping Center, Inc.,* 229 A.2d 499 (Del. Super. 1967). Plaintiff has failed to do so and, therefore, her claim must fail. *See Davis v. West Center City Neighborhood Planning Advisory Committee, Inc.*, 2003 WL 908885 *2 (Del. Super. 2003) (no defamation where plaintiff only offered his own bare and incomplete assertions of defamation and failed to offer a third party to whom a defamatory statement was made); *Bloss v. Kershner and Labware Inc.*, 2000 WL 303342 *6 (Del. Super. 2000) (no defamation where plaintiff failed to establish a defamatory statement that was made by the defendant to a third party; testimony from a third party is the whole basis for a defamation claim); *Williams v. L.H. Howe*, 2004 WL 2828058 *4 (Del. Super. 2004) (same). Plaintiff also cannot show any damages. As discussed more fully above, Ms. Nichols immediately retained another position with Millford Center as a CNA making more money than she did while she worked with Bennett. Thus, summary judgment is appropriate.

## <u>CONCLUSION</u>

As the foregoing demonstrates, there are no material disputes of fact at issue in this case and Allen's is entitled to judgment as a matter of law. Accordingly, Allen's

respectfully requests that the Court grant summary judgment in its favor and dismiss

Plaintiff's claim with prejudice.

Respectfully submitted,

Matthew F. Boyer (Del. Bar No. 2564)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
(302) 884-6585

Arthur M. Brewer (admitted *pro hac vice*)
Laura A. Pierson Scheinberg
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201
(410) 752-1040

*Counsel for Defendant Allen Family Foods, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Opening Brief in Support of Defendant Allen Family Foods, Inc.'s Motion for Summary Judgment was served electronically, on January 27, 2006, to:

William D. Fletcher, Jr., Esq.
Noel E. Primos, Esq.
Schmittinger & Rodriguez, P.A.
414 S. State Street
P. O. Box 497
Dover, DE  19903-0497

*Counsel for the Plaintiff*

Roger D. Landon, Esquire
Murphy Spadaro & Landon
1011 Centre Road, #210
Wilmington, DE  19805

*Counsel for Bennett Detective
and Protective Agency, Inc.*

Matthew F. Boyer

126670

21