Tab 3



Not Reported in A.2d                                                                                               Page 1

Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Court of Chancery of Delaware.
GRIFFIN CORPORATE SERVICES, LLC,
Plaintiff,
v.
Francis JACOBS, Joan Dobrzynski, Gordon Stewart, and Stewart Management Company,
Defendants and Counterclaim Plaintiffs,
v.
CORPORATION SERVICE COMPANY, Entity Services Group, LLC, Robert Campbell, David Eppes, and Griffin Corporate Services, LLC,
Counterclaim Defendants.
**No. Civ.A. 396-N.**

Submitted June 30, 2005.
Decided Aug. 11, 2005.

Kathleen Furey McDonough, Kevin R. Shannon, Melony R. Anderson, Potter Anderson & Corroon LLP, Wilmington, Delaware, for Plaintiff and Counterclaim Defendants.
James S. Green, George H. Seitz, III, Kevin A. Guerke, Seitz, Van Ogtrop & Green, P.A., Wilmington, Delaware, for Defendants and Counterclaim Plaintiffs.

MEMORANDUM OPINION

PARSONS, Vice Chancellor.
**\*1** Corporation Service Company ("CSC"), Entity Services Group, LLC ("Entity"), Robert Campbell and David Eppes (collectively referred to as " Counterclaim Defendants") and Plaintiff, Griffin Corporate Services, LLC ("Griffin"), seek to dismiss the counterclaims brought by Francis Jacobs, Joan Dobrzynski, Gordon Stewart and Stewart Management Company ("SMC") (collectively referred to as "Counterclaim Plaintiffs" ).

Counterclaim Plaintiffs assert that Griffin and Counterclaim Defendants interfered with their existing contract and prospective business relationships and engaged in common law and statutory unfair trade practices. Additionally, they assert that Griffin breached the confidentiality agreement with SMC, made fraudulent misrepresentations to SMC and that Dobrzynski and Jacobs are entitled to indemnification from Griffin. Griffin and Counterclaim Defendants have moved for dismissal of all counterclaims based on a failure to state a claim under Rule 12(b)(6) and failure to plead fraud with particularity as required by Rule 9(b).

For the reasons stated below, Griffin and Counterclaim Defendants' motion to dismiss is granted in part and denied in part.

I. FACTS 1

> FN1. The facts set forth herein are based on the well-pleaded allegations of the Counterclaim and are accepted as true for the purposes of Griffin and Counterclaim Defendants' motion to dismiss.

A. Parties and Background

Griffin is a limited liability company that provides commercial domicile services to special purpose entities ("SPEs"). Before April 2004, Griffin was a wholly-owned subsidiary of Wachovia Bank, N.A. ( "Wachovia"). Its competitors in the commercial domicile services industry included SMC and Entity. Stewart is a principal of SMC. Campbell and Eppes are officers and shareholders of Entity. Jacobs and Dobrzynski are former employees of Griffin. Through Griffin, Jacobs and Dobrzynski served as directors, officers, or employees (" Delaware Employees") of many of Griffin's SPE clients and had separate employment agreements

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                          Page 2
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

with the SPEs.

In December 2003, Wachovia initiated a closed bidding process for the sale of Griffin and invited SMC and Entity to participate. [FN2] To participate in the bidding process, Wachovia required the bidders to enter into a confidentiality agreement (the "Confidentiality Agreement") concerning the disclosure of information obtained through the bidding process. A proposed non-solicitation provision contained in the Confidentiality Agreement, however, was unacceptable to SMC. Stewart negotiated a change in that provision that allowed SMC to hire Griffin employees who contacted SMC on their own initiative.

> FN2. Entity participated through its majority shareholder, CSC. For the sake of simplicity, I will refer to CSC's actions taken on behalf of Entity during this bidding process as Entity's actions.

On April 1, 2004, after two bids by SMC, Wachovia sold Griffin to Entity. Counterclaim Plaintiffs allege that SMC's sixteen million dollar bid was the highest bid, but that Griffin never responded to it. They claim that this bid was at least one million dollars more than Entity agreed to pay. Additionally, they claim that "[t]here was essentially no confidential information provided to SMC by Wachovia that generally would not be available to any of Wachovia's shareholders or upon the examination of the public disclosures Wachovia was required to make as a publicly traded company or as a bank" during the bidding process. [FN3] Based on these allegations, Counterclaim Plaintiffs allege that the bidding process was a pretext to "tie the hands" of Griffin's competitors by inducing them to sign the Confidentiality Agreement and thereby agree to a non-solicitation provision. [FN4] They allege that Wachovia acted fraudulently and in bad faith by misrepresenting to SMC that they were seeking bids to sell Griffin when they already had selected Entity as the purchaser.

> FN3. Countercl. ¶ 104.

> FN4. *Id.* ¶¶ 141, 145.

**\*2** During the first week after Entity assumed control of Griffin, Entity had Griffin employees call the SPEs to advise them of the sale and assure them that "no changes" were to occur because of the sale. [FN5] Counterclaim Plaintiffs allege that this was a misrepresentation because Entity intended to move offices, add officers, and require the re-execution of all client contracts. Entity also presented Griffin employees with a letter imposing additional terms on their continued employment, including entering into a noncompete agreement.

> FN5. *Id.* ¶ 109.

During the second week after Entity assumed control of Griffin, Jacobs and Dobrzynski learned of the specific terms of the noncompete agreement. Jacobs and Dobrzynski believed that those terms were onerous and would force them to change careers if they left the new Entity-controlled Griffin after signing the noncompete. They also understood that signing the noncompete agreement by April 16, 2004, the end of the second week, was a "take it or leave it" mandatory condition of continued employment at Entity/Griffin. [FN6] Consequently, they initiated a search for alternative employment opportunities and, on or about April 13 and 14, 2004, Jacobs and Dobrzynski agreed to employment terms with SMC upon their resignation from Griffin.

> FN6. *Id.* ¶ 117.

On April 16, 2004, Jacobs and Dobrzynski resigned from Griffin. Following their resignation, they attempted to recall email addresses of their contacts at the SPEs for which they served as Delaware Employees. They sent the SPEs emails to notify them of the termination of their relationship with Entity/Griffin. Additionally, forms were created to allow the SPEs to request that Jacobs and Dobrzynski continue to serve as their Delaware Employee, and select SMC as their commercial domicile services provider. Counterclaim Plaintiffs claim that these forms were sent only to SPEs that

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 3
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

contacted Dobrzynski and Jacobs and indicated that they wished to receive such forms.

On or about April 19, 2004, Entity/Griffin had ten or more members of their staff begin a calling campaign to as many of the SPEs that had employment agreements with Dobrzynski and Jacobs, or for which they served as Delaware Employees, as possible. Counterclaim Plaintiffs allege that during these phone calls Griffin and Counterclaim Defendants told the SPEs that they needed to replace Dobrzynski and Jacobs in order to continue functioning and failed to inform the SPEs of their option to retain Dobrzynski and Jacobs, refused to accurately inform, or misinformed, the SPEs of where and how to contact Jacobs and Dobrzynski, and misrepresented SMC's fees, professional abilities and business practices.

On April 22, 2004, the Court issued a temporary restraining order preventing Defendants from, *inter alia*, soliciting Griffin's SPE clients because of Defendants' (Counterclaim Plaintiffs') improper actions. On May 7, 2004, after discovery and a hearing, the Court granted Griffin's motion for a preliminary injunction finding that Griffin had demonstrated a reasonable probability of success on the merits as to its claims for breach of fiduciary duties, deceptive trade practices, tortious interference with contractual relations, and aiding and abetting breaches of fiduciary duties. At the close of the preliminary injunction hearing, the Court extended the prohibition against Defendants' solicitation of Griffin's clients until May 17, 2004.

**\*3** Counterclaim Plaintiffs allege that through at least May 17, 2004, Griffin and Counterclaim Defendants made various misrepresentations to the SPEs including, but not limited to, misrepresentations of the cost of doing business with SMC versus Entity/Griffin, of Jacobs and Dobrzynski's availability and willingness to continue to serve as their Delaware Employees, and that their leases were expiring on June 30, 2004, in order to force the SPEs to decide to stay with Entity/Griffin. Counterclaim Plaintiffs also allege that Griffin and Counterclaim Defendants misrepresented that they had authority to act on behalf of former clients to third parties and maintained a misleading internet website that misrepresented the employment status of an SMC employee.

Counterclaim Defendants have moved to dismiss the counterclaims on several grounds. Argument on Counterclaim Defendants' motion was held on April 28, 2005. Counterclaim Plaintiffs filed a supplemental letter on June 28, 2005. Counterclaim Defendants responded to that letter on June 30, 2005. This memorandum opinion addresses the remaining grounds for Counterclaim Defendants' motion to dismiss. [FN7]

> FN7. Griffin and Counterclaim Defendants' motion to dismiss based on a lack of personal jurisdiction and insufficiency of process, or service of process, under Court of Chancery Rules 12(b)(2), (4) and (5) were denied on the record at argument. *See* Tr. at 10-11. Additionally, after argument, Counterclaim Plaintiffs dismissed their claim for tortious interference as it related to Ms. Linda Bubcacz. *See* Stipulation of Dismissal dated July 1, 2005.

### II. ANALYSIS

Counterclaim Plaintiffs assert that Griffin and Counterclaim Defendants interfered with their existing contractual and prospective business relationships and engaged in common law and statutory unfair trade practices. Additionally, they assert that Griffin breached the Confidentiality Agreement, made fraudulent misrepresentations to SMC and that Dobrzynski and Jacobs are entitled to indemnification from Griffin for all or part of what Griffin may recover from them in the course of this litigation. Griffin and Counterclaim Defendants have moved for dismissal of all of the counterclaims based on a failure to state a claim under Court of Chancery Rule 12(b)(6), and failure to plead fraud with particularity as required by Rule 9(b). I address each of Griffin and Counterclaim Defendants' arguments for dismissal below.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 4
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

### A. Dismissal of the Counterclaims for Failure to State a Claim

#### 1. Standard for dismissal under Rule 12(b)(6)

Though the parties strenuously debate its finer points, the standard for dismissal of a claim under Rule 12(b)(6) is well settled. A claim may be dismissed under Rule 12(b)(6) where "allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law." [FN8] In other words, a motion to dismiss under Rule 12(b)(6) will be granted only if a "plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof." [FN9]

> FN8. *Malpiede v. Townson,* 780 A.2d 1075, 1083 (Del.2001).
>
> FN9. *VLIW Tech., LLC v. Hewlett-Packard Co.,* 840 A.2d 606, 611 (Del.2003) (quoting *Precision Air, Inc. v. Standard Chlorine of Delaware, Inc.,* 654 A.2d 403, 406 (Del.1995)). *See also McMullin v. Beran,* 765 A.2d 910, 916 (Del.2000); *Rabkin v. Philip A. Hunt Chem. Corp.,* 498 A.2d 1099, 1104 (Del.1985).

"[W]hen evaluating a motion to dismiss for failure to state a claim, the truthfulness of all well-pleaded allegations in the complaint is to be assumed," [FN10] and the pleader is given "the benefit of all reasonable inferences that can be drawn from its pleading." [FN11] "An allegation, though vague or lacking in detail, is nevertheless 'well-pleaded' if it puts the opposing party on notice of the claim being brought against it." [FN12] "Conclusions of law or fact, however, will not be assumed to be true without specific allegations of fact which support the conclusion." [FN13]

> FN10. *Solomon v. Pathe Communications Corp.,* 672 A.2d 35, 38 (Del.1996).
>
> FN11. *In re USACafes, L.P. Litig.,* 600 A.2d 43, 47 (Del. Ch.1991).
>
> FN12. *VLIW Tech.,* 840 A.2d at 611.
>
> FN13. *Haber v. Bell,* 465 A.2d 353, 357 (Del. Ch.1983).

**\*4** Though the parties agree that Delaware has adopted a notice pleading standard in order to withstand a motion to dismiss, [FN14] they disagree about whether Counterclaim Plaintiffs have met their "burden to plead facts, not conclusions." [FN15]

> FN14. *See, e.g., VLIW Tech.,* 840 A.2d at 611 ("[U]nder Delaware's judicial system of notice pleading, a plaintiff need not plead evidence. Rather, the plaintiff need only allege facts that, if true, state a claim upon which relief can be granted."); *Rabkin,* 498 A.2d at 1104 ("A complaint need only give general notice of the claim asserted and will not be dismissed unless it is clearly without merit, either as a matter of law or fact.").
>
> FN15. *Harbor Fin. Partners v. Huizenga,* 751 A.2d 879, 893 (Del. Ch.1999).

#### 2. Tortious interference with existing contracts and prospective business relationships

Counterclaim Plaintiffs allege that Griffin and Counterclaim Defendants intentionally interfered with: a) the employment agreements between Dobrzynski or Jacobs and Griffin's SPE clients, b) Counterclaim Plaintiffs' prospective business relations with the SPEs, and c) the legal practice of Stewart by "attempting to undermine the attorney-client relationship Stewart has with many SPEs that have elected Entity/Griffin as its commercial domicile provider." [FN16] In response, Griffin and Counterclaim Defendants argue that these claims should be dismissed for failure to plead *"any facts* suggesting that [they] engaged in improper conduct" as well as a failure to plead facts that establish the requisite elements of a claim for tortious interference. [FN17]

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                                        Page 5
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

FN16. Countercl. ¶¶ 131, 133, 134.

FN17. Counterclaim Defs.' Opening Br. in Supp. of their Mot. to Dismiss the Countercl. ("DOB") at 10.

a. Existing business contracts

To prevail on a claim for tortious interference with an existing contract, a party must demonstrate: (1) the existence of a contract, (2) about which the interferer knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without justification (5) that causes injury. FN18

FN18. *See Irwin & Leighton, Inc. v. W.M. Anderson Co.,* 532 A.2d 983, 992 (Del. Ch.1987); *CPM Indus., Inc. v. Fayda Chem. & Minerals, Inc.,* 1997 WL 762650, at *7 (Del. Ch. Nov. 26, 1997).

Griffin and Counterclaim Defendants argue that Counterclaim Plaintiffs have alleged neither a breach of any employment agreement nor damages stemming from the alleged tortious interference. I agree. Though a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FN19 an allegation of a breach is necessary to show entitlement to relief for tortious interference with an existing contract. FN20 The only contracts addressed in the Counterclaim are the employment agreements that Jacobs and Dobrzynski had with the SPEs. The Counterclaim, however, alleges no breach of the employment agreements. Frankly, the facts presented to the Court call into question the viability of the employment agreements after Jacobs and Dobrzynski left Griffin. Counterclaim Plaintiffs only allege that Griffin and Counterclaim Defendants "intentionally interfered with employment relationships ... [and] fiduciary duties" not any employment agreements. FN21 In their responsive brief, Counterclaim Plaintiffs argue that the employment agreements were breached because Griffin and Counterclaim Defendants' actions caused the SPEs to fail to pay Jacobs and Dobrzynski for their services, "a clear breach of contract." FN22 This allegation, however, is made nowhere in the Counterclaim. "Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss." FN23 Thus, I will not consider an allegation presented to the Court for the first time in a responsive brief, without further evidentiary support, when ruling on a motion to dismiss. FN24 Accordingly, I find that Counterclaim Plaintiffs failed to plead any breach of the employment agreements.

FN19. Court of Chancery Rule 8(a)(1).

FN20. *See Goldman v. Pogo.com, Inc.,* 2002 WL 1358760, at *8 (Del. Ch. June 14, 2002).

FN21. Countercl. ¶ 131.

FN22. Defs. and Countercl. Pls.' Answering Br. in Opp'n to the Countercl. Defs.' Mot. to Dismiss ("PAB") at 15.

FN23. *In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d 59, 68 (Del.1995). *See also Haber,* 465 A.2d at 357 ("In considering a motion to dismiss, only those matters referred to in the pleadings are to be considered by the Court.").

FN24. Additionally, I note that Counterclaim Plaintiffs made a conscious decision to stand on the allegations of their Counterclaim by answering Griffin and Counterclaim Defendants' motion to dismiss. Amendment of the Counterclaim at this point in time would be improper under Rule 15(aaa).

**\*5** Additionally, Counterclaim Plaintiffs pled no facts to support their claim that they were damaged as a result of a breach of the employment agreements. The only allegation of damages Counterclaim Plaintiffs make states that "[a]s a result of Entity's intentional interference with existing and prospective business relationships, Defendants have been damaged." FN25 Conclusions of law or fact unsupported by factual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                      Page 6
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

allegations will not be assumed to be true.[FN26] Thus, because Counterclaim Plaintiffs failed to allege any breach of the employment agreements or support their conclusory allegation of resultant damages, I grant Griffin and Counterclaim Defendants' motion to dismiss the counterclaim for tortious interference with existing employment agreements.[FN27]

>    FN25. Countercl. ¶ 134.

>    FN26. *See Haber,* 465 A.2d at 357.

>    FN27. Additionally, Griffin and Counterclaim Defendants argued that dismissal is warranted because while competitors are justified and privileged to compete with each other if proper means are used. I have not relied on that argument because Counterclaim Plaintiffs have alleged facts that could support a finding that Griffin and Counterclaim Defendants' conduct was not justified. *See Bowl-Mor Co. v. Brunswick Corp.,* 297 A.2d 61, 64 (Del. Ch.1972); *Merck & Co. v. SmithKline Beecham Pharm. Co.,* 1999 WL 669354, at *52 (Del. Ch. Aug. 5, 1999). For example, Counterclaim Plaintiffs allege that Griffin and Counterclaim Defendants misrepresented "that [the SPEs] needed to immediately replace Dobrzynski and Jacobs in order to keep their SPE viable" and "that Dobrzynski and Jacobs were no longer available to serve as [the SPEs'] directors, officers and employees," and misrepresented "SMC's fees, professional abilities and business practices." Countercl. ¶¶ 128, 137. Such allegations, taken as true, call into question the nature of Griffin and Counterclaim Defendants' conduct and motive, and raise concern for the interests of the SPEs.

b. Prospective business relationships

To prevail on a claim for tortious interference with prospective business relations, a party must demonstrate the: "(1) the existence of a valid business relation or expectancy, (2) the interferer's knowledge of the relationship or expectancy, (3) intentional interference that (4) induces or causes a breach or termination of the relationship or expectancy and that (5) causes resulting damages to the party whose relationship or expectancy is disrupted."[FN28]

>    FN28. *In re Frederick's of Hollywood, Inc.,* 1998 WL 398244, at *5 (Del. Ch. July 9, 1998); *CPM Indus.,* 1997 WL 762650, at *7.

Jacobs and Dobrzynski served as the Delaware Employee for numerous SPEs while employed at Griffin. Counterclaim Plaintiffs allege that after Jacobs and Dobrzynski resigned from their positions at Griffin, Griffin and Counterclaim Defendants intentionally interfered with such employment relationships and caused Counterclaim Plaintiffs damage. In support of this allegation, Counterclaim Plaintiffs contend that Griffin and Counterclaim Defendants conducted a "calling campaign to as many of the SPEs that had employment contracts with Dobrzynski and Jacobs or for which they served as officers, directors, and/or employees as possible," and that during this calling campaign, Griffin and Counterclaim Defendants told the SPEs that "they needed to replace Dobrzynski and Jacobs in order to continue functioning ... refused to accurately inform, or misinformed, the SPEs where and how to contact Dobrzynski and Jacobs ... [and] misrepresented SMC's fees, professional abilities and business practices."[FN29] The pleadings are sufficient to support an inference that at least some of the SPEs in question chose to terminate their relationship with Jacobs and Dobrzynski and continue with Entity/Griffin based on the alleged misrepresentations. Therefore, Counterclaim Plaintiffs have alleged a termination of their prospective relationships with certain SPEs and resultant damage due to the conduct complained of, and I cannot find that Counterclaim Plaintiffs " would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[FN30] Thus, I deny Griffin and Counterclaim Defendants' motion to dismiss

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                       Page 7

Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Counterclaim Plaintiffs' claim for tortious interference with prospective business relations.

>   FN29. Countercl. ¶ 128.
>
>   FN30. *VLIW Tech.,* 840 A.2d at 611.

### c. Stewart's legal practice

**\*6** Griffin and Counterclaim Defendants also argue that Counterclaim Plaintiffs have failed to identify any improper actions they took to interfere with Stewart's legal practice that resulted in a breach of contract. I agree. The only references made to Stewart in the Counterclaim are paragraphs 103 and 133. Paragraph 133 states, "[u]pon information and belief, [Griffin] and Counterclaim Defendants have intentionally interfered with the legal practice of Defendant Stewart by attempting to undermine the attorney-client relationship Stewart has with many SPEs that have elected Entity/Griffin as its commercial domicile provider." Such a bald statement, without further factual allegations to support it, is merely conclusory and need not be accepted as true.[FN31] The Counterclaim provides no notice or identification of the actions alleged to have undermined or interfered with Stewart's attorney-client relationships. Nor does the Counterclaim allege that any contracts or business relations were breached or terminated. While paragraph 103 notes Stewart's discussions with Wachovia regarding its sale of Griffin, those discussions are not related to Stewart's attorney-client relationships with SPEs and, therefore, provide no support for the tortious interference allegation in paragraph 133.

>   FN31. *See Haber,* 465 A.2d at 357.

For these reasons, I grant Griffin and Counterclaim Defendants' motion to dismiss the counterclaim for tortious interference with Stewart's attorney-client relations.

### 3. Common law and statutory unfair trade practices

Counterclaim Plaintiffs allege that Griffin and Counterclaim Defendants engaged in intentional deceptive and unfair trade practices as set forth in 6 *Del. C.* § 2532 and in common law. Griffin and Counterclaim Defendants respond that this claim should be dismissed because Counterclaim Plaintiffs do not have standing to sue under the Delaware Deceptive Trade Practices Act ("DTPA") and because the acts they challenge do not constitute prohibited acts under § 2532.

### a. Standing

Griffin and Counterclaim Defendants argue that Counterclaim Plaintiffs cannot sue under the DTPA because they lack standing to seek injunctive relief. They argue that to have such standing Counterclaim Plaintiffs would have to have alleged that the harm they suffered is ongoing.

While it is true that one must have standing to seek an injunction to state a cause of action under the DTPA,[FN32] Counterclaim Plaintiffs meet that requirement. The Counterclaim states that Entity/Griffin "deployed a dedicated staff of ten or more to begin a calling campaign to as many of the SPEs that had employment contracts with Dobrzynski and Jacobs ... as possible" on April 19, 2004, and that "[t]hese calls [during which damaging misrepresentations were allegedly made] continued through at least May 17, 2004."[FN33] Although this allegation does not affirmatively state that the harm Counterclaim Plaintiffs suffered continues, it also does not state that such harm has been abated. At this stage, I must accept all well-pleaded facts in the Counterclaim as true and draw all reasonable inferences in favor of Counterclaim Plaintiffs. The ambiguity regarding the continuing nature of the harm alleged, coupled with Counterclaim Plaintiffs' request for injunctive relief, lead me to conclude that Counterclaim Plaintiffs have sufficiently pled a claim for injunctive relief and, thus, have standing to sue under the DTPA.

>   FN32. *See Grand Ventures, Inc. v. Whaley,* 632 A.2d 63, 70 (Del.1993).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 8
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

FN33. Countercl. ¶ 128.

**\*7** Additionally, even if the alleged unfair trade practices were no longer occurring, the harm alleged by Counterclaim Plaintiffs was amenable to injunctive relief. As the court discussed in *Grand Ventures, Inc. v. Whaley,* the requirement that one must have standing to seek an injunction to state a cause of action under the DTPA,
does not exclude the possibility that a deceptive trade practice may cease, for whatever reason, before an injunction can issue, thus theoretically mooting such relief. Presumably, an injunction could still issue to prevent future wrongs even though damages may be the only meaningful remedy. Whatever the case, standing under the Act flows from the nature of the wrong and that it is, *or was,* amenable to injunctive relief because of unreasonable interference with another's business interests or relationships protected by the DTPA. FN34

FN34. 632 A.2d at 70 n. 2 (emphasis added).

Therefore, because Griffin and Counterclaim Defendants' alleged conduct at least *was* amenable to injunctive relief, Counterclaim Plaintiffs have standing under the DTPA.

b. Prohibited acts under § 2532(a)

Section 2532 of the DTPA states, in pertinent part:
A person engages in a deceptive trade practice when, in the course of a business, vocation, or occupation, that person:

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by, another;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact; [or]

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding. FN35

FN35. 6 *Del. C.* § 2532(a).

"In order to prevail in an action under [§ 2532], a complainant need not prove competition between the parties or actual confusion or misunderstanding." FN36 Additionally, the DTPA does not "affect unfair trade practices otherwise actionable at common law or under other statutes of [Delaware]." FN37

FN36. 6 *Del. C.* § 2532(b).

FN37. 6 *Del. C.* § 2532(c).

The Counterclaim alleges that, among other actions, Griffin and Counterclaim Defendants: " misrepresented, and caused their employees to misrepresent that nothing would change when [Entity] acquired Griffin despite [Entity]'s intention to move offices, add officers, require the re-execution of all client contracts, change the accounting service provider, and change the payroll service provider;" "misrepresented the costs of doing business with Griffin by not disclosing a ' hidden charge' to make up any employment tax paid;" "misrepresented the cost of doing business with SMC to SPEs considering switching to SMC;"

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                              Page 9
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

"misrepresented to third parties that they had authority to act on behalf of former clients when they had no such authority;" and "misrepresented to SPEs that Dobrzynski and Jacobs had resigned from the SPEs and were not willing to serve as their directors, officers and employees." [FN38]

> FN38. Countercl. ¶ 137.

**\*8** Though Griffin and Counterclaim Defendants claim that these acts do not constitute prohibited acts under § 2532, for purposes of this motion, I cannot conclude that such a legal conclusion necessarily follows from the allegations in the Counterclaim. Those allegations depict statements made by Griffin and Counterclaim Defendants that disparage the services of SMC, misrepresent characteristics of Entity/Griffin services, and create a likelihood of confusion regarding Entity/Griffin's association with Jacobs and Dobrzynski. A motion to dismiss under Rule 12(b)(6) will be granted only where "it appears with reasonable certainty" that the plaintiff cannot prevail on any set of facts that can be inferred from the pleadings. [FN39] The factual allegations made by Counterclaim Plaintiffs in paragraph 137 alone, if proven true, provide a set of facts upon which they conceivably might prevail. Therefore, I deny Griffin and Counterclaim Defendants' motion to dismiss Counterclaim Plaintiffs' claim for unfair trade practices under 6 *Del. C.* § 2532 and common law.

> FN39. *See, e.g., McMullin,* 765 A.2d at 916; *Rabkin,* 498 A.2d at 1104.

### d. Claims against Campbell and Eppes in their personal capacities

Griffin and Counterclaim Defendants argue that to the extent Counterclaim Plaintiffs assert claims for tortious interference and unfair trade practices against Campbell and Eppes, they appear to do so only in their capacity as officers of Entity. In the past, Delaware courts have found corporate officers liable for tortious conduct and statutory violations despite the fact that their actions were taken in some official corporate capacity. [FN40] The Counterclaim alleges various actions taken by Counterclaim Defendants, which by definition includes Campbell and Eppes, that, if true, could constitute tortious interference with Counterclaim Plaintiffs' prospective business relationships and unfair trade practices under common law and 6 *Del. C.* § 2532. As such, I cannot find that Counterclaim Plaintiffs would not be entitled to recover against Campbell and Eppes individually under any reasonably conceivable set of circumstances susceptible of proof. [FN41] Therefore, I deny Griffin and Counterclaim Defendants' motion to dismiss the counterclaims against Campbell and Eppes.

> FN40. *See State ex rel. Brady v. Preferred Florist Network, Inc.,* 791 A.2d 8, 21-22 (Del. Ch.2001). *See also St. James Recreation, LLC v. Rieger Opportunity Partners, LLC,* 2003 WL 22659875, at \*6 (Del. Ch. Nov. 5, 2003).

> FN41. *See VLIW Tech.,* 840 A.2d at 611.

### 4. Breach of the Confidentiality Agreement

Counterclaim Plaintiffs allege that "Griffin [as assignee of all of Wachovia's rights and obligations regarding the Confidentiality Agreement] breached the confidentiality agreement by acting in bad faith." [FN42] The bad faith action that Counterclaim Plaintiffs allege occurred was Wachovia intentionally deceiving SMC "by misrepresenting to SMC that they were seeking bids to sell Griffin when they already had selected the purchaser, [Entity], prior to executing the confidentiality agreement" or by "mislead[ing] the bidders in January by delaying and misrepresenting the progress of the due diligence phase of the process." [FN43]

> FN42. Countercl. ¶ 141.

> FN43. *Id.*

In order to survive a motion to dismiss for failure to state a breach of contract claim a party must demonstrate, among other elements, a "breach of an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                      Page 10
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

obligation imposed by [the] contract." [FN44] Even if Counterclaim Plaintiffs intended their breach of contract claim to allege a breach of the implied covenant of good faith and fair dealing, they still must "identify a specific implied contractual obligation" that was breached in order to state a claim. [FN45] While "bad faith" actions may constitute a breach of contract, the facts that Counterclaim Plaintiffs allege constitute bad faith relate to the creation of the contract. Specifically, Counterclaim Plaintiffs describe the breach of the Confidentiality Agreement as "making a contract that was a ruse," i.e. they allege that they were induced to enter into the contract based on fraudulent representations, not a breach of an obligation imposed by the contract. [FN46] Additionally, though Counterclaim Plaintiffs allege that Wachovia misled the bidders in January by misrepresenting the status of the sale, there is no provision in the Confidentiality Agreement that obligates Wachovia to disclose the status of the sale to SMC. Rather, the Confidentiality Agreement only states that SMC "may receive certain confidential information concerning [Griffin] or Wachovia." [FN47] Moreover, the Counterclaim provides no notice or identification of the resultant damage from this allegedly misleading statement regarding the status of the sale.

FN44. *VLIW Tech.,* 840 A.2d at 612.

FN45. See Wal-Mart Stores, Inc. v. AIG Life Ins. Co., 872 A.2d 611, 630 (Del. Ch.2005).

FN46. DAB at 18. In fact, Counterclaim Plaintiffs admit that their claim for fraudulent misrepresentation "centers on the same bad faith conduct on which the breach of contract claim was based." *Id.*

FN47. Am. Compl. Exh. A.

**\*9** Therefore, for the reasons discussed above, I grant Griffin and Counterclaim Defendants' motion to dismiss Counterclaim Plaintiffs' claim for breach of the Confidentiality Agreement for failure to state a claim under Rule 12(b)(6).

### 5. Indemnification

Jacobs and Dobrzynski claim that they are "entitled to indemnification from Griffin for all or part of what Plaintiff may recover from Dobrzynski and Jacobs" [FN48] because "agents of companies may be entitled to full indemnification for any liability resulting from acts performed on behalf of the company." [FN49] Griffin and Counterclaim Defendants contend that their suit against Counterclaim Plaintiffs was brought precisely because Jacobs and Dobrzynski took certain actions after they were no longer agents of, or acting on behalf of, Griffin. Additionally, Griffin and Counterclaim Defendants argue that Counterclaim Plaintiffs have not identified any contract or statute under which they would be entitled to indemnification from Griffin. [FN50] In their responsive brief, Counterclaim Plaintiffs assert that there may be an implied contract under which Jacobs and Dobrzynski would have the right to be indemnified and that they need additional discovery. However, no allegation regarding the existence of such a contract, express or implied, appears anywhere in the Counterclaim. Similarly, the Counterclaim points to no Griffin bylaw under which indemnification would be available. [FN51] Though Counterclaim Plaintiffs could have amended their Counterclaim in the face of Griffin and Counterclaim Defendants' motion to dismiss to clarify the basis for their indemnification claim, they chose not to do so.

FN48. Countercl. ¶ 151.

FN49. *Id.* ¶ 150.

FN50. Indemnification is generally available under contract or statute in Delaware. *See Cochran v. Stifel Fin. Corp.,* 2000 WL 286722 (Del. Ch. Mar. 8, 2000), *rev'd on other grounds,* 809 A.2d 555 (Del.2002).

FN51. "In considering a motion to dismiss, only those matters referred to in the pleadings are to be considered by the Court." *Haber,* 465 A.2d at 357.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                          Page 11
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Therefore, I find that Counterclaim Plaintiffs have failed to plead any basis for their claim for indemnification and grant the motion to dismiss that claim under Rule 12(b)(6). [FN52]

> FN52. I note, however, that this dismissal is not intended to affect any right to indemnification that Jacobs and Dobrzynski may have against Griffin with regard to claims outside the scope of the Amended Complaint that may be brought against them in the future.

### B. Dismissal for Failure to Plead Fraud with Particularity as Required by Rule 9(b)

#### 1. Fraudulent misrepresentation

Counterclaim Plaintiffs allege that "Griffin, as assignee of all of Wachovia's rights and obligations regarding the confidentiality agreement" knowingly made the false representation "that it was soliciting bids to sell its business" though "it had intended all along to sell to [Entity]." [FN53] Counterclaim Plaintiffs allege that, as a result of this misrepresentation, they were fraudulently induced to sign the Confidentiality Agreement. In the alternative, they claim that "once Wachovia determined to sell to [Entity], it failed to exercise good faith and intentionally misrepresented the status of the Sale." [FN54] Because of their reliance on these misrepresentations, Counterclaim Plaintiffs seek to void the Confidentiality Agreement.

> FN53. Countercl. ¶¶ 144, 146.
>
> FN54. *Id.* ¶ 146.

Griffin and Counterclaim Defendants argue that this pleading does not satisfy Court of Chancery Rule 9(b)'s requirement that "circumstances constituting fraud shall be stated with particularity." The circumstances that must be stated with particularity under Rule 9(b) are time, place, content of the false representation, identity of the person making the representation, and what she intended to obtain thereby. [FN55] In this case, Counterclaim Plaintiffs assert that during the purported bidding process for Griffin, Wachovia misrepresented the fact that it was soliciting bids to sell Griffin when, in fact, it had already decided to sell to Entity. They allege Wachovia made that misrepresentation in an effort to induce SMC to enter into the Confidentiality Agreement that contained a provision that prevented SMC from soliciting any of Griffin's employees for two years and effectively "tie[d] the hands of all of Griffin's competitors." [FN56] I find these allegations sufficient to meet the Counterclaim Plaintiffs' obligation to plead fraud with particularity under Rule 9(b). Thus, Griffin and Counterclaim Defendants' motion to dismiss the counterclaim for fraudulent misrepresentation under Rule 9(b) is denied.

> FN55. *See Metro Communication Corp. BVI v. Advanced Mobilcomm Tech. Inc.,* 854 A.2d 121, 144 (Del. Ch.2004); *H-M Wexford LLC v. Encorp, Inc.,* 832 A.2d 129, 145 (Del. Ch.2003).
>
> FN56. Countercl. ¶ 146.

**\*10** I also do not find Counterclaim Plaintiffs' fraud allegations conclusory. In support of their claim that the bidding process for Griffin was a sham, they allege that the material they received in response to signing the Confidentiality Agreement and engaging in the bidding process "provided minimal overview information to SMC .... [and] essentially no confidential information." [FN57] Counterclaim Plaintiffs further allege that "SMC proposed to pay at least 1 million dollars more than [Entity] agreed to pay [to purchase Griffin,]" yet Wachovia never responded to their bid. [FN58]

> FN57. *Id.* ¶ 104.
>
> FN58. *Id.* ¶ 105.

Griffin and Counterclaim Defendants also argue that they are not responsible for Wachovia's alleged misrepresentations before the execution of the Confidentiality Agreement. Counterclaim

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                         Page 12
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

Defendants respond that Griffin is the "assignee of all of Wachovia's rights and obligations regarding the confidentiality agreement," [FN59] including their fraudulent misrepresentation claim against Wachovia. Griffin and Counterclaim Defendants deny that the assignment includes liability for Wachovia's alleged fraud. The letter assignment between Wachovia and Griffin was not made part of the pleadings. In fact, it was submitted by the nonmoving party, Counterclaim Plaintiffs, and only after argument on Griffin and Counterclaim Defendants' motion to dismiss. Generally, matters outside the pleadings should not be considered in ruling on a motion to dismiss. [FN60] Therefore, I have not considered the letter assignment for purposes of this motion.

> FN59. *Id.* ¶¶ 102, 144.
>
> FN60. *See In re Santa Fe Pac. Corp. S'holder Litig.,* 669 A.2d at 69; *Haber,* 465 A.2d at 357.

Counterclaim Plaintiffs allege that Griffin is assignee of "all of Wachovia's rights and obligations regarding the confidentiality agreement" [FN61] and argue that such obligations include defense of claims for fraudulent representations regarding the Confidentiality Agreement. Giving Counterclaim Plaintiffs the benefit of all reasonable inferences that can be drawn from its pleading, and without further factual development and analysis of the letter assignment, I cannot conclude that they would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof. [FN62] Therefore, I also deny Griffin and Counterclaim Defendants' motion to dismiss the counterclaim for fraudulent misrepresentation under Rule 12(b)(6).

> FN61. Countercl. ¶¶ 102, 144.
>
> FN62. Moreover, fraud in the inducement is a defense against an assignee attempting to enforce a contract between its assignor and an obligor. *See* Restatement (Second) of Contracts § 164 (1981) ("If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient") and § 366 ("By an assignment the assignee acquires a right against the obligor only to the extent that the obligor is under a duty to the assignor; and if the right of the assignor would be voidable by the obligor or unenforceable against him if no assignment had been made, the right of the assignee is subject to the infirmity.").

Griffin stated a claim for breach of the Confidentiality Agreement in the Amended Complaint. Though Counterclaim Plaintiffs asserted fraudulent misrepresentation as a counterclaim, it appears to be more appropriately framed as an affirmative defense in this situation. When a party has mistakenly designated a defense as a counterclaim, Court of Chancery Rule 8(c) allows the Court to treat the pleading as if there had been a proper designation. Although I am somewhat skeptical about the likelihood of success on the merits, I conclude that the assertion of fraudulent misrepresentation is sufficient as either a counterclaim or an affirmative defense to withstand the pending motion to dismiss.

### III. CONCLUSION

For the reasons stated above, the Court grants Griffin and Counterclaim Defendants' motion to dismiss Counterclaim Plaintiffs' claims for tortious interference with existing business contracts and Stewart's attorney-client relations, breach of the Confidentiality Agreement, and indemnification. The Court denies Griffin and Counterclaim Defendants' motion to dismiss Counterclaim Plaintiffs' claim for tortious interference with prospective business relations, unfair trade practices under 6 *Del. C.* § 2532 and common law, and fraudulent misrepresentation. I also deny the motion to dismiss as to the claims against Campbell and Eppes.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 13
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)
**(Cite as: Not Reported in A.2d)**

IT IS SO ORDERED.

Del.Ch.,2005.
Griffin Corporate Services, LLC v. Jacobs
Not Reported in A.2d, 2005 WL 2000775 (Del.Ch.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.