# TAB 7



Not Reported in A.2d                                                                                                        Page 1
Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Only the Westlaw citation is currently available.
UNPUBLISHED OPINION. CHECK COURT RULES BEFORE CITING.
Superior Court of Delaware.
Sarah M. WILLIAMS, Plaintiff,
v.
Penelope L.H. HOWE, and Jefferson, Urian, Doane, and Sterner, P.A ., Defendants.
**No. Civ.A. 03C-10-054PLA.**

Submitted April 5, 2004.
Decided May 3, 2004.

Upon Defendants' Motion for Summary Judgment. Granted.

Sarah M. Williams, Wilmington, Delaware, Plaintiff, pro se.
Colleen D. Shields, Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, Delaware, for Defendants.

ORDER

ABLEMAN, J.

**\*1** Before the Court is a Motion for Summary Judgment filed by defendants, Penelope L.H. Howe ("Howe") and the accounting firm of Jefferson, Urian, Doane, and Sterner, P.A. ("JUDS"), in this defamation action filed by plaintiff, Sarah M. Williams ("Williams"). For the reasons set forth below, defendants are entitled to judgment as a matter of law. The Court finds that the cause of action is barred by the statute of limitations, and that the facts, when viewed in the light most favorable to plaintiff, fail to establish the elements required to prove defamation. Finally, the Court holds that plaintiff has failed to state a claim upon which relief can be granted regarding defendants' debt collection practices.

FACTS

In September of 2001, Williams was employed as an officer on the Executive Board of the local Chapter of the American Postal Worker's Union ("Local 152) located in Wilmington, Delaware. As of August 1998, defendant Howe, a certified public accountant, in her capacity as an employee of JUDS, was engaged by Local 152 to perform certain accounting services on its behalf. On September 7, 2001, Howe authored a letter, directed to Robert L. Tunstall, the Treasurer of the National American Postal Worker's Union, in which she advised that she had terminated her services to the Local 152 when she discovered "concrete evidence of misappropriation of funds." The content of the letter is as follows:

I am writing regarding the above-mentioned Local [Local 152]. My firm was hired to prepare income tax returns, as well as all payroll returns for the Wilmington, Delaware Local for the years 1993-2001. This Local was in serious arrears for payroll taxes as well as penalties for failure to file income tax returns. My firm prepared the necessary reports to put the Local in good standing with the IRS through 1999, as far as reports being filed. Taxes and penalties, at that time, were still due.

I have terminated all services to this Local based on concrete evidence of misappropriation of funds. As you are probably well aware, due to severe mismanagement, this Local is in serious financial condition. As I have provided the services that were requested and billed appropriately, I expect payment in full. However, my invoices for services rendered have not been paid and I am looking for the APWU, AFL-CIO to settle this bill in full. I'm well aware the IRS will be collecting from this Local for some time. However, the IRS would not be able to collect if I had not prepared the necessary reports. I have attached a copy of the most current statement sent to this Local for your reference. The balance due is $16,284.26. Thank you for your prompt attention to this matter.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                              Page 2
Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

Upon receipt of Howe's September 7, 2001 letter by the National Executive Board of American Postal Worker's Union, the Board placed the Local 152 under trusteeship. As a result, the executive officers of the Local 152, including Williams, were relieved of their duties and suspended from their office. Charges were filed against Williams and other Local 152 officers.

*2 On October 8, 2003, Williams filed her defamation lawsuit against Howe and JUDS. In her complaint, Williams alleges that, "[P]laintiff continues to suffer damages based on defendants['] September 7, 2001 letter" and that, "[d]efendants continue acts of malice, negligence, and gross negligence by failing to correct the false, defamatory, libelous and slanderous letter about the Plaintiff." Williams also alleges that Howe and JUDS "[b]roke state and federal laws, Consumer Debt Collection Act when the defendants wrote false, defamatory, libelous and slanderous letter of September 7, 2001 to Mr. Tunstall." Further, Williams argues that defendants are guilty of slander per se, libel per se, and that, because of their false statements, she has lost compensation she would have earned as a Director of Local 152, and has been prevented from serving as a paid local officer.

### CONTENTION OF THE PARTIES

In their motion for summary judgment, filed March 9, 2004, Howe and JUDS argue that they are entitled to summary judgment on the defamation claim because: 1) the claim is time barred under the applicable statute of limitations; and 2) Williams cannot prove two material elements of a defamation action as: i) the alleged defamatory statement contained in the September 7, 2001 letter does not refer to, and cannot be reasonably interpreted to refer to, Williams; and ii) publication of the alleged defamatory statement contained in the September 7, 2001 letter to the Treasurer of the National American Postal Worker's Union constituted a privileged communication. Howe and JUDS also contend, with respect to Williams' claim that they "conspired to illegally collect a debt" and that they "broke state and federal laws," including the Consumer Debt Collection Act, that Williams has failed to state a claim upon which relief can be granted.

In response, Williams argues the statute of limitations is not tolled because Howe and JUDS committed "fraudulent concealment" of a cause of action. [FN1] Williams contends that the Local 152, Howe, and JUDS had an agreement concerning the debt owed to Howe and JUDS, i.e., it was "to be paid over time and after the Local 152 bond was cash, and after the Local 152 debt was paid to IRS and back taxes paid." Williams asserts that Howe and JUDS concealed this information in the September 7, 2001 letter to the National American Postal Worker's Union. Further, Williams asserts that Howe and JUDS had a "contract" or "agreement" with the Executive Board of Local 152 to notify "executive board members about any issues between American Postal Workers Union Local 152, and defendants." As such, Williams relies on "both State and Federal Law" for the proposition that the "limitations period is tolled where a defendant[']s fraudulent concealment of its wrongful acts prevents the plaintiff from discovering rights."

FN1. *See generally Halpern v. Barran,* 313 A.2d 139 (Del. Ch.1973); *DiBiase v. A & D, Inc.,* 351 A.2d 865 (Del.Super.Ct.1976).

Williams also submits that sworn testimony provided by Barbara J. Prothro (the Trustee appointed to take over the Local 152 business after the executive officers were relieved from their offices) at the December 9, 2003 deposition in this matter, "proved elements of defamation, and understanding that the September 7, 2001 letter referred to plaintiff." Lastly, with no supporting evidence, Williams continues to maintain that Howe and JUDS "conspired to illegally collect a debt that the [sic] broke stating [sic] federal laws, including the Consumer Debt Collection Act."

### STANDARD OF REVIEW

*3 Summary judgment may only be granted where

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                 Page 3
Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

the pleadings, depositions, answers to interrogatories, admissions on file and affidavits, if any, "show that there is no genuine issue as to material fact and that the moving party is entitled to a judgment as a matter of law." [FN2] The Court must view the facts in a light most favorable to the non-moving party. [FN3] The moving party bears the initial burden of showing that a genuine material issue of fact does not exist. [FN4] If a motion is properly supported, the burden shifts to the non-moving party to demonstrate that there are material issues of fact. [FN5] If, after viewing the record in the light most favorable to the non-moving party, the Court finds no genuine issue of material fact, summary judgment is appropriate. [FN6] Summary judgment will be denied where the proffered evidence provides "a reasonable indication that a material fact is in dispute." [FN7]

> FN2. DEL.SUPER. CT. CIV. R. 56(c); *Burkhart v. Davies,* 602 A.2d 56, 59 (Del.1991).
>
> FN3. *Merrill v. Crothall-American, Inc.,* 606 A.2d 96, 99-100 (Del.1992).
>
> FN4. *Brzoska v. Olson,* 668 A.2d 1355, 1364 (Del.1995).
>
> FN5. *Id.*
>
> FN6. *Alabi v. DHL Airways, Inc.,* 583 A.2d 1358, 1361 (Del.Super.Ct.1990); *Hammond v. Colt Indus. Operating Corp.,* 565 A.2d 558, 560 (Del.Super.Ct.1989).
>
> FN7. *Ebersole v. Lowengrub,* 180 A.2d 467, 470 (Del.1962).

## DISCUSSION

With regard to Howe and JUDS' first contention, it is settled law in Delaware that the statute of limitations for a defamation action is two years. [FN8] Any action alleging slander and/or libel must be filed within the two-year period from the date the alleged defamatory statement is communicated to the third party. In this instance, the alleged defamatory letter sent to the Treasurer of the National American Postal Worker's Union was dated September 7, 2001. The two-year statute of limitations expired on September 7, 2003. Williams filed her defamation suit on October 8, 2003. Hence, it is time barred.

> FN8. DEL.CODE ANN. tit 10, § 8119 (1999 & Supp.2002); *Read v.. Baker,* 430 F.Supp. 472 (D.Del.1977) (holding that actions to recover damages for libel and slander are barred after expiration of 2 years from the date the alleged libelous statement was published or the slanderous statement made).

Williams' claim that Howe and JUDS "fraudulent concealment activities deprived the plaintiff full benefit of the statute of limitations," thereby tolling the statute of limitations, is misplaced. The doctrine of "fraudulent concealment" tolls the statute of limitations until such time as the cause and the opportunity for bringing an action against another could have been discovered by due diligence. [FN9] Most often invoked in cases of medical malpractice or personal injury, [FN10] where scienter and affirmative action on the part of a defendant are generally deemed essential elements, [FN11] Williams' allegation, as set forth in the instant case, is miscast. Williams alleges that the so-called "agreement" or "contract" between Howe and JUDS to notify the executive officers of the Local 152 on any issues, including request for payment of the debt, was somehow "concealed" by Howe and JUDS from the National American Postal Worker's Union. The Court finds this argument illogical and unrelated to the issue before the Court. Both the purported cause, and the opportunity, for bringing an action against Howe and JUDS would have originated in the alleged defamatory letter dated September 7, 2001. There was no need for any further due diligence to permit discovery or pursuit of the cause of action. Why concealing this agreement would prevent Williams from discovering the alleged defamatory nature of the letter belies logical reasoning and rational consideration. Thus, Williams' defense of the doctrine of fraudulent concealment fails.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                                Page 4
Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

FN9. *See Walls v. Abdel-Malik,* 440 A.2d 992 (Del.1982).

FN10. *Id.; see also Tilden v. Anstreicher,* 367 A.2d 632 (Del.1976).

FN11. *Tilden,* 367 A.2d at 632.

**\*4** Second, Howe and JUDS assert that Williams has failed to prove the elements of defamation. To prove an action in defamation, the plaintiff must substantiate that there has been: 1) a defamatory communication; 2) publication to a third party; 3) understanding by the third party that the communication refers to the plaintiff; 4) understanding by the third party regarding the defamatory content and nature of the statement; and 5) injury. [FN12] Upon examination of the alleged defamatory September 7, 2001 letter, the Court finds that the elemental formula for defamation has not been satisfied. First, the letter does not specifically refer to Williams by name, nor can one reasonably infer from its contents that the letter is referring to Williams. As Howe and JUDS point out, during this period in September of 2001, the financial records and books of the Local 152 were in the possession and control of the Treasurer, John Melnick, and the President, Anna Christine Simmons, of the Local 152. Williams had not been given any check-writing privileges in her employ at the Local 152, nor was the office she held instilled with any authority to bind the Local 152 financially. Any allegation of "misappropriation of funds" contained in the letter could only be attributed to those individuals who controlled, oversaw, or dispensed the Local's funds, i.e., the Treasurer or the President. Therefore, the third element for proof of defamation, i.e. "understanding by the third party that the communication refers to the plaintiff," cannot be established. Also, the sworn testimony of Barbara J. Prothro, offered in the related matter of *Simmons v. Howe,* C.A. No. 02C-11-255 JRS, attests that Williams was not reinstated to her office with the Local 152 Executive Board for reasons wholly independent of the September 7, 2001 letter.

FN12. *Bloss v. Kershner,* 2000 WL 303342, at \*6 (Del.Super.Ct.).

Lastly, liability does not attach to a purported defamatory statement if the statement is considered privileged. A "qualified privilege" protects a communication made between persons who have a common interest for the protection of which the allegedly defamatory statement is made. [FN13] Additionally, the qualified privilege extends to statements disclosed to any person who has a legitimate expectation in the subject matter. [FN14] In this instance, the Court also finds that the publication of Howe's statement in the September 7, 2001 letter to the Treasurer of the National American Postal Workers Union was privileged. The Treasurer had a legitimate expectation in the allegation of alleged misappropriation of funds by one of his local union boards, and there existed commonality of interest between the Treasurer and Howe/JUDS, to whom fees for services rendered to the local union, were owed. Hence, since privilege existed in this communication, there can be no applicable liability to assign to Howe and/or JUDS.

FN13. *Pierce v. Burns,* 185 A.2d 477, 479 (Del.1962).

FN14. *Burr v. Atlantic Aviation,* 332 A.2d 154, 155 (Del.1974), *rev'd on other grounds,* 348 A.2d 179 (Del.1975).

Finally, Howe and JUDS argue that Williams has failed to state a claim upon which relief can be granted with respect to her allegations related to Howe and JUDS' efforts to collect a past debt due. The Court agrees. At no time did Howe or JUDS attempt to collect any debt from Williams. They sought payment for services rendered directly from the Treasurer of the National American Postal Workers Union. Moreover, Howe and JUDS did not engage in any form of debt collection activity that would have made their actions subject to the auspices of the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"). This law was enacted with the objective of protecting consumers by regulating, and attempting to eliminate, abusive debt collection practices by debt collectors. Neither Howe, nor JUDS, are in the business of collecting debts. Thus, their request for some level of cooperation from the Treasurer in

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in A.2d                                                                                                    Page 5

Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)
**(Cite as: Not Reported in A.2d)**

securing payment for their services, as delineated in the letter, would not make them subject to the regulations of FDCPA or any other consumer debt collection laws. Thus, Williams' claim that Howe and JUDS illegally conspired to collect a debt, which violated state and federal laws, including FDCPA, is totally without merit.

CONCLUSION

**\*5** The Court has viewed the facts contained in the record in a light most favorable to Williams and finds that Howe and JUDS have satisfied the initial burden of showing that a genuine material issue of fact does not exist. Since the motion was properly supported, the burden shifted to Williams to demonstrate that material issues of fact do exist. In both her complaint, and in her subsequent response in opposition to the motion for summary judgment, Williams has failed to demonstrate and/or provide even a scintilla of evidence, that there are material issues of fact in dispute. Williams' defamation claim is barred by the statute of limitations. She has also failed to establish the elements necessary to prove defamation. Finally, Williams failed to state a claim upon which relief can be granted with respect to her debt collection allegations. Accordingly, since the Court finds no material facts in dispute, summary judgment is appropriate.

For all the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED.

IT IS SO ORDERED.

Del.Super.,2004.
Williams v. Howe
Not Reported in A.2d, 2004 WL 2828058 (Del.Super.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.