IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBIN D. NICHOLS, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION |
| | * | NO. 05-055(KAJ) |
| v. | * | |
| | * | |
| BENNETT DETECTIVE & | * | |
| PROTECTIVE AGENCY, INC., | * | |
| A Delaware corporation, and | * | |
| ALLEN'S FAMILY FOODS, INC., | * | |
| A Delaware corporation, | * | |
| | * | |
| Defendants. | * | |

---

**PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO DEFENDANT
BENNETT DETECTIVE & PROTECTIVE AGENCY, INC.'S
MOTION FOR SUMMARY JUDGMENT**

---

SCHMITTINGER AND RODRIGUEZ, P.A
BY:  WILLIAM D. FLETCHER, JR.
     Bar I.D. #362
BY:  NOEL E. PRIMOS, ESQUIRE
     Bar I.D. #3124
     414 South State Street
     P.O. Box 497
     Dover, Delaware 19903-0497
     (302) 674-0140
     Attorneys for Plaintiff

Dated: 2/9/06

**TABLE OF CONTENTS**

PAGE

TABLE OF AUTHORITIES........................................... ii

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS............ 1

SUMMARY OF ARGUMENT............................................ 2

STATEMENT OF FACTS............................................. 3

ARGUMENT....................................................... 7

    I.   SUMMARY JUDGMENT STANDARD............................. 7

    II.  PLAINTIFF HAS ESTABLISHED A <u>PRIMA FACIE</u> CASE OF
        RACE DISCRIMINATION UNDER 42 U.S.C. § 1981 AND THE
        DELAWARE DISCRIMINATION ACT........................... 7
        A.   The Elements of a <u>Prima Facie</u>
            Discrimination Case are the Same
            Under 42 U.S.C. § 1981 and the
            Delaware Discrimination Act....................... 8
        B.   Plaintiff Has Established a <u>Prima Facie</u>
            Case of Discrimination............................ 10
            1.   Plaintiff Suffered An Adverse
                 Employment Action........................... 10
            2.   Bennett's Actions Give Rise To An
                 Inference of Discrimination................. 12
        C.   Bennett Has Offered No Legitimate
            Justification For Its Discriminatory
            Treatment of Plaintiff............................ 13

    III. SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S
        REMAINING CLAIMS OF GENDER DISCRIMINATION UNDER
        THE DDA............................................... 14

    IV.  PLAINTIFF'S CLAIMS OF DISCRIMINATION ARE NOT
        DEFEATED BY THE FACT THAT PLAINTIFF'S POSITION
        WAS FILLED BY ANOTHER BLACK FEMALE.................... 15

CONCLUSION.................................................... 16

**TABLE OF AUTHORITIES**

PAGE

**CASES**

Bishop v. Wood,
    426 U.S. 341 (1976).................................. 7

Burch v. WDAS AM/FM,
    2002 U.S. Dist. LEXIS 12290 (E.D.Pa.)................ 9

Cannon v. Delaware,
    523 F.Supp. 341 (D. Del. 1981)...................... 8

Cardenas v. Massey,
    269 F.3d 251 (3d Cir. 2001)......................... 11

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)................................. 7

Cifarelli v. Village of Babylon,
    93 F.3d 47 (2d Cir. 1996)........................... 7

Cuffee v. Dover Wipes Co.,
    334 F.Supp.2d 565 (D.Del. 2004)..................... 11

Duffy v. Paper Magic Group, Inc.,
    265 F.3d 163 (3d Cir. 2001)......................... 11

Jones v. School District of Philadelphia,
    198 F.3d 403 (3d Cir. 1999)......................... 10,14

Lewis v. University of Pittsburgh,
    725 F.2d 910 (3d Cir. 1983)......................... 9

McDonnell Douglas Corp. v. Green,
    411 U.S. 792 (1973)................................. 9

Riner v. NCR,
    434 A.2d 375 (Del. 1981)............................ 8

Rizzitiello v. McDonald's Corp.,
    2004 Del. Super. LEXIS 46,
    aff'd 868 A.2d 825 (Del. 2005)...................... 8

Saint Mary's Honor Center v. Hicks,
    509 U.S. 502 (1993)................................. 9

<u>Schurr v. Resorts Int'l Hotel, Inc.</u>,
    196 F.3d 486 (3d Cir. 1999)................................. 9

<u>Storey v. Burns International Society</u>,
    390 F.3d 760, 764 (3d Cir. 2004)........................... 11

<u>Schwapp v. Town of Avon</u>,
    118 F.3d 106 (2d Cir. 1997)................................ 10

<u>Torre v. Casio, Inc.</u>,
    42 F.3d 825 (3d Cir. 1994)................................. 11

<u>United States v. Diebold</u>,
    369 U.S. 654 (1962)......................................... 7


**STATUTES**

19 Del. C. § 710........................................... 1,7,8

42 U.S.C. § 1981........................................... 1,7,8

**RULES**

Fed. R. Civ. P. 56(c)......................................... 7

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDINGS

On December 28, 2004, Plaintiff, Robin Nichols, sued Bennett Detective & Protective Agency, Inc. (hereinafter Bennett) and co-defendant Allen's Family Foods, Inc. (hereinafter Allen's) after she was removed from her job as a supervisor of security officers at Allen's Harbeson, Delaware plant. In her complaint, Plaintiff alleges that Defendants discriminated against her on the basis of her race and sex in violation of the Delaware Discrimination Act (19 Del. C. § 710 et. seq.) and 42 U.S.C. § 1981. Plaintiff also alleges that Allen's tortiously interfered with her employment with Bennett and defamed her by making false oral statements about her.

The matter was removed to the United States District Court for the District of Delaware on February 2, 2005. Defendants Bennett and Allen's filed separate Motions for Summary Judgment on January 27, 2006. Plaintiff files this brief in opposition to Bennett's Motion for Summary Judgment because genuine issues of material fact exist in this case.

## SUMMARY OF ARGUMENT

Summary judgment should be denied because there are genuine issues of material fact with regard to Plaintiff's claims, and those claims should be submitted to a jury.

1.  Summary Judgment should be denied on Plaintiff's claims of race discrimination because Plaintiff has established a <u>prima facie</u> case of such discrimination.

2.  Summary Judgment should be denied on Plaintiff's claims of gender discrimination because she has established a <u>prima facie</u> case of such discrimination.

3.  The fact that Plaintiff was replaced by a black female does not rebut the inference of discrimination that arises from the fact that Plaintiff was removed from Allen's while a white, male employee was not disciplined at all for the altercation between Plaintiff and the white employee.

## STATEMENT OF FACTS

Plaintiff is an African-American female. (Deposition of Greg Miller, at 14)(B35). Bennett is a security agency that provides security guards to a number of different customers at various locations. (Deposition of Mark Habicht, at 6-7)(B42-43). Bennett has a contract with Allen's under which Bennett provides uniformed security officers to two Allen's plants. (Habicht Dep., at 11-12)(B44-45).

Plaintiff began her employment with Bennett as a security guard on July 30, 2001. (Deposition of Wayne Keller, at 9)(B58). Plaintiff worked at the Allen's Harbeson, Delaware plant from the beginning of her employment at the end of July 2001 until December 2003 when Bennett removed her from the Harbeson plant. (Keller Dep., at 13)(B59).

During her employment at the Allen's plant Plaintiff was a good worker and, prior to her removal from the Harbeson plant, had never been disciplined. (Keller Dep., at 31)(B77). Plaintiff's performance was so outstanding that she was promoted by Bennett to the position of supervisor. (Keller Dep., at 13)(B59). As supervisor, Plaintiff was responsible for the security procedures at Allen's plant. (Keller Dep., at 17)(B63). Plaintiff interacted with Allen's Human Resources Manager, Greg Miller on a daily basis and responded to his requests to change specific security procedures at Allen's. (Keller Dep., at 17-19)(B63-65). Plaintiff also oversaw the other Bennett employees at the Harbeson

plant, including Joseph Joshua Whiteman. (Nichols Dep., at 39-40)(B4-5). Whiteman is a white male. (Miller Dep., at 14)(B35).

On December 11, 2003, Mr. Whiteman attacked Plaintiff in the guardhouse at the Harbeson plant. (Nichols Dep., at 39-50)(B4-15). According to Plaintiff, Whiteman pushed Plaintiff three times during this incident, including pushing her into the file cabinet and the CB radio. (Nichols Dep., at 40-41)(B5-6). Plaintiff then called the police who came to the Harbeson plant to investigate this altercation. (Nichols Dep., at 39-42)(B4-7). No official charges were filed in the matter. (Nichols Dep., at 42)(B7).

Greg Miller is Manager of Human Resources at the Allen's Harbeson Plant. (Miller Dep., at 4)(B34). Soon after the altercation between Plaintiff and Whiteman, Miller contacted Mark Habicht, who was a vice president at Bennett. (Habicht Dep., at 18-19)(B46-47). Habicht recalled that Miller told him over the phone that "she [Plaintiff] had to go, that he [Miller] couldn't have that kind of activity going on in his plant, it was too disruptive." (Habicht Dep., 23)(B49). Habicht then called Wayne Keller (also a vice president at Bennett) to inform Keller of the incident. (Keller Dep., at 54)(B87). According to Miller, either Keller or Habicht suggested that Miller, Habicht and Keller meet the next morning. (Miller Dep., at 16)(B37).

According to Plaintiff, Miller interviewed Whiteman about the incident but did not get Plaintiff's side of the story. (Nichols Dep., at 53-54)(B18-19). At some point on the evening of December

4

11, Keller spoke to Whiteman concerning the incident. (Keller Dep., at 24-25)(B70-71). The next morning, December 12, 2003, Miller, Habicht and Keller met at the Harbeson plant to discuss the altercation. (Habicht Dep., at 22-23)(B48-49). The defendants' versions of what was discussed at that meeting conflict dramatically. Miller argues that at that meeting Keller and Habicht, on behalf of Bennett, offered to remove Plaintiff from her position at Allen's and he "accepted" their offer. (Miller Dep., at 40)(B39). Keller and Habicht, however, state that Miller told them at the meeting that "I like you guys, but she's [referring to Plaintiff] got to go." (Keller Dep., at 16-17)(B62-63); (Habicht Dep., at 23-24)(B49-50). Keller further stated that Miller "didn't ask to move Mr. Whiteman." (Keller Dep., at 40)(B86).

Also on December 12, 2003, Valerie Brittingham, an employee of Allen's approached Plaintiff and told Plaintiff that Miller was "telling everybody" that everything was Plaintiff's fault and that Plaintiff was not capable of doing her job. (Nichols Dep., at 57-59)(B22-24). Plaintiff testified that, during that conversation, Ms. Brittingham told Plaintiff that Miller was a racist. (Nichols Dep., at 58)(B23).

On December 15, 2003, Keller called Plaintiff to inform her that she was being removed from the Allen's plant. (Keller Dep., at 21-22, 29)(B67-68,75). Keller claimed that, at that time, Bennett did not have any other position available for Plaintiff. (Nichols Dep., at 102)(B26). Keller did not call Plaintiff until

5

a few days later to inform Plaintiff that another position was available. (Keller Dep., at 32-33)(B78-79). The new position Keller offered Plaintiff was only a part-time position at a Perdue plant in Milford. (Keller Dep., at 33)(B79). Plaintiff became ill the night before she was to report to the Perdue plant. (Nichols Dep., at 105)(B29). A few days later, Keller informed Plaintiff that she was to be transferred to another part-time position at the Sussex County Family Court. (Nichols Dep., at 106)(B30).

Plaintiff reported to work for a few days at the Sussex County Family Court. (Keller Dep., at 34-35)(B80-81). However, the guard at the Family Court who Plaintiff had been replacing returned to work December 29th. (Nichols Dep., at 106)(B30); (Keller Dep., at 35)(B81). Keller claimed that he was never able to find Plaintiff a full-time position after she was removed from the Allen's plant. (Keller Dep., at 33)(B79). Because Bennett claimed it was not able to provide her a full-time position with comparable pay to her job at Allen's, Plaintiff was forced to resign her position at Bennett on January 5, 2004. (Nichols Dep., at 29)(B3).

Whiteman, who had only been employed at Bennett approximately one month at the time of the altercation with Plaintiff, was not disciplined in any way for his role in the altercation with Plaintiff. (Habicht Dep., at 28-29)(B54-55).

**ARGUMENT**

I.  **SUMMARY JUDGMENT STANDARD.**

Summary judgment is appropriate only where there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c). The party moving for summary judgment has the burden of identifying evidence it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). For purposes of a summary judgment motion, the Court must view the facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). The non-moving party's version of the facts must be accepted, and all disputed facts resolved in her favor. Bishop v. Wood, 426 U.S. 341, 348 n.11 (1976). The Court must resolve all ambiguities and draw all reasonable inferences against the moving party. Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996).

Plaintiff has raised several genuine issues of material fact that remain unresolved at this stage of the case.

II. **PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF RACE DISCRIMINATION UNDER 42 U.S.C. § 1981 AND THE DELAWARE DISCRIMINATION ACT.**

The strong factual dispute between Miller and Bennett's vice presidents, Keller and Habicht, as to who decided to remove Plaintiff from Allen's plant is a significant issue of material

7

fact still in dispute in this case. Defendants disagree as to whether Miller demanded that Plaintiff be removed from Allen's or whether Plaintiff's transfer was suggested by Keller or Habicht. This factual dispute, itself, is sufficient to preclude summary judgment.

In the event the Court does not determine that this dispute is a genuine issue of material fact, however, summary judgment on Plaintiff's claims of discrimination should nonetheless be denied because she has established a <u>prima facie</u> case of race discrimination under both 42 U.S.C. § 1981 and the Delaware Discrimination Act.

### A. The Elements of a <u>Prima Facie</u> Discrimination Case Are the Same Under 42 U.S.C. § 1981 And The Delaware Discrimination Act.

The definition of "employee" as "an individual employed by an employer" is identical under the Delaware Discrimination Act (19 <u>Del</u>. <u>C</u>. § 710 <u>et seq</u>.) and Title VII. Consequently, although cases arising under the Delaware Discrimination Act ("DDA") are governed by state law, courts generally apply the same principles of law applicable to Title VII. <u>See</u> <u>Cannon v. Delaware</u>, 523 F.Supp. 341, 344 (D. Del. 1981)(holding that "Delaware State law prohibits employment discrimination in terms almost identical to Title VII itself."); <u>see also</u> <u>Riner v. NCR</u>, 434 A.2d 375, 376 (Del. 1981)(courts examining DDA claims generally take interpretive lead from Title VII); <u>Rizzitiello v. McDonald's</u>

Corp., 2004 Del. Super. LEXIS 46, aff'd 868 A.2d 825 (Del. 2005)(employee's racial discrimination claim under 19 Del.C. § 711 analyzed under the same considerations as a claim under Title VII).

The elements of employment discrimination under § 1981 are the same as those for a Title VII claim. Burch v. WDAS AM/FM, 2002 U.S. Dist. LEXIS 12290 (E.D.Pa.), at *18 (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999); Lewis v. University of Pittsburgh, 725 F.2d 910, 915 n.5 (3d Cir. 1983)). A plaintiff may establish a prima facie case of race discrimination under Section 1981 or the DDA by "presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements." Burch, 2002 U.S. Dist. LEXIS 12290, at *18 (citing Saint Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993)). If the plaintiff cannot present direct evidence of discrimination, "he may survive summary judgment on a McDonnell Douglas pretext theory." Id. at *20. "The McDonnell Douglas analytical framework for Title VII claims also applies to employment discrimination claims under § 1981." Burch, 2002 U.S. Dist. LEXIS 12290 (E.D.Pa.), at *18 (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973)). Therefore, the elements of a prima facie case of race discrimination are the same under either 42 U.S.C. § 1981 or the Delaware Discrimination Act.

The McDonnell Douglas test requires that a plaintiff establish that: 1) she is a member of a protected class; 2) she

was qualified for her position; 3) she was subject to an adverse employment action; and 4) the circumstances of this adverse employment action give rise to an inference of discrimination. Jones v. School District of Philadelphia, 198 F.3d 403, 410-11 (3d Cir. 1999). A court should be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question." Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997).

### B. Plaintiff Has Established a Prima Facie Case of Discrimination.

Bennett does not dispute that Plaintiff was a member of a protected class or that she was qualified for her position. In fact, Plaintiff's promotion from security guard to supervisor demonstrates that her performance was exceptional. Bennett argues only that Plaintiff cannot establish that she suffered an adverse employment action or that her transfer created an inference of discrimination. (Bennett Opening Brief, at 10).

#### 1. Plaintiff Suffered An Adverse Employment Action.

Bennett's actions in transferring Plaintiff from a full-time position to a part-time position constituted an adverse employment action. On December 15, 2003, after discussions with Greg Miller, Keller called Plaintiff to tell her she was being removed from her full-time supervisor position at the Allen's Harbeson plant. (Keller Dep., at 29)(B75). Keller admitted that, while he did offer Plaintiff two part-time jobs, he never found her a full-time

10

job with comparable hours and pay to replace her job at Allen's. (Keller Dep., at 33)(B79).

An "adverse employment action" is "an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions or privileges of employment.'" Storey v. Burns International Society, 390 F.3d 760, 764 (3d Cir. 2004)(quoting Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001). As Bennett's Brief admits, (Bennett Brief, at 11-12) the Third Circuit has held that job transfers may be considered an adverse employment action for the purposes of a discrimination claim. Torre v. Casio, Inc., 42 F.3d 825 (3d Cir. 1994). Plaintiff's removal from her position at Allen's after nearly two-and-a-half years at the same location was a "serious and tangible" action that dramatically altered her "compensation, terms, conditions, [and] privileges of employment." See Storey, 390 F.3d at 764. Bennett's actions caused Plaintiff to lose her full-time employment at Allen's. Keller admitted that he never found full-time employment for Plaintiff. (Keller Dep., at 33)(B79).

Bennett's removal of Plaintiff from the Allen's plant also amounted to a constructive discharge. The Third Circuit's "objective standard for a finding of a constructive discharge . . . requires that the employment conditions be so abhorrent that a reasonable person would have felt 'compelled' to terminate the employment." Cuffee v. Dover Wipes Co., 334 F.Supp.2d 565, 578 (D. Del. 2004)(quoting Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001). Bennett's actions in removing Plaintiff from

Allen's and not providing her with any other comparable employment forced her to resign. Removing Plaintiff from a full-time position and never providing her with a comparable replacement position is a sufficiently undesirable and abhorrent action to cause a reasonable person to feel compelled to terminate her employment.

### 2. Bennett's Actions Give Rise To An Inference of Discrimination.

Bennett's actions give rise to an inference of discrimination. As Keller noted, Plaintiff was "one of the original security officers when [Bennett] received the Allen's contract." (Keller Dep., at 13)(B59). Plaintiff was a good employee and had never been disciplined before her transfer. (Keller Dep., at 31)(B77). Bennett's sudden transfer of Plaintiff without any warning or previous discipline gives rise to an inference of a discriminatory animus against her, when compared to Bennett's conduct toward its other employee, Mr. Whiteman, a Caucasian male, who was not disciplined in any way in connection with this incident. Bennett admitted that, while Plaintiff was removed from her full-time job as a supervisor, Whiteman's employment status was not affected in any way by his altercation with Plaintiff. (Habicht Dep., at 28-29)(B54-55). The fact that Whiteman, a white male, suffered absolutely no adverse consequences for pushing Plaintiff three times, yet Plaintiff, the victim of this attack, was removed from her position and given

only part-time work thereafter, is sufficient evidence to give rise to an inference of racial and/or sex discrimination.

### C. Bennett Has Offered No Legitimate Justification For Its Discriminatory Treatment of Plaintiff.

Viewing the facts in a light most favorable to Plaintiff with regard to Bennett's motion for summary judgment, it is actually <u>Miller's</u> version of the facts, <u>i.e.</u>, that he only "accepted Bennett's offer" to terminate Plaintiff, that should be taken as true. (<u>See</u> Miller Dep., at 40)(B39). Accepting Miller's statements as true, it was Bennett that suggested that Plaintiff be transferred while making no suggestion that Whiteman, Plaintiff's white co-worker, be transferred. Therefore, in light of Miller's testimony, Bennett has offered no justification for its actions. Bennett desired to terminate its relationship with Plaintiff so it summarily terminated Plaintiff's employment and took no disciplinary action against Whiteman, Plaintiff's white co-worker. (See Habicht Dep., 28-29)(B54-55).

Moreover, even if Bennett's version of the facts--that it was Miller who demanded Plaintiff's termination--is accepted, Bennett's employees' knowledge of Greg Miller's discriminatory purpose in having Plaintiff removed from Allen's and acquiescence to this unlawful conduct was also discriminatory to Plaintiff. Keller, Bennett's vice president, admitted that he merely accepted Miller's version of the facts about the altercation between Plaintiff and Whiteman and never did an independent investigation.

(Keller Dep., at 24)(B70). Further, there was no written record made of any investigation concerning the incident until after Plaintiff had filed a complaint with the EEOC. (Keller Dep., at 27-28)(B73-74).

### III. SUMMARY JUDGMENT SHOULD BE DENIED ON PLAINTIFF'S REMAINING CLAIMS OF GENDER DISCRIMINATION UNDER THE DELAWARE DISCRIMINATION ACT.

The test for a prima facie case of gender discrimination is the same as for race discrimination: 1) membership in a protected class; 2) qualification for the position in question; 3) an adverse employment action; and 4) circumstances surrounding the action which give rise to an inference of discrimination. Jones, 198 F.3d at 410-411.

Plaintiff's Complaint alleges that Bennett's actions were discriminatory because no action was ever taken against Whiteman, a Caucasian male who was also involved in the altercation. Whiteman had been employed only a month at the time of the incident in December 2003 (Keller Dep., at 18-19)(B64-65), whereas Plaintiff had been employed nearly two-and-a-half years. (Keller Dep., at 9)(B58). Yet Plaintiff was removed from her position as a supervisor at Allen's and absolutely no action was taken against Whiteman. (Habicht Dep., at 28-29)(B54-55).

As established in Section II B, supra, Plaintiff's removal from her supervisor position at Allen's and Bennett's failure to transfer her to another full-time position constituted an adverse

employment action. The fact that Whiteman, a male, was never disciplined in any way for this action, no matter whether or not Miller may have demanded Plaintiff's removal, gives rise to an inference of discrimination by Bennett.

### IV. PLAINTIFF'S CLAIMS OF DISCRIMINATION ARE NOT DEFEATED BY THE FACT THAT PLAINTIFF'S POSITION WAS FILLED BY ANOTHER BLACK FEMALE.

Bennett contends that Plaintiff's removal from Allen's plant does not raise an inference of discrimination because Bennett replaced Plaintiff with another black female. (Bennett's Opening Brief, at 10-11). The race and sex of Plaintiff's replacement at the Allen's plant, however, cannot counteract the fact that Plaintiff was disciplined by removal from the Allen's plant while Whiteman, a Caucasian male, was subjected to absolutely no discipline whatsoever. Plaintiff's replacement at the Allen's plant is not the source of the inference of discrimination. Rather, the fact that Plaintiff was summarily removed from Allen's plant while Whiteman suffered no consequences raises an inference of discrimination.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

                              SCHMITTINGER & RODRIGUEZ, P.A.

BY: /s/ William D. Fletcher
    WILLIAM D. FLETCHER, JR.
    Bar I.D. #362
    NOEL E. PRIMOS
    Bar I.D. #3124
    414 S. State Street
    P.O. Box 497
    Dover, DE   19901
    (302) 674-0140
    Attorneys for Plaintiff

DATED: 2/9/06
WDF:NEP:ACG