Case 1:05-cv-00055-KAJ    Document 51-2    Filed 02/09/2006    Page 1 of 24

Get a Document - by Citation - 2004 Del. Super. LEXIS 46                                    2/9/06 12:59 PM

**LexisNexis®** *Total Research System*

Switch Client ┊ Preferences ┊ Feedback ┊ Sign Off ┊ ? Help

My Lexis™ ┊ Search ┊ Research Tasks ┊ Search Advisor ┊ Get a Document ┊ Shepard's® ┊ Alerts                    History ┊

FOCUS™ Terms [                                    ] Go → | FOCUS Options...

View: **Full** | Custom                    ◄◄◄ 1 of 1 ►►►                    Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | *Shepardize®* | TOA

◆ Rizzitiello v. McDonald's Corp., 2004 Del. Super. LEXIS 46                    Pages:    9

Service: **Get by LEXSEE®**
Citation: **2004 Del. Super. LEXIS 46**

*2004 Del. Super. LEXIS 46, ***

SUSAN RIZZITIELLO, Plaintiff, v. McDONALD'S CORP., a California Corporation, and McDONALD'S RESTAURANT OF DELAWARE, INC. a Delaware corporation, Defendants.

C.A. No. 00C-12-027 CLS

SUPERIOR COURT OF DELAWARE, NEW CASTLE

2004 Del. Super. LEXIS 46

October 6, 2003, Submitted
February 11, 2004, Decided

**SUBSEQUENT HISTORY:** Affirmed by Rizzitiello v. McDonald's Corp., 2005 Del. LEXIS 97 (Del., Mar. 1, 2005)

**PRIOR HISTORY:** Rizzitiello v. McDonald's Corp., 2001 U.S. Dist. LEXIS 15747 (D. Del., Sept. 21, 2001)

**DISPOSITION:** [*1] Defendants' Motion for Summary Judgment GRANTED.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendant employer filed a motion for summary judgment in plaintiff employee's action for racial discrimination and for falsification of records leading to termination.

**OVERVIEW:** Animosity developed between the employee, a white woman, and her supervisor, an African-American woman. When the employee was informed she was being suspended for food cost issues, she resigned rather than await the outcome of an investigation. The court analyzed the employee's Del. Code Ann. tit. 19, § 711 claim under the same considerations as a claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-2. There was no evidence that the animosity or the "termination" were racially based. Although there was a genuine issue of material fact as to whether records were falsified, the issue was moot. The fact that the employee resigned rather than await the outcome of the investigation by the employer barred her from bringing a charge of wrongful termination or constructive discharge. Therefore, the employer was entitled to summary judgment.

**OUTCOME:** The motion for summary judgment was granted.

**CORE TERMS:** covenant, constructive discharge, termination, racial discrimination, fair dealing, falsification,

**Case 1:05-cv-00055-KAJ    Document 51-2    Filed 02/09/2006    Page 2 of 24**

Get a Document - by Citation - 2004 Del. Super. LEXIS 46                                    2/9/06 12:59 PM

resigned, food, disparate treatment, summary judgment, genuine issue of material fact, treated differently, supervisor, terminated, suspended, animosity, cause of action, matter of law, store manager, non-moving, favorable, promotions, vacation, promoted, counters, resign, woman, fired, await

**LexisNexis(R) Headnotes ♦ Hide Headnotes**


Civil Procedure > Summary Judgment > Burdens of Production & Proof


Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN1** A court will grant summary judgment only if there are no genuine issues of material fact and a moving party must show he is entitled to judgment as a matter of law. In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to a non-moving party. More Like This Headnote


Civil Procedure > Summary Judgment > Summary Judgment Standard

**HN2** Summary judgment is appropriate only if, after viewing the evidence in a light most favorable to a non-moving party, a court finds no genuine issue of material fact. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions

**HN3** Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-2, has been held to cover white men and white women and all Americans. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination > Coverage & Definitions

**HN4** Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e-2, prohibits racial discrimination against white plaintiffs upon the same standards as would be applicable were they African American. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > National Origin Discrimination > Coverage & Definitions

Labor & Employment Law > Discrimination > Disparate Treatment > Working Conditions

Evidence > Procedural Considerations > Burdens of Proof

**HN5** In order to sustain a disparate treatment claim, a plaintiff must show that a similarly situated person of a different race was treated differently from plaintiff. While the circumstances need not be exactly identical, they must be similar enough to give rise to an inference of unlawful discrimination. Merely alleging race was the reason for the different treatment does not make it so. More Like This Headnote

Torts > Vicarious Liability > Respondeat Superior

Labor & Employment Law > Wrongful Termination

**HN6** The covenant of good faith and fair dealing permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment 

Case 1:05-cv-00055-KAJ    Document 51-2    Filed 02/09/2006    Page 3 of 24

Get a Document - by Citation - 2004 Del. Super. LEXIS 46                    2/9/06 12:59 PM

Labor & Employment Law > Wrongful Termination

*HN7* It is clear that both a falsification and a termination must be present to support a claim for breach of the covenant of good faith and fair dealing. However, the doctrine of at-will employment is broad and the covenant is a narrowly construed exception. More Like This Headnote

Labor & Employment Law > Wrongful Termination > Constructive Discharge 

Evidence > Procedural Considerations > Burdens of Proof

*HN8* An employee who resigns rather than being terminated may have a claim for constructive discharge. To show constructive discharge, however, an employee must show the work environment was so intolerable that she had no choice but to resign. Denials of future promotions do not give rise to a claim for constructive discharge. More Like This Headnote

**COUNSEL:** John R. Weaver, Esquire, Wilmington, Delaware, Attorney for Plaintiff.

Michael P. Kelly, Esquire, McCarter & English, LLP, Wilmington, Delaware; Michael L. Banks, Esquire and Sean V. Burke, Esquire, Morgan Lewis & Bockius, Philadelphia, Pennsylvania, Attorneys for Defendants.

**JUDGES:** Calvin L. Scott, Jr., Superior Court Judge.

**OPINIONBY:** Calvin L. Scott , Jr.

**OPINION: MEMORANDUM OPINION**

**SCOTT, J.**

**I. INTRODUCTION**

On December 5, 2000, plaintiff Susan Rizzitiello ("Rizzitiello") began this action against defendants alleging various causes of action pertaining to her employment with defendants ("McDonalds"). McDonalds removed the action to federal court where all federal charges were dismissed and the case was remanded to this court for consideration of Rizzitiello's state law claims. On October 25, 2001, McDonalds filed a motion to dismiss for failure to state a claim. The court found that Rizzitiello's claims of employment discrimination were maintainable as breaches of the implied covenant of good faith and fair dealing. n1 On May 9, 2003, McDonalds filed a motion for summary judgment. Rizzitiello filed an answer **[*2]** July 10, 2003. Oral argument was heard September 5, 2003. At argument, the court requested additional information and complete copies of Rizzitiello's and a witness' depositions which were received by the court October 3, 2003.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 *Rizzitiello v. McDonald's Corp.,* Del. Super., C.A. No. 00C-12-027, Herlihy, J. (Oct. 24, 2002) (allowing two theories for breach of the covenant: (1) based on racial discrimination and (2) based on falsification of records).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**II. BACKGROUND**

Rizzitiello is a white woman who worked for McDonalds from 1979 until she resigned in January 1998. Rizzitiello first became a store manager in 1987. She later worked in training positions, returning to work as store manager in the Price's Corner store in January 1997. Some time in the early 1990's, animosity developed between Rizzitiello and another McDonalds employee ("Jane Doe"). n2 At the time Rizzitiello resigned, Jane Doe was Rizzitiello's supervisor. Rizzitiello alleges that prior to becoming her supervisor, Jane Doe made statements **[*3]** that if she became Rizzitiello's supervisor, she would get Rizzitiello fired. Rizzitiello further alleges she learned Jane Doe and two other employees came into her store and changed computer records while she was on vacation at the end of

Case 1:05-cv-00055-KAJ    Document 51-2    Filed 02/09/2006    Page 4 of 24

Get a Document - by Citation - 2004 Del. Super. LEXIS 46    2/9/06 12:59 PM

December 1997. When Rizzitiello returned to work in January 1998, she was informed she was being suspended for food cost issues. She was also told this matter would remain on her record and prevent her from being promoted. Rather than await the outcome of the investigation, she resigned. Rizzitiello alleges this is in contrast to the treatment Jane Doe received in 1995 when Jane Doe was manager of the same store. n3

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n2 A pseudonym is used to protect the privacy of the person who is no longer an employee of McDonalds and is not a party to this lawsuit. Jane Doe is an African-American woman.

n3 Jane Doe was suspended for one week for "food cost issues." Rizzitiello was sent by McDonalds' management to supervise the store while Jane Doe was suspended.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## III. STANDARD [*4] OF REVIEW

HN1 The court will grant summary judgment only if there are no genuine issues of material fact "and the moving party must show he is entitled to judgment as a matter of law." n4 In determining whether there is a genuine issue of material fact, the evidence must be viewed in the light most favorable to the non-moving party. n5 HN2 Summary judgment, therefore, is appropriate only if, after viewing the evidence in the light most favorable to the non-moving party, the court finds no genuine issue of material fact. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 *Deakyne v. Selective Insurance Co., 728 A.2d 569, 570 (Del. Super. 1997)* (internal citation omitted).

n5 *Moore v. Sizemore, 405 A.2d 679* (Del. 1979.

n6 *Guy v. Judicial Nominating Com'n., 659 A.2d 777, 780 (Del. Super. 1995); Figgs v. Bellevue Holding Co., 652 A.2d 1084, 1087 (Del. Super. 1994).*

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

## IV. DISCUSSION

There are two claims remaining in Rizzitiello's cause of action. Both involve breaches of the covenant [*5] of good faith and fair dealing. The first is based on a claim of racial discrimination and the second is based on alleged falsification of records leading to termination.

A. Racial discrimination

Rizzitiello claimed racial discrimination was the basis for her termination by McDonalds. She charged that Jane Doe, who is African American, caused her to be fired and points to the fact that she is white. Rizzitiello raised the issue of disparate treatment based on race n7 for the first time in her answering brief to McDonalds' Motion for Summary Judgment. McDonalds counters there is no evidence that the animosity of Jane Doe towards Rizzitiello was motivated by racial considerations. At oral argument, McDonalds requested an opportunity to address the disparate treatment claim as it had not previously been raised or addressed.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

Case 1:05-cv-00055-KAJ    Document 51-2    Filed 02/09/2006    Page 5 of 24

Get a Document - by Citation - 2004 Del. Super. LEXIS 46                    2/9/06 12:59 PM

n7 Rizzitiello argues she, as a white person, was treated differently after her "food cost issues" from Jane Doe, who is African American.


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

While the claim for racial discrimination has **[*6]** been brought as a breach of the covenant of good faith and fair dealing, the court holds that the analysis should proceed under the same considerations as a claim under Title VII. n8 *HN3* Title VII n9 has been held to "cover white men and white women and all Americans." n10 *HN4* Title VII thus "prohibits racial discrimination against [a white plaintiff] upon the same standards as would be applicable were they [African American]." n11

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n8 *See Giles v. Family Court, 411 A.2d 599, 601 (Del. 1980)* (holding that violations of 19 Del. C. § 711 are analyzed under the same test as Title VII claims).


n9 Title VII of the Civil Rights Act of 1964 provides in pertinent part: "it shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color . . . ." 42 U.S.C. § 2000e-2.


n10 *McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 280, 49 L. Ed. 2d 493, 96 S. Ct. 2574 (1976).*


n11 *Id.*


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*7]**

*HN5* In order to sustain a disparate treatment claim, plaintiff must show that a similarly situated person of a different race was treated differently from plaintiff. n12 While the circumstances need not be exactly identical, they must be similar enough to give rise to an inference of unlawful discrimination. n13 Merely alleging race was the reason for the different treatment does not make it so. n14

- - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - -


n12 *Boykins v. Lucent Techs., Inc., 78 F. Supp. 2d 402, 409 (E.D. Pa. 2000).*


n13 *Jones v. School Dist. Of Philadelphia, 198 F.3d 403, 409 (3d Cir. 1999).*


n14 *Boykins, 78 F. Supp. at 413.*


- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

In the case at bar, the court has thoroughly reviewed the record and concludes there is no evidence that the animosity between Jane Doe and Rizzitiello was racially based. Therefore, there is no basis to support the allegation that Rizzitiello's termination was motivated by racial discrimination.

The court further finds the disparate treatment claim must also fall. Rizzitiello **[*8]** resigned before McDonalds took any action against her, other than she was told to leave the store pending an investigation. She therefore cannot, under any circumstances, show that she was treated differently after the investigation into her food cost issues than Jane Doe was treated after the investigation into her food cost issues. The court finds it unnecessary, given these facts, to require discovery to determine whether the food cost issues were in fact the same for both Rizzitiello and Jane Doe and whether their subsequent treatments were in fact different.

B. Falsification of records.

Get a Document - by Citation - 2004 Del. Super. LEXIS 46

Rizzitiello provided the deposition testimony of a former McDonalds' employee who stated she saw Jane Doe and others changing computer records in Rizzitiello's store while she was away on vacation. Rizzitiello acknowledges she resigned and was not terminated by McDonalds, but argues, nevertheless, she was constructively discharged and thus able to bring a claim for breach of the covenant of good faith and fair dealing. McDonalds counters there is no concrete evidence of any falsification of records as Rizzitiello cannot point to any specific changes made to the records. McDonalds further **[*9]** argues that Delaware case law requires that an employee actually be terminated before the claim for breach of the covenant of good faith and fair dealing can be brought.

In *E.I. duPont de Nemours & Co. v. Pressman,* the Delaware Supreme Court held that *HN6* "the covenant [of good faith and fair dealing] permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal." n15 In that case, the Court focused on the creation of false grounds for termination in describing the harm, recognizing that there was no legally cognizable harm from the termination itself. n16 *HN7* It is clear that both a falsification and a termination must be present to support a claim for breach of the covenant. n17 The court in *Pressman* makes clear, however, that the doctrine of at-will employment is broad and the covenant is a narrowly construed exception. n18

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n15 <u>679 A.2d 436, 437 (Del. 1996).</u>

n16 *Id.* at 444.

n17 *Id.*

n18 *Id.* at 438.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*10]**

*HN8* An employee who resigns rather than being terminated may have a claim for constructive discharge. To show constructive discharge, however, an employee must show the work environment was so intolerable that she had no choice but to resign. n19 Other courts have held that denials of future promotions do not give rise to a claim for constructive discharge. n20

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n19 <u>Lipson v. Anesthesia Servs., P.A., 790 A.2d 1261, 1280 (Del. Super. 2001)</u> (internal citation omitted).

n20 See <u>Brown v. Kinney Shoe Corp., 237 F.3d 556, 566 (5th Cir. 2001);</u> <u>Bennett v. Watson Wyatt & Co., 136 F. Supp.2d 236, 251 (S.D.N.Y. 2001);</u> <u>Ternullo v. Reno, 8 F. Supp.2d 186, 193 (N.D.N.Y. 1998);</u> <u>Ezold v. Wolf, Block, Schorr & Solis-Cohen, 751 F. Supp. 1175, 1192 (E.D. Pa. 1990).</u>

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - -

The court finds there is a genuine issue of material fact as to whether records were falsified. The court holds this issue is moot, because there is no constructive discharge in the **[*11]** case at bar, let alone termination. The court agrees with the analysis in cases in other jurisdictions holding that denials of possible future promotions is insufficient as a matter of law to support a claim for constructive discharge. Rizzitiello's resignation for the stated reason that she would not be promoted in the future precludes a finding of constructive discharge. The fact that Rizzitiello resigned rather than await the outcome of the investigation by McDonalds bars her from bringing a charge of wrongful termination or constructive discharge resulting from alleged falsification of records.

## V. CONCLUSION

For all of the above reasons, the court has determined that McDonalds' Motion for Summary Judgment should be

Case 1:05-cv-00055-KAJ     Document 51-2     Filed 02/09/2006     Page 7 of 24

Get a Document - by Citation - 2004 Del. Super. LEXIS 46                    2/9/06 12:59 PM

**GRANTED.**

Calvin L. Scott, Jr.

Superior Court Judge

View: **Full** | Custom            ◁◁◁◁ 1 of 1 ▷▷▷▷            Print | Download | Fax | Email | Text Only
                        More Like This | More Like Selected Text | *Shepardize®* | TOA

 **Rizzitiello v. McDonald's Corp., 2004 Del. Super. LEXIS 46**                    Pages:    9

        Service: **Get by LEXSEE®**
       Citation: **2004 Del. Super. LEXIS 46**
          View: **Full**
     Date/Time: **Thursday, February 9, 2006 - 12:59 PM EST**

* Signal Legend:
🌐 -   Warning: Negative treatment is indicated
Q -   Questioned: Validity questioned by citing refs
⚠ -   Caution: Possible negative treatment
◆ -   Positive treatment is indicated
Ⓐ -   Citing Refs. With Analysis Available
Ⓘ -   Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

        *My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's®* | Alerts
                History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help

®Ⓛ LexisNexis®     About LexisNexis  |  Terms & Conditions
                  Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights
                  reserved.

**LexisNexis®** *Total Research System*

Switch Client | Preferences | Feedback | Sign Off | ? Help

| My Lexis™ | Search | Research Tasks | Search Advisor | Get a Document | Shepard's® | Alerts |

History |

FOCUS™ Terms [                                                    ] Go | FOCUS Options...

View: **Full** | Custom                          ◄◄◄ 1 of 1 ►►►                    Print | Download | Fax | Email | Text Only
More Like This | More Like Selected Text | Shepardize® | TOA

⚠ Burch v. WDAS AM/FM, 146 Lab. Cas. (CCH) P34,552                                          Pages:  24

Service: Get by LEXSEE®
Citation: 2002 U.S. Dist. LEXIS 12290

*2002 U.S. Dist. LEXIS 12290, \*; 146 Lab. Cas. (CCH) P34,552;*
*7 Wage & Hour Cas. 2d (BNA) 1670*

JOE BURCH and ROSETTA BURCH v. WDAS AM/FM, AM.FM INC. and LARRY JENNINGS

CIVIL ACTION No. 00-4852

UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

2002 U.S. Dist. LEXIS 12290; 146 Lab. Cas. (CCH) P34,552; 7 Wage & Hour Cas. 2d (BNA) 1670

June 28, 2002, Decided
June 28, 2002, Filed; July 1, 2002, Entered

**DISPOSITION:** [\*1] Defendants' motion for summary judgment granted.

### CASE SUMMARY

**PROCEDURAL POSTURE:** Defendants, a former employer, its parent company, and a former supervisor, moved for summary judgment in plaintiff former employee's action alleging race discrimination in violation of Title VI of the of the Civil Rights Act of 1964, Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., and 42 U.S.C.S. § 1981, and alleging violation of the Family and Medical Leave Act, retaliatory discharge, and defamation.

**OVERVIEW:** The court initially held that the former employee could not sustain his Title VI of the of the Civil Rights Act of 1964 (Title VI) claim because defendants never received federal funding, which was a prerequisite to a Title VI claim. The court then held that, because the former employee never filed a complaint with the Equal Employment Opportunity Commission or the state commission, he could not maintain his Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. The court further held that the former employee failed to establish a prima facie case of racial discrimination in violation of 42 U.S.C.S. § 1981, and failed to present competent evidence from which one could reasonably find that the stated reasons for his termination were incredible and unworthy of belief. The court finally held that the former employee was never denied leave under the Family and Medical Leave Act (FMLA), that his termination was enacted prior to his request for FMLA leave, that his employment was at-will, and that the statements he claims were defamatory were published by himself.

**OUTCOME:** Summary judgment was granted to the former employer, its parent company, and the former supervisor.

**CORE TERMS:** sales manager, termination, station, competent evidence, e-mail, quota, staff, at-will, monthly, terminated, reasonably find, protected class, account executive, summary judgment, surgery, decisionmaker, defamatory, promoted, decision to terminate, wrongful discharge, present evidence, prima facie case, federal

funds, discriminatory, recipient, proffered, eligible, manager, pretext, uncontroverted

**LexisNexis(R) Headnotes ✦ Hide Headnotes**



Civil Procedure > Summary Judgment > Summary Judgment Standard

*HN1* In considering a motion for summary judgment, the court must determine whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Only facts that may affect the outcome of a case are material. All reasonable inferences from the record are drawn in favor of the non-movant. More Like This Headnote

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN2* Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

Labor & Employment Law > U.S. Equal Employment Opportunity Commission > Exhaustion of Remedies

*HN3* Filing a charge of discrimination with the Equal Employment Opportunity Commission or a state commission is a prerequisite for adjudication of a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. More Like This Headnote

Constitutional Law > Civil Rights Enforcement > Civil Rights Act of 1964

*HN4* Receipt of federal funding is essential element of a Title VI of the of the Civil Rights Act of 1964 claim. More Like This Headnote

Labor & Employment Law > Discrimination > Title VII

Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985)

*HN5* To sustain a 42 U.S.C.S. § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him because of race in the making, performance, enforcement or termination of a contract or for such reason denied him the enjoyment of the benefits, terms or conditions of the contractual relationship. The elements of employment discrimination under 42 U.S.C.S. § 1981 are the same as those for a Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claim. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN6* A plaintiff can sustain a claim of employment discrimination by presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

Labor & Employment Law > Discrimination > Reconstruction Statutes (secs. 1981, 1983 & 1985) 

*HN7* The McDonnell Douglas analytic framework for Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq., claims also applies to employment discrimination claims under 42 U.S.C.S. § 1981. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

Civil Procedure > Summary Judgment > Burdens of Production & Proof

*HN8* Direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decisionmaker. Where it appears from such evidence that illegal discrimination was a substantial factor in an adverse employment decision, the burden shifts to the defendant to show that the decision would have been the same absent consideration of the illegitimate factor. Where the plaintiff does not present such direct evidence of discrimination, he may survive summary judgment on a McDonnell Douglas pretext theory. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

*HN9* The plaintiff must first establish a prima facie case of employment discrimination by showing that he was a member of a protected class, he was qualified for the job he held, he was discharged, and he was replaced by a person not in the protected class, or otherwise present evidence sufficient to support an inference of unlawful discrimination. The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis 

*HN10* On a claim of employment discrimination, if the employer proffers a legitimate, nondiscriminatory reason for the adverse employment action, the plaintiff may still prevail by demonstrating that the employer's proffered reasons were not its true reasons but rather a pretext for unlawful discrimination. The plaintiff must present evidence from which a factfinder could reasonably disbelieve the employer's proffered reasons from which it may then be inferred that the real reason was discriminatory, or otherwise present evidence from which one could reasonably find that unlawful discrimination was more likely than not a determinative cause of the employer's action. More Like This Headnote

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

*HN11* On a claim of employment discrimination, to discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in that reason that one could reasonably conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff. More Like This Headnote

Labor & Employment Law > Discrimination > Racial Discrimination

**HN12** Where the decision to terminate a plaintiff was made by someone who had promoted him to the position and by someone who is a member of the same protected class who then selected someone else in that class to replace the plaintiff, although it does not per se foreclose a claim of discrimination, it certainly does not help to sustain the plaintiff's claim. That the decisionmaker is of same race as the plaintiff considerably undermines the probability that race was a factor. More Like This Headnote | *Shepardize:* Restrict By Headnote



Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN13** Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination. A plaintiff must produce evidence that other relevant employees were similarly situated in all respects to show disparate treatment. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN14** The Family and Medical Leave Act entitles an eligible employee to take twelve work weeks of unpaid leave during any twelve-month period to care for a spouse who has a serious health condition. 29 U.S.C.S. § 2612(a)(1)(C). A serious health condition includes an illness, injury, impairment, or condition which involves inpatient care in a hospital. 29 U.S.C.S. § 2611(11)(A). More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN15** The Family and Medical Leave Act (FMLA) makes it unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under the FMLA, 29 U.S.C.S. § 2615(a), or to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by the FMLA, 29 U.S.C.S. § 2615(b), and permits an affected employee to bring a civil action against an employer who violates 29 U.S.C.S. § 2615. 29 U.S.C.S. § 2617(a)(1). More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN16** When taking leave under the Family and Medical Leave Act (FMLA), the employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave. 29 C.F.R. § 825.302(c) (1995). Notice is sufficient if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN17** To sustain on a claim of wrongful denial or interference with the right to take requested leave, a plaintiff must prove that he was an eligible employee, that the defendant was an employer within the meaning of the Family and Medical Leave Act (FMLA), that he was entitled to leave under the FMLA, and that the employer interfered with his right to take leave or otherwise wrongfully denied the requested leave. An employer may interfere with the exercise of an employee's rights by discouraging an employee from using leave. More Like This Headnote | *Shepardize:* Restrict By Headnote

Labor & Employment Law > Leaves of Absence > Family & Medical Leave 

**HN18** An employer is anyone engaged in commerce who employs 50 or more employees for each working day during each of twenty or more calendar workweeks in the current or preceding calendar year. 29 U.S.C.S. § 2611(4)(A)(i). "Employer" includes any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer. 29 U.S.C.S. § 2611(4)(A)(ii)(I). Courts find that employee supervisors may thus be sued under the Family and Medical Leave Act. More Like This Headnote |
*Shepardize: Restrict By Headnote*

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN19** Under the Family and Medical Leave Act, an employee who has been employed for at least twelve months by the employer from whom leave is requested is an eligible employee, however, excluded is any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50. 29 U.S.C.S. § 2611(2)(A). More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

Labor & Employment Law > Leaves of Absence > Family & Medical Leave

**HN20** To establish a prima facie claim of retaliation under the Family and Medical Leave Act (FMLA), a plaintiff must show that he engaged in a statutorily protected activity, that he suffered an adverse employment action, and a causal connection between the adverse employment action and the exercise of his rights under the FMLA. In the absence of direct evidence of the employer's intent, courts apply the McDonnell Douglas burden shifting framework. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Discrimination > Disparate Treatment > Burden Shifting Analysis

**HN21** At least when it is particularly suggestive, the temporal proximity of a plaintiff's protected conduct and his termination can raise an inference that there is a causal link between the two. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment

**HN22** In Pennsylvania, at-will employees may be terminated at any time and for any reason or no reason. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment

**HN23** Great clarity is necessary to overcome the at-will presumption. A plaintiff bears the burden to produce clear and convincing evidence that the parties intended an employment relationship of a definite length. More Like This Headnote | *Shepardize: Restrict By Headnote*

Labor & Employment Law > Employment Relationships > At-Will Employment

**HN24** That a plaintiff was promised a specified annual salary does not overcome the at-will presumption. More Like This Headnote

Labor & Employment Law > Employment Relationships > At-Will Employment

Labor & Employment Law > Wrongful Termination > Public Policy 

**HN25** An at-will employee may pursue relief for wrongful discharge where the termination violates clear public policy. The public policy exception, however, is interpreted narrowly. A discharge violates public policy only when it thwarts the administration of a commonwealth agency or statutory mechanism, or undermines a statutory obligation of the employer or employee. It is applicable where an employee has been required to commit a crime, prevented from complying with a statutory duty or discharged in violation of a specific statutory prohibition. In any event, the public policy exception applies only where there is no available statutory means of vindicating the policy in question. More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions 

**HN26** To sustain a claim for defamation, a plaintiff must show the defamatory character of the communication; publication by the defendant, application to the plaintiff, the understanding of the recipient of its defamatory meaning, the understanding of the recipient that it was intended to apply to the plaintiff, special harm to the plaintiff from its publication, and abuse of any conditionally privileged occasion. Pa. Cons. Stat. Ann. § 8343(a). To recover damages, a plaintiff must also prove that the statement results from some fault on the part of the defendant. More Like This Headnote

Torts > Defamation & Invasion of Privacy > Defamation Actions 

**HN27** A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him. An allegedly defamatory statement must also be viewed in context to assess the effect it is fairly calculated to produce and the impression it would ordinarily create with those among whom it is intended to circulate. A communication is not defamatory because it may embarrass or annoy the person to whom it refers. More Like This Headnote | *Shepardize: Restrict By Headnote*

Torts > Defamation & Invasion of Privacy > Defamation Actions 

**HN28** Statements critical of an employee's job performance are generally not capable of defamatory meaning. More Like This Headnote

Torts > Defamation & Invasion of Privacy > Common Law Privileges 

**HN29** A communication may be privileged when made by one of several persons having a common interest in a particular subject matter to others sharing that interest which he reasonably believes they are entitled to know. More Like This Headnote

**COUNSEL:** For JOE BURCH, ROSETTA BURCH, PLAINTIFFS: DEMETRIUS J. PARRISH, JR., LAW OFFICES OF DEMETRIUS J. PARRISH, JR., PHILADELPHIA, PA USA.

For WDAS AM/FM, AM.FM, INC., LARRY JENNINGS, DEFENDANTS: PETER A. GOLD, BLANK ROME COMISKY & McCAULEY LLP, PHILADELPHIA, PA USA.

For WDAS AM/FM, AM.FM, INC., LARRY JENNINGS, DEFENDANTS: RICHARD S. SWARTZ, BLANK ROME COMISKY & MC CAULEY, PHILA, PA USA.

**JUDGES:** JAY C. WALDMAN, J.

Get a Document - by Citation - 146 Lab. Cas. (CCH) P34,552

2/9/06 12:30 PM

**OPINIONBY:** JAY C. WALDMAN

**OPINION: MEMORANDUM**

WALDMAN, J.

June 28, 2002

### I. Introduction

Plaintiff has asserted claims for racial discrimination under Titles VI & VII and 42 U.S.C. § 1981 against his former employer, its parent corporation and its general sales manager. He has also asserted claims of interference with rights protected under the Family and Medical Leave Act ("FMLA") and retaliatory discharge for exercising those rights. Plaintiff has asserted additional supplemental state law claims for breach of contract, wrongful discharge and defamation. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Rosetta Burch, Joe Burch's wife, is referenced in the caption of the complaint, however, no specific claim is pled on her behalf or referenced in any of the parties' submissions. The complaint refers repeatedly to "Plaintiff" in the singular. In one sentence of a lengthy complaint, there is an allegation that "Plaintiff and his wife's relationship suffered due to Plaintiff's inability to cooperate or due to Plaintiff's personal suffering." This conceivably could represent an attempt to assert a claim on behalf of Mrs. Burch for loss of consortium although that term is never used and the sentence is surrounded by allegations of the affect of defendants' actions on Mr. Burch. In any event, whether the drafter was attempting to present such a claim is immaterial to the court's analysis. The court refers to plaintiff Joe Burch in the singular.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*2]

Presently before the court is defendants' motion for summary judgment.

### II. Legal Standard

*HN1*⚓In considering a motion for summary judgment, the court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S. Ct. 2505 (1986); Arnold Pontiac-GMC, Inc. v. General Motors Corp., 786 F.2d 564, 568 (3d Cir. 1986). Only facts that may affect the outcome of a case are "material." Anderson, 477 U.S. at 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505. All reasonable inferences from the record are drawn in favor of the non-movant. See 477 U.S. 242 at 256.

*HN2*⚓Although the movant has the initial burden of demonstrating the absence of genuine issues of material fact, the non-movant must then establish the existence of each element on which it bears the burden of proof. See J.F. Feeser, Inc. v. Serv-A-Portion, Inc., 909 F.2d 1524, 1531 (3d Cir. 1990) [*3] (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 91 L. Ed. 2d 265, 106 S. Ct. 2548 (1986)), cert. denied, 499 U.S. 921 (1991). A plaintiff cannot avert summary judgment with speculation or by resting on the allegations in his pleadings, but rather must present competent evidence from which a jury could reasonably find in his favor. Anderson, 477 U.S. 242 at 248, 91 L. Ed. 2d 202, 106 S. Ct. 2505; Ridgewood Bd. of Educ. v. N.E. for M.E., 172 F.3d 238, 252 (3d Cir. 1999); Williams v. Borough of West Chester, 891 F.2d 458, 460 (3d Cir. 1989); Woods v. Bentsen, 889 F. Supp. 179, 184 (E.D. Pa. 1995).

### III. Facts

From the competent evidence of record, as uncontroverted or otherwise taken in the light most favorable to plaintiff, the pertinent facts are as follow.

Plaintiff Joe Burch is an African American man. He was hired by defendant WDAS in July 1989 as a senior account executive and served in this capacity for eight years. The account executives were responsible for generating revenue for the station by selling units of time for advertising. WDAS AM/FM is a Philadelphia radio station licensed by the Federal [*4] Communications Commission and a subsidiary of defendant AM.FM, Inc., a New Jersey corporation. More than 80% of its full-time employees are African American.

During plaintiff's tenure as a senior account executive, he was a top performer. In July 1997, he applied for and was promoted to the newly created position of local sales manager. The promotion decision was made by Kim Dziabis, a Caucasian woman who was then the general sales manager. Mr. Burch continued to work in this capacity until his termination on March 24, 2000.

WDAS sells units of advertising through two departments, the national sales department and the local sales department. n2 The general sales manager oversees both departments and is responsible for balancing the revenue generated from national and local sales.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n2 E. Stephen Collins was the National Sales Manager at all times relevant to this lawsuit.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

As local sales manager, Mr. Burch was primarily responsible for coaching and leading a sales staff of twelve account executives in achieving [*5] monthly and quarterly sales quotas. He was also responsible for approving individual orders and providing incentives to account executives for outstanding work.

Prior to the creation of the local sales manager position, Ms. Dziabis, as general sales manager, was primarily responsible for achieving the monthly sales quotas. In 1995 and 1996, local sales failed to meet the monthly quotas. In 1997, local sales only met the quota twice. Overall sales at the station, however, were good.

In September 1998, Charles Warfield, an African American man who was the general station manager, promoted Ms. Dziabis to the position of Director of Sales. n3 In the nine months preceding her promotion, the station as a whole achieved the monthly sales quotas seven times. Defendant Larry Jennings, an African American man who had previously served as general sales manager at stations in Charlotte, North Carolina, was hired as general sales manager to fill the vacancy created by the promotion of Ms. Dziabis.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 In this capacity she was responsible for sales at six AM.FM stations in Philadelphia.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - [*6]

In the fall of 1998, Mr. Jennings was informed by corporate headquarters that each Philadelphia station was required to create a new position of director of market development and to fill the position by the beginning of 1999. Chancellor Marketing Group, a subsidiary of AM.FM, defined the position and the talents that the person hired was expected to have. Mr. Jennings conducted initial interviews of candidates and those who appeared to be suitable were then interviewed by Ms. Dziabis and two executives of Chancellor Marketing. These three interviewers then met to discuss the candidates and make a selection.

Two finalists, Debbie Kessler, a Caucasian woman, and Marie Tolson-Perry, an African American woman, were asked to complete talent profiles used for predicting an applicant's suitability for a particular job. Of the twenty-two attributes analyzed, Ms. Tolson-Perry achieved a higher score in nine categories, Ms. Kessler scored higher in seven categories and both candidates achieved identical results in six categories. After the process was completed, Ms. Kessler was offered the position. Mr. Jennings did not participate in the decision to select Ms. Kessler.

Under Mr. Butch, [*7] local sales met the monthly quota seven months in 1998 and four of the first five months in 1999. From June 1999 until Mr. Burch was terminated in March 2000, however, local sales failed to meet the quota each and every month. Local sales failed to achieve the sales quota in 22 of the 34 months during which plaintiff was local sales manager.

While general sales manager, Ms. Dziabis discussed problems with local sales with plaintiff. A few months after Mr. Jennings took over in September 1998, he expressed concerns to Ms. Dziabis about plaintiff's ability to be an effective local sales manager. In June 1999, Mr. Jennings began performing certain duties for which plaintiff had previously been responsible. Mr. Jennings told Mr. Burch that he should no longer determine pricing, provide sales leads, give out bonuses or sign sales orders. Mr. Burch perceived that Mr. Jennings relieved plaintiff of this authority because he wanted to let everybody know that he was in charge and was jealous of Mr. Burch's good relationship with the WDAS staff and advertising community.

In October and November of 1999, Mr. Jennings sent plaintiff detailed e-mails expressing concern over the failure

to achieve [*8] local sales quotas and asking him to make changes in his coaching and management style to achieve better results.

In an e-mail sent on October 27, 1999, Mr. Jennings related that accountability had been an area of pronounced weakness in plaintiff's performance all year. He advised Mr. Burch that the sales people "require a strong, well-focused and individualized approach to coaching and leadership." Mr. Jennings warned that "unless things get turned around in a hurry, I'll be forced to become more hands on with Local. I don't see that as a positive if I have to get more involved in helping you do your job. It will call into question your management talent and in the long run cost you this golden opportunity. I'd hate to see that happen."

In a November 7, 1999 e-mail, Mr. Jennings reminded plaintiff that "you may recall from our meeting with Chester a few weeks ago (the one regarding October's Local performance), he made several thinly veiled references to the two us being at risk as a result of Local sales performance" and advised that "the real key to delivering the quarter will still boil down to how closely you work with and monitor individual performance."

Chester Schofield [*9] had taken over as general manager of WDAS in August 1999. Plaintiff complained that Mr. Jennings was not permitting him to do his job. Mr. Schofield said that he would put together a formal job description detailing the respective roles of Mr. Jennings and plaintiff. Mr. Schofield left the station in January 2000. With Mr. Schofield's departure, plaintiff explains there was nobody to whom he could complain and it "was just a matter of time" before he expected to be terminated.

Mr. Jennings met with plaintiff in February 2000 to discuss particular concerns with the performance of local sales and ways to improve that performance. He then sent an e-mail to Mr. Burch outlining the key points of discussion.

In e-mails dated February 10 and February 15, 2000, Mr. Jennings expressed concern about meeting the first quarter quota. In the February 15th e-mail, he also expressed concerns about holding the sales staff accountable for their responsibilities. In an e-mail of February 29, 2000, Mr. Jennings identified six account executives who were under-performing and reminded plaintiff of tactics they had discussed to improve their performance. He urged that Mr. Burch "work more closely than [*10] you ever have before to ensure that each account executive receives the attention they require." In e-mails of March 3 and March 11, 2000, Mr. Jennings reminded plaintiff that his end of the month reports for February were overdue.

Mr. Jennings presented Mr. Burch with a performance and compensation plan on February 15, 2000. The plan contains three parts: responsibilities, performance expectations and compensation. The responsibilities section contained a formalized description of the responsibilities of local sales manager including achieving sales goals, reviewing and approving local sales orders, assigning sales leads, providing a monthly lead report to the general sales manager, managing the sales staff by conducting individual focus meetings as well as informal monthly performance reviews and formal quarterly performance reviews, recommending staffing changes and documenting vacation days and absences. The performance expectations section listed in table form the monthly and quarterly gross revenue goals. The compensation section specified plaintiff's salary for the year and provided for incentive pay should certain performance goals be met.

On or shortly before February 28, 2000, Mr. [*11] Jennings and Ms. Dziabis discussed plaintiff's failure to perform to expectations. Together, they decided to terminate plaintiff's employment and had Rosemarie Galie, the WDAS business manager, contact corporate headquarters to obtain a severance package. Ms. Galie confirms that she was advised of the decision "in or about the end of February 2000."

Rosetta Burch had surgery on March 13, 2000. One or two days prior to the surgery, Mr. Burch sent an e-mail to Mr. Jennings in which he indicated that his priorities had changed and that he needed time off from work to be with his wife when she underwent surgery. Mr. Burch took several days off to be with his wife. Mr. Jennings did not formally respond to the e-mail, but plaintiff recollects that Mr. Jennings "probably" told him to take time off. There is no evidence that Mr. Burch was ever denied leave. Upon his return, plaintiff states he did get a "cold feeling" from Mr. Jennings. Of course, unknown to plaintiff, Mr. Jennings had decided more than two weeks earlier to terminate him.

Plaintiff also points to the case of Lisa Boston, who was terminated in the fall of 1999 after taking pregnancy leave. Although not required by the FMLA, [*12] WDAS provided leave with pay. Ms. Boston's leave had extended well beyond the prescribed period and she sought to secure her position for still longer. Moreover, it was not Mr. Jennings who declined to extend her paid leave or secure her position. It was Mr. Schofield who expressed concern that Mr. Jennings had let her slide and that this could create a bad precedent. n4

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n4 Mr. Schofield avers that Ms. Boston was welcome to return but that she could no longer be paid while out from work and the station could not continue to hold an account list for her while also having to pay others who were actually handling the accounts. Ms. Boston apparently perceived this as an effective termination and for purposes of the instant motion the court has so assumed.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Mr. Jennings informed plaintiff of his termination on March 24, 2000. Mr. Jennings cited plaintiff's failure to achieve sales quotas, to coach the sales staff properly and to hold his staff accountable. Mr. Jennings offered plaintiff the opportunity to frame his **[*13]** departure as a resignation by submitting a letter to that effect and to continue to work until April 7th.

At a meeting the next day with the sales staff, plaintiff advised that "it had been determined that [he] leave the station" but would remain until April 7th to assist the staff with strategic account management. Some staff members asked plaintiff after the meeting why he was leaving. Plaintiff responded that he had been fired and related the reasons given by Mr. Jennings. Plaintiff also related to staff members his belief that he was fired because he made too much money and had too good of a relationship with the staff. n5

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n5 Plaintiff did not suggest that he was fired for taking family leave or because of his race. Indeed, in sworn discovery responses in this action, plaintiff variously stated that "race played no role" in his termination and at most that "race could be involved."


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

On March 29, 2000, plaintiff declined the offer to frame his departure as a resignation at which time Mr. Jennings asked him **[*14]** to leave immediately. Dwayne Perry, an African American male account executive, was promoted to fill the vacant local sales manager position.

Between March 24 and March 29, 2000, several employees related to plaintiff statements they said Mr. Jennings made to them regarding plaintiff's departure. Mr. Tamburro, the program director, and two sales managers, Messrs. Perry and Liles, told plaintiff that Mr. Jennings had indicated Mr. Burch was incapable of motivating and coaching his staff. Ben Hill, the chief station engineer, told plaintiff that Mr. Jennings told the managers at the station that Mr. Burch had quit and had not been able to take the station to another level. Marie Tolson told plaintiff that Mr. Jennings had opined that no one at WDAS was qualified to do that job. n6

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n6 Mr. Burch contends this reported statement was defamatory because although he had been terminated, he was still at the office and thus it applied to him.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

A few weeks later, Mr. Liles and Nate Dais, another account executive, told **[*15]** plaintiff that they were told by Ms. Dziabis that she was told by Mr. Jennings that he was looking for someone who could take the staff to the next level which Mr. Burch could not do. Paula Henson, an account executive, told plaintiff that Mr. Jennings told her that he had viewed Mr. Burch as a cancer at the station.

Plaintiff states that after interviewing for a job with WPHI, another local radio station, he was told by Kevin Jones, the general sales manager, that Larry Jennings had contacted Darryl Trent, the general station manager, and indicated that Mr. Burch was bitter, hostile and unable to focus on the job.

Mr. Trent testified that he never had any discussion with Mr. Jennings or anyone else at WDAS regarding Mr. Burch. Plaintiff has presented no affidavit or testimony of Mr. Tamburro, Mr. Perry, Mr. Liles, Mr. Hill, Ms. Tolson, Mr. Dais or Ms. Henson or other competent evidence to show that Mr. Jennings made the statements that plaintiff says they told him they heard.

## IV. Discussion

### A. Race Discrimination Claims

It is uncontroverted that plaintiff has never filed a charge of discrimination with the Equal Employment Opportunity Commission or the Pennsylvania **[*16]** Human Relations Commission. *HN3*This is a prerequisite for adjudication

of a Title VII claim. See <u>Alexander v. Gardner Denver Co., 415 U.S. 36, 47, 39 L. Ed. 2d 147, 94 S. Ct. 1011</u> <u>(1974);</u> <u>Woodson v. Scott Paper Co., 109 F.3d 913, 926 (3d Cir. 1997);</u> <u>Trevino-Barton v. Pittsburgh Nat'l Bank,</u> <u>919 F.2d 874, 878 (3d Cir. 1990)</u> ("Federal courts lack jurisdiction to hear Title VII claims unless a claim was previously filed with the EEOC").

It is also uncontroverted that WDAS is not a recipient of any federal funds. Thus, the Title VI claim also cannot survive. See <u>42 U.S.C. § 2000d;</u> <u>Fuller v. Rayburn, 161 F.3d 516, 517 (8th Cir. 1998)</u> (<sup>HN4</sup>receipt of federal funding is essential element of Title VI claim); <u>Reynolds v. School Dist. No. 1, Denver Colorado, 69 F.3d 1523,</u> <u>1531 (10 Cir. 1995)</u> (plaintiff must show defendant received federal funds for primary objective of providing employment to sustain a Title VI claim); <u>Ass'n Against Discrimination in Employment, Inc. v. City of Bridgeport, 647</u> <u>F.2d 256, 276 (2d Cir.)</u> (to sustain a Title VI claim of discriminatory employment [*17] practices, "a threshold requirement is that the employer be the recipient of federal funds aimed primarily at providing employment"), cert. denied, <u>455 U.S. 988 (1981);</u> <u>Grimes v. Superior Home Health Care, 929 F. Supp. 1088, 1091 (M.D. Tenn. 1996)</u> ("the general prohibition of [Title VI] applies only if a defendant receives federal funds").

<sup>HN5</sup>To sustain a § 1981 discrimination claim, a plaintiff must show that the defendant intentionally discriminated against him because of race in the making, performance, enforcement or termination of a contract or for such reason denied him the enjoyment of the benefits, terms or conditions of the contractual relationship. See <u>Saint</u> <u>Francis College v. Al-Khazraji, 481 U.S. 604, 609, 95 L. Ed. 2d 582, 107 S. Ct. 2022 (1987);</u> <u>Pamintuan v.</u> <u>Nanticoke Mem'l Hosp., 192 F.3d 378, 385 (3d Cir. 1999);</u> <u>Green v. State Bar of Texas, 27 F.3d 1083, 1086 (5th</u> <u>Cir. 1994);</u> <u>Mian v. Donaldson, Lufkin & Jenrette Securities, 7 F.3d 1085, 1087 (2d Cir. 1993);</u> <u>Williams v. Carrier</u> <u>Corp., 889 F. Supp. 1528, 1530 (M.D. Ga. 1995);</u> <u>Flagg v. Control Data, 806 F. Supp. 1218, 1223 (E.D. Pa.</u> <u>1992).</u> [*18] The elements of employment discrimination under § 1981 are the same as those for a Title VII claim. See <u>Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999);</u> <u>Lewis v. University of Pittsburgh,</u> <u>725 F.2d 910, 915 n.5 (3d Cir. 1983);</u> <u>Marion v. City of Philadelphia/Water Dep't., 161 F. Supp. 2d 381, 385 (E.D.</u> <u>Pa. 2001).</u> See also <u>New York Transit Authority v. Beazer, 440 U.S. 568, 583, 59 L. Ed. 2d 587, 99 S. Ct. 1355</u> <u>(1979)</u> (§ 1981 "affords no greater substantive protection than Title VII").

<sup>HN6</sup>A plaintiff can sustain such a claim by presenting direct evidence of discrimination or by using circumstantial evidence which satisfies the McDonnell Douglas requirements. See <u>St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502,</u> <u>506, 125 L. Ed. 2d 407, 113 S. Ct. 2742 (1993);</u> <u>Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253,</u> <u>67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981);</u> <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668,</u> <u>93 S. Ct. 1817 (1973);</u> <u>Starceski v. Westinghouse Elec. Corp., 54 F.3d 1089, 1095-96 n.4 (3d Cir. 1995);</u> [*19] <u>Torre v. Casio, Inc., 42 F.3d 825, 829 (3d Cir. 1994).</u> n7

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n7 <sup>HN7</sup>The McDonnell Douglas analytic framework for Title VII claims also applies to employment discrimination claims under § 1981. See <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 36 L. Ed. 2d 668, 93 S. Ct. 1817</u> <u>(1973);</u> <u>Patterson v McLean Credit Union, 491 U.S. 164, 186, 105 L. Ed. 2d 132, 109 S. Ct. 2363 (1989)</u> (applying McDonnell Douglas framework to claims under § 1981); <u>Pamintuan, 192 F.3d at 385</u> (same); <u>Stewart v. Rutgers,</u> <u>The State Univ., 120 F.3d 426, 432 (3d Cir. 1997)</u> (same); <u>Hampton v. Borough of Tinton Falls Police Dep't, 98</u> <u>F.3d 107, 112 (3d Cir. 1996)</u> (same).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

<sup>HN8</sup>Direct evidence is overt or explicit evidence which directly reflects a discriminatory bias by a decisionmaker. See <u>Armbruster v. Unisys Corp., 32 F.3d 768, 778, 782 (3d Cir. 1994).</u> Where it appears from such evidence that illegal discrimination was a [*20] substantial factor in an adverse employment decision, the burden shifts to the defendant to show that "the decision would have been the same absent consideration of the illegitimate factor." <u>Price Waterhouse v. Hopkins, 490 U.S. 228, 276, 104 L. Ed. 2d 268, 109 S. Ct. 1775 (1989).</u> See also <u>Keller v. Orix</u> <u>Credit Alliance, Inc., 130 F.3d 1101, 1113 (3d Cir. 1997);</u> <u>Jones v. School Dist. of Phila., 19 F. Supp. 2d 414, 417-</u> <u>18 (E.D. Pa. 1998).</u> Where, as here, the plaintiff does not present such direct evidence of discrimination, he may survive summary judgment on a McDonnell Douglas pretext theory.

<sup>HN9</sup>The plaintiff must first establish a prima facie case by showing that he was a member of a protected class; he was qualified for the job he held; he was discharged; and, he was replaced by a person not in the protected class, or otherwise present evidence sufficient to support an inference of unlawful discrimination. See <u>Pivirotto v.</u> <u>Innovative Systems, Inc., 191 F.3d 344, 353-54 (3d Cir. 1999);</u> <u>Showalter v. Univ. of Pittsburgh Medical Ctr., 190</u> <u>F.3d 231, 234 (3d Cir. 1999);</u> <u>Keller v. Orix Credit Alliance, Inc., 130 F.3d 1101, 1108 (3d Cir. 1997).</u> [*21] The burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for the adverse employment action. See <u>St. Mary's Honor Ctr., 509 U.S. at 506-07;</u> <u>Goosby v. Johnson & Johnson Medical Inc., 228 F.3d 313,</u> <u>319 (3d Cir. 2000).</u>

**HN10**⚓The plaintiff may still prevail by demonstrating that the employer's proffered reasons were not its true reasons but rather a pretext for unlawful discrimination. See Reeves v. Sanderson Plumbing Products Inc., 530 U.S. 133, 143, 147 L. Ed. 2d 105, 120 S. Ct. 2097 (2000); Goosby, 228 F.3d at 319. The plaintiff must present evidence from which a factfinder could reasonably disbelieve the employer's proffered reasons from which it may then be inferred that the real reason was discriminatory, or otherwise present evidence from which one could reasonably find that unlawful discrimination was more likely than not a determinative cause of the employer's action. See Hicks, 509 U.S. at 511 & n.4; Keller, 130 F.3d at 1108. **HN11**⚓To discredit a legitimate reason proffered by the employer, a plaintiff must present evidence demonstrating "such weaknesses, **[*22]** implausibilities, inconsistencies, incoherencies, or contradictions" in that reason that one could reasonably conclude it is incredible and unworthy of credence, and ultimately infer that the employer did not act for the asserted non-discriminatory reasons. See Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).

The ultimate burden of proving that a defendant engaged in intentional discrimination remains at all times on the plaintiff. See Hicks, 509 U.S. at 507, 511.

Mr. Burch is a member of a protected class. The court assumes in addressing the instant motion that he had the basic objective qualifications for the job he held. n8 He was discharged from his employment.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n8 See Goosby, 228 F.3d at 320-21 (noting distinction between objective qualifications and performance which generally is more appropriately considered at pretext stage).

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

**HN12**⚓The decision to terminate plaintiff was made by someone who had promoted him to the position and by someone who is a member **[*23]** of the same protected class who then selected someone else in that class to replace plaintiff. While this does not per se foreclose a claim of discrimination, it certainly does not help to sustain plaintiff's claim. See Pivirotto, 191 F.3d at 354; Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 1002 (5th Cir. 1996) (that decisionmaker is of same race as plaintiff "considerably undermine[s] the probability that race was a factor"); Dungee v. Northeast Foods, Inc., 940 F. Supp. 682 n.3 (D.N.J. 1996) (that decisionmaker is member of plaintiff's protected class "weakens any possible inference of discrimination").

Plaintiff relies on his success as local sales manager in contrast to Ms. Dziabis and the selection of Ms. Kessler to raise an inference of race discrimination.

Mr. Burch as local sales manager and Ms. Dziabis as general sales manager, however, had different responsibilities and were not similarly situated. Moreover, Ms. Dziabis performed more to expectation prior to her promotion than did plaintiff prior to his termination. Also, these respective employment decisions were made by different decisionmakers. See Radue v. Kimberly Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) **[*24]** **HN13**⚓("Different employment decisions, concerning different employees, made by different supervisors, are seldom sufficiently comparable to establish a prima facie case of discrimination"); Hollins v. Atlantic Co., 188 F.3d 652, 659 (6th Cir. 1999) (plaintiff must produce evidence that other relevant employees were similarly situated in all respects to show disparate treatment); Lanear v. Safeway Grocery, 843 F.2d 298, 301 (8th Cir. 1988) (same).

That Ms. Tolson-Perry had a higher net score on two of 22 categories on a talent profile than Ms. Kessler does not suggest that her selection was racially motivated. The profile is not an empirical measurement but rather a predictive tool and only one criteria used in the selection process along with personal interviews and actual experience. Moreover, Mr. Jennings did not participate in the decision to choose Ms. Kessler and Ms. Dziabis, who had promoted plaintiff, was only one of three persons who did.

Plaintiff was replaced by a person in his protected class and has not presented competent evidence to support an inference that he was terminated because of his race. He has thus failed to satisfy the fourth **[*25]** element of a prima facie case.

Plaintiff has also failed to present competent evidence from which one could reasonably find that the stated reasons for his termination are incredible and unworthy of credence. That plaintiff may believe he was unfairly blamed for the failure to meet sales quotas does not establish pretext. It is the employer's perception that is important. See Fuentes, 32 F.3d at 765 ("To discredit the employer's proffered reason, the plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent"); Hicks v. Arthur, 878 F. Supp. 737, 739 (E.D. Pa.) (that a decision is ill-formed or ill-considered does not make it pretextual), aff'd, 72 F.3d 122 (3d Cir. 1995). See also Schaffner v. Glencoe Park District, 256 F.3d 616, 621-22 (7th Cir. 2001) (opinions of coworkers or customers are not relevant to rebut defendant's assessment as plaintiff

must show defendant did not believe its own assessment); Billet v. CIGNA Corp., 940 F.2d 812, 825 (3d Cir. 1991) [*26] ("what matters is the perception of the decision maker"); Doyle v. Sentry Ins., 877 F. Supp. 1002, 1009 n.5 (E.D. Va. 1995) (it is the perception of the decisionmaker that is relevant).

One cannot reasonably find from the competent evidence of record that Ms. Dziabis and Mr. Jennings had not earnestly, even if wrongly, concluded that plaintiff's management performance was deficient and that he bore responsibility for the continuing failure to meet sales quotas. While plaintiff suggests that Mr. Jennings may have been jealous of him, even plaintiff claims no more than that race "could be involved" in his termination. n9

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n9 Even this speculation is limited to Mr. Jennings. Plaintiff has not sued Ms. Dziabis and clearly stated at his deposition that he does not claim she discriminated.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## A. FMLA Claims

*HN14* The FMLA entitles an eligible employee to take twelve work weeks of unpaid leave during any twelve-month period to care for a spouse who has a serious health condition. See 29 U.S.C. § 2612 [*27] (a)(1)(C). A serious health condition includes an illness, injury, impairment, or condition which involves inpatient care in a hospital. See 29 U.S.C. § 2611(11)(A). *HN15* The Act makes it unlawful for "any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" the FMLA, 29 U.S.C. § 2615(a), or to "discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by" the Act, 29 U.S.C. § 2615(b), and permits an affected employee to bring a civil action against an employer who violates Section 2615. See 29 U.S.C. § 2617(a)(1). n10

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n10 *HN16* When taking leave, the "employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave." 29 C.F.R. § 825.302(c) (1995). Notice is sufficient if the employee provides the employer with enough information to put the employer on notice that FMLA-qualifying leave is needed. See Stoops v. One Call Communications, Inc., 141 F.3d 309 (7th Cir. 1998); Manuel v. Westlake Polymers Corp., 66 F.3d 758, 764 (5th Cir. 1995).

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - [*28]

*HN17* To sustain on a claim of wrongful denial or interference with the right to take requested leave, a plaintiff must prove that he was an eligible employee; that the defendant was an employer within the meaning of the Act; that he was entitled to leave under the Act; and, that the employer interfered with plaintiff's right to take leave or otherwise wrongfully denied the requested leave. See Strickland v. Water Works & Sewer Bd., 239 F.3d 1199, 1206-07 (11th Cir. 1999); Jeremy v. Northwest Ohio Development Center, 33 F. Supp. 2d 635, 638 (N.D. Ohio 1999), aff'd, 210 F.3d 372 (6th Cir. 2000). An employer may interfere with the exercise of an employee's rights by discouraging an employee from using leave. See 29 C.F.R. § 825.220(b).

The court assumes that Mr. Burch is an eligible employee and that WDAS is an employer under the Act. n11 It appears that Mr. Burch was entitled to leave at the time of his wife's surgery.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n11 *HN18* An employer is anyone engaged in commerce "who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). "Employer" includes "any person who acts, directly or indirectly, in the interest of an employer to any of the employees of such employer." 29 U.S.C. § 2611(4)(A)(ii)(I). Courts have found that employee supervisors may thus be sued under the FMLA. See Darby v. Bratch, 287 F.3d 673, 681 (8th Cir. 2002); Meara v. Bennett, 27 F. Supp. 2d 288, 291 (D. Mass. 1998). See also Cantley v. Simmons, 179 F. Supp. 2d 654, 656 (S.D. W.Va. 2002); Carter v. U.S. Postal Service, 157 F. Supp. 2d 726, 728 (W.D. Ky. 2001); Morrow v. Putnam, 142 F.

Supp. 2d 1271, 1272 (D. Nev. 2001); <u>Kilvitis v. County of Luzerne, 52 F. Supp. 2d 403, 412 (M.D. Pa. 1999)</u>. The annual employment analysis submitted to the Federal Communications Commission shows that WDAS employed 38 full-time and 16 part-time employees as of May 31, 2000 and 40 full-time and 15 part-time employees as of February 26, 2001. Whether 50 employees were employed for each working day for each of 20 or more calendar workweeks is not clear. *HN19* An employee who has been employed for at least 12 months by the employer from whom leave is requested is an eligible employee, however, excluded is "any employee of an employer who is employed at a worksite at which such employer employs less than 50 employees if the total number of employees employed by that employer within 75 miles of that worksite is less than 50." <u>29 U.S.C. § 2611</u>(2)(A). As no party addresses the issue, the court will assume that WDAS qualified as an employer and plaintiff as an employee.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[*29]**

Plaintiff was never denied leave. Rather, he contends that Mr. Jennings interfered with his FMLA rights by not responding promptly to plaintiff's e-mail in which he indicated that he would be taking some time off to be with his wife and by reminding plaintiff of overdue reports during the period when Mrs. Burch was ill.

There is no competent evidence that Mr. Jennings was aware before plaintiff's e-mail, just prior to Mrs. Burch's surgery, that plaintiff wanted to take leave. There was nothing in the wording of the e-mail as plaintiff describes it that called for a formal response and plaintiff's own recollection is consistent with testimony of Mr. Jennings that he verbally told plaintiff to take time off to be with his wife. That Mr. Jennings may have periodically reminded plaintiff about overdue reports and other matters required of him in the ordinary course of his job is not prohibited conduct. An employer is required to grant requested leave for a prescribed purpose, but is not required to excuse performance by an employee on days he is on the job. One cannot reasonably conclude from the competent evidence of record that Mr. Jennings discouraged plaintiff from taking leave at **[*30]** the time of his wife's surgery.

The cases on which plaintiff relies are plainly distinguishable. In <u>Williams v. Shenango, Inc., 986 F. Supp. 309 (W.D. Pa. 1997)</u>, the Court denied summary judgment on plaintiff's FMLA claim where the undisputed evidence showed that upon being notified of plaintiff's need for leave, the employer denied the request and asked plaintiff to request a different week. <u>Id. at 320-21</u>. In <u>Shtab v. Greate Bay Hotel & Casino, 173 F. Supp. 2d 255 (D.N.J. 2001)</u>, the employer's benefit specialist in charge of family leave asked plaintiff to delay taking the leave he had requested. <u>Id. at 259</u>.

*HN20* To establish a prima facie claim of retaliation under the FMLA, a plaintiff must show that he engaged in a statutorily protected activity; that he suffered an adverse employment action; and, a causal connection between the adverse employment action and the exercise of his rights under the Act. See <u>Parris v. Miami Herald Publ'g Co., 216 F.3d 1298, 1301 (11th Cir. 2000)</u>; <u>Alifano v. Merck & Co., 175 F. Supp. 2d 792, 795 (E.D. Pa. 2001)</u>; <u>Agee v. Northwest Airlines, Inc., 151 F. Supp. 2d 890, 896 (E.D. Mich. 2001)</u>; **[*31]** see <u>Soletro v. National Federation of Independent Business, 130 F. Supp. 2d 906, 913 (N.D. Ohio 2001</u>; <u>Jeremy v. Northwest Development Center, 33 F. Supp. 2d 635, 639 (N.D. Ohio 1999)</u>; <u>Baltuskonis v. US Airways, Inc., 60 F. Supp. 2d 445, 448 (E.D. Pa. 1999)</u>; <u>Routes v. Henderson, 58 F. Supp. 2d 959, 979 (S.D. Ind. 1999)</u>.

In the absence of direct evidence of the employer's intent, courts have applied the McDonnell Douglas burden shifting framework. See <u>Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 502 (4th Cir. 2001)</u>; <u>Hunt v. Rapides Healthcare System, LLC, 277 F.3d 757, 768 (5th Cir. 2001)</u>; <u>Skrianc v. Great Lakes Power Service Co., 272 F.3d 309, 315 (6th Cir. 2001)</u>; <u>Brungart v. Bellsouth Telecommunications, Inc., 231 F.3d 791, 798 (11th Cir. 2000)</u>; <u>King v. Preferred Technical Group, 166 F.3d 887, 891 (7th Cir. 1999)</u>; <u>Hodgens v. General Dynamics Corp., 144 F.3d 151, 160 (1st Cir. 1998)</u>; <u>Alifano, 175 F. Supp. 2d 792 at 795</u>; <u>Baltuskonis, 60 F. Supp. 2d at 448</u>.

Taking qualified leave **[*32]** under the FMLA is a protected activity and plaintiff's termination was an adverse employment action. To establish a causal connection between the two actions, plaintiff relies on the close temporal proximity between his leave and his termination. n12

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n12 Plaintiff also suggests that the case of Lisa Boston demonstrates that Larry Jennings had a history of terminating employees for taking FMLA qualified leave. There is no competent evidence of record, however, that Mr. Jennings had anything to do with Ms. Boston's separation from WDAS. To the contrary, what evidence there is shows that he allowed her to remain on paid leave well beyond the prescribed period until Mr. Schofield objected.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

*HN21* At least when it is particularly suggestive, the temporal proximity of plaintiff's protected conduct and his termination can raise an inference that there is a causal link between the two. See, e.g., <u>Harris v. SmithKline</u>

Beecham, 27 F. Supp. 2d 569, 580 (E.D. Pa. 1998), aff'd, 203 F.3d 816 (3d Cir. 1999); **[*33]** Keeshan v. Home Depot U.S.A. Inc., 2001 U.S. Dist. LEXIS 3607, 2001 WL 310610, *12 (E.D. Pa. March 27, 2001); Voorhees v. Time Warner Cable Nat'l Div., 1999 U.S. Dist. LEXIS 13227, 1999 WL 673062, *6 (E.D. Pa. Aug. 30, 1999). In the instant case, however, the evidence that the decision to terminate plaintiff was made before he requested or took leave is uncontroverted. One cannot reasonably conclude that plaintiff was terminated for something which occurred after the decision to terminate him was made. n13

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n13 As noted, plaintiff also has not discredited the reasons proffered by defendants for his termination which involve perceived deficiencies long pre-dating his request for leave.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## C. State Law Claims

### 1. Breach of Contract/Wrongful Discharge

HN22 In Pennsylvania, at-will employees may be terminated at any time and for any reason or no reason. See Stumpp v. Stroudsburg Municipal Authority, 540 Pa. 391, 658 A.2d 333, 335 (Pa. 1995). See also Murray v. Commercial Union Ins. Co., 782 F.2d 432, 435 (3d Cir. 1986); **[*34]** Geary v. U.S. Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (Pa. 1974). Plaintiff concedes in his brief that he was an at-will employee and, in any event, has not presented evidence to rebut the strong presumption of at-will employment. See McLaughlin v. Gastrointestinal Specialists, Inc., 561 Pa. 307, 750 A.2d 283, 287 (Pa. 2000). See also Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 660 (3d Cir. 1990) (at-will presumption cannot be easily overcome). HN23 "Great clarity" is necessary to overcome the at-will presumption. Scott v. Extracorporeal Inc., 376 Pa. Super. 90, 545 A.2d 334, 338 (Pa. Super. 1988). A plaintiff bears the burden to produce clear and convincing evidence that the parties intended an employment relationship of a definite length. Greene v. Oliver Realty, Inc., 363 Pa. Super. 534, 526 A.2d 1192, 1200 (Pa. Super.), appeal den., 536 A.2d 1331 (Pa. 1987); see also Shaffer v. BNP/Cooper Neff, Inc., 1998 U.S. Dist. LEXIS 14013, 1998 WL 575135, *4 (E.D. Pa. Sept. 4, 1998).

HN24 That plaintiff was promised a specified annual salary does not overcome the at-will presumption. See Carlson v. Arnot-Ogden Memorial Hospital, 918 F.2d 411, 415 (E.D. Pa. 1990); **[*35]** Beidler v. W.R. Grace, Inc., 461 F. Supp. 1013, 1015 (E.D. Pa. 1978)(compensation for stated amount for stated period does not make contract one for definite period), aff'd, 609 F.2d 500 (3d Cir. 1979).

HN25 An at-will employee may nevertheless pursue relief for wrongful discharge where the termination violates clear public policy. See Novosel v. Nationwide Ins. Co., 721 F.2d 894, 898 (3d Cir. 1983). The public policy exception, however, has been "interpreted narrowly." Smith v. Calgon Carbon Corp., 917 F.2d 1338, 1343, 1343-44 (3d Cir. 1990).

A discharge violates public policy only when it thwarts the administration of a Commonwealth agency or statutory mechanism, or undermines a statutory obligation of the employer or employee. See McLaughlin, 750 A.2d at 288. It is applicable where an employee has been required to commit a crime, prevented from complying with a statutory duty or discharged in violation of a specific statutory prohibition. See Spierling v. First American, 1999 PA Super 222, 737 A.2d 1250, 1252, 1254 (Pa. Super. 1999).

In any event, the public policy exception applies **[*36]** "only where there is no available statutory means of vindicating the policy in question." Kinnally v. Bell of Pa., 748 F. Supp. 1136, 1146 (E.D. Pa. 1990). See also Bruffett v. Warner Comm., Inc., 692 F.2d 910, 919 (3d Cir. 1982) (public policy exception applies only where no statutory remedy is available). Statutory remedies are clearly available to vindicate the type of misconduct plaintiff has alleged and indeed he has pursued some of them in this action. n14

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n14 Plaintiff's reliance on cases in which courts found a violation of public policy based on statutes which provided no private right of action is clearly misplaced.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

## 2. Defamation

*HN26* To sustain a claim for defamation, a plaintiff must show the defamatory character of the communication; publication by the defendant; application to the plaintiff; the understanding of the recipient of its defamatory meaning; the understanding of the recipient that it was intended to apply to the plaintiff; special harm to the plaintiff **[\*37]** from its publication; and, abuse of any conditionally privileged occasion. See Pa. C.S.A. § 8343(a). To recover damages, a plaintiff must also prove that the statement results from some fault on the part of the defendant. See U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia, 898 F.2d 914, 923 (3d Cir.), cert. denied, 498 U.S. 816 (1990).

*HN27* A communication is defamatory if it "tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Beverly Enterprises, Inc. v. Trump, 182 F.3d 183, 187 (3d Cir. 1999) (quotations omitted). An allegedly defamatory statement must also be viewed in context to assess the effect it is fairly calculated to produce and the impression it would ordinarily create with those among whom it is intended to circulate. See Weinstein v. Bullick, 827 F. Supp. 1193, 1197 (E.D. Pa. 1993). A communication is not defamatory because it may embarrass or annoy the person to whom it refers. See Maier v. Maretti, 448 Pa. Super. 276, 671 A.2d 701, 704 (Pa. Super. 1995). n15

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n15 *HN28* Statements critical of an employee's job performance are generally not capable of defamatory meaning. See Sheehan v. Anderson, 2000 U.S. Dist. LEXIS 3048, 2000 WL 288116, *2 (E.D. Pa. Mar. 17, 2000); Wendler v. DePaul, 346 Pa. Super. 479, 499 A.2d 1101, 1103 (Pa. Super. 1985).


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - **[\*38]**


*HN29* A communication may also be privileged when made by one of several persons having a common interest in a particular subject matter to others sharing that interest which he reasonably believes they are entitled to know. See Jones v. Johnson & Johnson, McNeil-PPC, Inc., 1997 U.S. Dist. LEXIS 13050, 1997 WL 549995, *8 (E.D. Pa. Aug. 22, 1997), aff'd, 166 F.3d 1205 (3d Cir. 1998).

The court, however, need not determine whether the statements about plaintiff being fired or his deficient performance attributed to Mr. Jennings were capable of defamatory meaning or privileged. This is because plaintiff has presented no competent evidence that these statements were made. His claim rests entirely on his hearsay testimony that fellow employees and an employee at WPHI told him that they had heard or heard from others of such statements by Mr. Jennings. The person at WPHI to whom Mr. Jennings purportedly made a negative statement about plaintiff testified that this never occurred and no sworn statement of any kind from the other purported witnesses was presented. Indeed, the only competent evidence of the publication of plaintiff's firing and the reasons given therefor is plaintiff's admission **[\*39]** that he himself contemporaneously communicated this information to a number of people at WDAS.

## V. Conclusion

As plaintiff never filed a complaint with the EEOC or PHRC, he cannot maintain his Title VII claim. As defendants never received federal funding, plaintiff cannot sustain his Title VI claim.

Plaintiff has not sustained a prima facie case of racial discrimination in violation of § 1981, or presented competent evidence from which one could reasonably find that the stated reasons for his termination were incredible and unworthy of belief. One cannot reasonably find from the competent evidence of record that plaintiff was denied or discouraged from taking leave under the FMLA. Plaintiff cannot sustain his FMLA retaliatory discharge claim in the face of uncontroverted evidence that the decision to terminate him was made and communicated to the employer's business manager for action before plaintiff requested or took leave.

Plaintiff was an at-will employee. He has presented no clearly established public policy violation in connection with his termination for which statutory remedies do not exist. Plaintiff has failed to sustain his claims for breach of contract or **[\*40]** wrongful discharge. Plaintiff has presented no competent evidence that the statements he claims are defamatory were published by anyone other than himself. n16

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n16 Insofar as Mrs. Burch has attempted to assert a claim for loss of consortium, such a claim is derivative and

could not survive the failure of Mr. Burch to sustain his claims. See <u>Nationwide Mut. Ins. Co. v. Cosenza, 258 F.3d 197, 206 (3d Cir. 2001); Wakshul v. City of Philadelphia, 998 F. Supp. 585, 590 (E.D. Pa. 1998).</u>


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - -


Defendants are entitled to summary judgment. Their motion will be granted. An appropriate order will be entered.

**ORDER**

**AND NOW,** this 28th day of June, 2002, upon consideration of the defendant's Motion for Summary Judgment (doc. #15) and the response thereto, consistent with the court's memorandum herein, **IT IS HEREBY ORDERED** that said Motion is **GRANTED** and accordingly **JUDGMENT** is **ENTERED** in the above action for defendants.

**BY THE COURT:**

**JAY [*41] C. WALDMAN, J.**




View: **Full** | Custom        ◁◁◁◁◁ **1 of 1** ▷▷▷▷▷        Print | Download | Fax | Email | Text Only

More Like This | More Like Selected Text | *Shepardize®* | TOA

 Burch v. WDAS AM/FM, 146 Lab. Cas. (CCH) P34,552       Pages: **24**

Service: **Get by LEXSEE®**
Citation: **2002 U.S. Dist. LEXIS 12290**
View: **Full**
Date/Time: **Thursday, February 9, 2006 - 12:29 PM EST**

* Signal Legend:
🌐 - Warning: Negative treatment is indicated
Ⓠ - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.




*My Lexis*™ | Search | Research Tasks | Search Advisor | Get a Document | *Shepard's®* | Alerts
History | Delivery Manager | Switch Client | Preferences | Feedback | Sign Off | Help


⊚® **LexisNexis®**    About LexisNexis | Terms & Conditions
Copyright © 2006 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.