IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBIN D. NICHOLS, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. 05-55 (KAJ) |
| | * | |
| BENNETT DETECTIVE & PROTECTIVE | * | |
| AGENCY, INC. and | * | |
| ALLEN FAMILY FOODS, INC., | * | |
| | * | |
| Defendants | * | |

**DEFENDANT ALLEN FAMILY FOODS, INC.'S
REPLY TO PLAINTIFF'S ANSWERING BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Matthew F. Boyer (Del. Bar No. 2564)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE 19899
(302) 884-6585

Arthur M. Brewer (admitted *pro hac vice*)
Laura A. Pierson Scheinberg
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD 21201
(410) 752-1040

*Counsel for Defendant Allen Family Foods, Inc.*

Dated: February 16, 2006

# TABLE CONTENTS

TABLE OF AUTHORITIES .................................................................................................. ii

INTRODUCTION .................................................................................................................. 1

ARGUMENT .......................................................................................................................... 3

    A.    Plaintiff Did Not File A Charge Of Discrimination Against Allen's With The Delaware Department Of Labor, And Failed To Allege Any Violation Of The Delaware Discrimination Act By Allen's In Her Complaint .................................................................................................. 3

    B.    Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment on Plaintiff's § 1981 Claim. .................................. 4

    C.    Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment On Plaintiff's Tortious Interference Claim. ......... 6

    D.    Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment on Plaintiff's Defamation Claim. ......................... 7

CONCLUSION ....................................................................................................................... 8

CERTIFICATE OF SERVICE .............................................................................................. 9

# TABLE OF AUTHORITIES

**Cases**

*Spence v. Funk*
   396 A.2d 967 (Del. 1978) ............................................................................................ 7

**Statutes**

**42 U.S.C.** § 1981 .................................................................................................... 4, 5, 6

Del. Code Ann. Tit. 19, § 712(b) .......................................................................................... 4

Del. Code Ann. Tit. 19, §710 ............................................................................................... 3

**Other Authorities**

Restatement (Second) of Torts § 558 (1977) ....................................................................... 7

## INTRODUCTION

Plaintiff's Answering Brief relies on unsubstantiated allegations that cannot defeat a motion for summary judgment. Accordingly, Plaintiff has failed to create a dispute as to any of the material facts in this case.

It is undisputed that Plaintiff and Joseph Whiteman (another Bennett Security Officer stationed at Allen's) were involved in an argument in which Whiteman pushed Plaintiff, and she pushed him back. A 015/Nichols p. 40. It is undisputed that Plaintiff called the police to report the incident, and then called Vice President of Operations for Bennett, Mark Habicht, to inform him of the incident and the fact that she had called the police. A 017-A 018/Nichols p. 47-49. It is undisputed that Mr. Miller had no knowledge that the Police had been called until they were already at the plant. A 018/Nichols p. 52. It is undisputed that Mr. Miller told Plaintiff's supervisors, Mr. Habicht and Mr. Keller (a Vice President for Bennett who is senior to Mr. Habicht), that Plaintiff's calling the police was "too disruptive" to plant operations. Answering Brief at 4; A 046/Habicht p. 23.

It is undisputed that Mr. Miller had asked Bennett to remove two of its security guards in the past, Daniel Steele (Caucasian Male) and David Leggins (African-American Male), and that these requests were granted. A 051/Habicht p. 41-42; A 062/Keller p. 37-38. It is undisputed that Bennett explicitly states in its "Conditions of Employment" that it "has the right to move any security officer to another job site at any time." A 001-A002/Nichols Depo Ex. 1. It is undisputed that Bennett has routinely transferred its security guards at customers' request. A 047/Habicht p. 26-27; A 064/Keller p. 51; A 027/Nichols p. 102.

It is undisputed that Bennett offered to transfer Plaintiff to a position at Perdue's plant in Milford, DE. A 026, A 027-A 028/Nichols p. 89, 104-105; A 048/Habicht p. 30; A 061/Keller p. 33-34. It is undisputed that Plaintiff initially accepted the position, but called out sick on the day she was supposed to start and could not attend training. A 026, A 028/Nichols p. 90, 106. It is undisputed that Plaintiff was next offered a position and worked briefly at the Georgetown Family Courthouse. A 026, A 027/Nichols p. 90, 104; A 061/Keller p. 35. It is undisputed that Plaintiff's final date of employment with Bennett was January 19, 2004. A 011, A 013/Nichols p. 8, 29. It is undisputed that Plaintiff was not terminated. A 016/Nichols p. 43. It is also undisputed that on January 19, 2004, the same day that she resigned from Bennett, Plaintiff began working as a Certified Nursing Assistant (CNA) at Millford Center, earning $2.35 more per hour than she did while working for Bennett. A 014, A 028/Nichols p. 33, 108; A 005-A 009/Nichols Ex. 3; A 029, A 031/Nichols p. 109, 122.

Ultimately, the linchpin to Plaintiff's claims against Allen's is her testimony that Allen's Time and Attendance Clerk, Valerie Brittingham, allegedly told Plaintiff that Mr. Miller was "telling everybody" that everything was Plaintiff's fault (referring to the incident with Mr. Whiteman), that Plaintiff was not capable of doing her job, and that Miller was a "racist." A 020/Nichols p. 57-58. In a desperate effort to protect her case from crumbling into dust, Plaintiff chose to simply ignore Ms. Brittingham's testimony that she never had such a conversation with Plaintiff. A 066, A 067/Brittingham p. 7, 11.

An examination of the record evidence in this case confirms that Allen's is entitled to summary judgment. Plaintiff's Answering Brief fails to identify any genuine dispute of material fact that would permit a jury to conclude that Allen's discriminated

against her on the basis of her race, tortiously interfered with her alleged contract with Bennett, or defamed her. Accordingly, for the reasons explained below, and as set forth more fully in the Opening Brief in Support of Defendant Allen Family Foods, Inc.'s Motion for Summary Judgment, this Court should enter judgment in Allen's favor on all of Plaintiff's claims.

## ARGUMENT

### A. Plaintiff Did Not File A Charge Of Discrimination Against Allen's With The Delaware Department Of Labor, And Failed To Allege Any Violation Of The Delaware Discrimination Act By Allen's In Her Complaint.

As an initial matter, it is undeniable that the allegations in Plaintiff's Complaint regarding violations of the Delaware Discrimination Act ("DDA"), are **solely** directed at Defendant Bennett. Plaintiff alleges in Paragraph 24 of Count I of her Complaint that "Defendant Bennett discriminated against Plaintiff with regard to the terms and conditions of her employment on the basis of her race and sex in violation of Del. Code Ann. Tit. 19, §710 et seq." Count I is void of any reference to Allen's. Further, Plaintiff never filed a Charge of Discrimination against Allen's with the Delaware Department of Labor, as required by the DDA.

Therefore, it is remarkable that Plaintiff states in her Answering Brief that "Allen's does not, however, argue that Plaintiff's claims under the Delaware Discrimination Act should fail," and that "Allen's does not appear to contend that Plaintiff has not established a case for gender discrimination under the Delaware Discrimination Act." D.I. 49, Answering Brief at 11, 13.

3

Section 712(b) of the DDA specifically states that the Act is the "sole remedy" for an aggrieved employee "to the exclusion of all other remedies," requiring initial processing of all such claims of discrimination with the Delaware Department of Labor for review and action. Only "[u]pon termination of the administrative process by the Department, [may] the charging party [] institute a civil action in Superior Court of the State of Delaware." Del. Code Ann. Tit. 19, § 712(b) (2005).

Accordingly, Plaintiff's new claim that Allen's violated the Delaware Discrimination Act, must be disregarded.[1]

### B. Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment on Plaintiff's § 1981 Claim.

Plaintiff argues in her Answering Brief that there is a factual dispute, which "itself, is sufficient to preclude summary judgment." According to Plaintiff, the determinative issue of material fact in this case is (1) whether Mr. Miller told Bennett that Plaintiff had to be transferred because her calling the police was "too disruptive," or (2) whether "Keller and Habich, on behalf of Bennett, offered to remove Plaintiff from her

---

[1] It must also be noted that Plaintiff argues in her Answering Brief that Allen's and Bennett were her joint employers. Plaintiff asserts this baseless argument because the DDA only covers "employers." Plaintiff was never employed by Allen's. The contract under which Bennett provides Allen's with uniformed security officers at the Company's Harbeson, Delaware plant provides in relevant part that "It is mutually understood that Bennett is an independent contractor and that all guards employed by Bennett to perform services herein provided are and shall be employees of Bennett and **not employees of AFF** [Allen's]." (emphasis added). A 003-A 004. It is undisputed that while Allen's informs Bennett of how many security guards it needs for a given location, Allen's does not supervise or oversee any Bennett employees (Plaintiff's supervisors were Bennett employees); does not pay them; and does not hire or fire them. A 034/Miller p.8; A 063/Keller P.42; A 003-A 004.

position at Allen's" because her calling the police was "too disruptive." Answering Brief at 4, 5. While this inconsistency may certainly be characterized as a "factual dispute," it is also irrelevant. Plaintiff is merely attempting to inflate the significance of this inconsistency in an attempt to hide the fact the she has failed to dispute any of the facts that truly are relevant for determining liability in this matter.

Assuming, *aguendo*, that Mr. Miller did in fact say that Plaintiff had to be transferred because she called the police, there is no evidence that this request was based on her race. Further, even if Plaintiff could established a prima facie case of discrimination against Allen's under § 1981, the record evidence indicates that there was a legitimate non-discriminatory business reason for Allen's desire to have Bennett transfer Plaintiff to a different location— Plaintiff's calling the police caused a disruption to the plant's operations. A 036/Miller p.15.

Plaintiff did not even notify her supervisors, Mr. Haibicht and Mr. Keller, that she called the police until after they had already been summoned. A 017-A 018/Nichols p. 47-49. As Haibicht and Keller confirmed, Mr. Miller's primary concern was that the police being called to the plant without his knowledge and that he found the police presence disruptive to plant operations. A 046/Habicht p.23; A 059/Keller p.26.

Plaintiff's § 1981 claim is also undermined by the fact that Mr. Miller had previously requested the transfer of two other Security Officers, one of whom, Daniel Steele, was Caucasian. Moreover, after Plaintiff was transferred, her supervisory position for Bennett at Allen's plant was filled by another African-American female, Linda Fooks.

Further, Plaintiff relies on a disingenuous statement of the facts to support her § 1981 claim. According to Plaintiff, Allen's Time and Attendance Clerk, Valerie

5

Brittingham told her that Mr. Miller was "telling everyone" that everything was Plaintiff's fault (referring to the incident with Mr. Whiteman), that the Plaintiff was not capable of doing her job, and that Mr. Miller was a "racist." Answering Brief at 13; A 020/Nichols p. 57-58. However, Plaintiff simply ignores the fact that Ms. Brittingham testified that she never had such a conversation with Plaintiff. Ms. Brittingham never told Plaintiff that Mr. Miller was racist. A 066, A 067/Brittingham p. 7, 11.

Accordingly, summary judgment is appropriate on Plaintiff's § 1981 claim because she has failed to present any evidence that Allen's intended to discriminate against her on the basis of her race.

    **C.**    **Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment On Plaintiff's Tortious Interference Claim.**

Plaintiff is unable to establish the elements of a tortious interference claim. Most significantly, the evidence fails to show that Mr. Miller committed an intentional act that was a significant factor in causing the breach of her alleged contract, or that he was acting beyond the scope of his employment. In fact, there was no contract to beach. At most, Mr. Miller asked Bennett to transfer Plaintiff because her calling the police caused a disruption to the plant's operations—a request that was justified, and well within the scope of his employment (as Allen's Manager of Human Resources).

The decision to transfer Plaintiff, regardless of whether it was requested by Mr. Miller or offered by Mr. Keller and Mr. Habicht, is not tantamount to a breach of contract. Even if Mr. Miller had asked Bennett to terminate Plaintiff's employment (rather than transfer her from Allen's), her tortious interference claim would not lie because the ultimate employment decision would have been Bennett's.

6

Plaintiff has also failed to establish that she was injured as a result of the alleged tortuous interference. After being transferred, Plaintiff resigned and started a new job that very day earning more money than she did while working for Bennett. A 029, A 031/Nichols p.109, 122.

Accordingly, Plaintiff's tortious interference claim cannot survive summary judgment.

### D. Plaintiff Fails To Rebut Defendant Allen's Showing That It Is Entitled To Summary Judgment on Plaintiff's Defamation Claim.

The argument in support of Plaintiff's defamation claim is nothing short of outrageous.

Plaintiff correctly states in her Answering Brief that a defamatory statement "tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Spence v. Funk*, 396 A.2d 967, 969 (Del. 1978); Restatement (Second) of Torts § 558 (1977). However, Plaintiff fails to mention to that in order for a statement to be defamatory, it must be published to a third party. Id. Plaintiff has failed to establish this vital element of her defamation claim.

Plaintiff disingenuously relies on her claim that Mr. Miller had made defamatory statements about Plaintiff to Valerie Brittingham. A 020/Nichols p.57-58. Once again, however, Plaintiff simply ignores the deposition testimony of Ms. Brittingham that Mr. Miller never even talked to her about Plaintiff. A 066, A067/Brittingham p.7, 11.

Accordingly, Plaintiff's defamation claim cannot survive summary judgment.

## CONCLUSION

Based on the foregoing, and the factual and legal arguments set forth in Defendant Allen's Opening Brief in Support of Its Motion for Summary Judgment, Allen's respectfully requests that this Court enter judgment in its favor on all of Plaintiff's claims.

Dated: February 16, 2006

Respectfully submitted,

_____
Matthew F. Boyer (Del. Bar No. 2564)
CONNOLLY BOVE LODGE & HUTZ, LLP
The Nemours Building
1007 N. Orange Street
Wilmington, DE  19899
(302) 884-6585

Arthur M. Brewer (admitted *pro hac vice*)
Laura A. Pierson Scheinberg
SHAWE & ROSENTHAL, LLP
20 S. Charles Street, 11th Floor
Baltimore, MD  21201
(410) 752-1040

*Counsel for Defendant Allen Family Foods, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of Defendant Allen Family Foods, Inc.'s Reply to Plaintiff's Answering Brief in Opposition to Defendant Allen Family Foods, Inc.'s Motion for Summary Judgment was served electronically, on February 16, 2006, to:

| | |
|---|---|
| William D. Fletcher, Jr., Esq.<br>Noel E. Primos, Esq.<br>Schmittinger & Rodriguez, P.A.<br>414 S. State Street<br>P. O. Box 497<br>Dover, DE  19903-0497<br><br>*Counsel for the Plaintiff* | Roger D. Landon, Esquire<br>Murphy Spadaro & Landon<br>1011 Centre Road, #210<br>Wilmington, DE  19805<br><br>*Counsel for Bennett Detective<br>and Protective Agency, Inc.* |

_____
Matthew F. Boyer

#129046

9