## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ROBIN D. NICHOLS, | * | |
| | * | |
| Plaintiff, | * | CIVIL ACTION |
| | * | NO. 05-055(KAJ) |
| v. | * | |
| | * | |
| BENNETT DETECTIVE & | * | |
| PROTECTIVE AGENCY, INC., | * | |
| A Delaware corporation, and | * | |
| ALLEN'S FAMILY FOODS, INC., | * | |
| A Delaware corporation, | * | |
| | * | |
| Defendants. | * | |

## JOINT PROPOSED FINAL PRETRIAL ORDER

On June 6, 2006 at 4:30 p.m., counsel for Plaintiff Robin D. Nichols (Nichols), counsel for

Defendant Bennett Detective & Protective Agency, Inc. (Bennett), and counsel for Defendant Allen

Family Foods, Inc. (Allen's) will participate in a pretrial conference before this Court pursuant to

Rule 16 of the Federal Rules of Civil Procedure, Local Rule 16.4 of this Court, and this Court's

March 28, 2005 Scheduling Order.

**Plaintiff's Counsel:**

> William D. Fletcher, Jr., Esq.
> Noel E. Primos, Esq.
> Adam C. Gerber, Esq.
> Schmittinger & Rodriguez, P.A.

**Defendant Bennett's Counsel:**

> Roger D. Landon, Esq.
> Murphy, Spadaro & Landon

**Defendant Allen's Counsel:**

> Arthur M. Brewer, Esq.
> Laura A. Pierson Scheinberg, Esq.

Shawe & Rosenthal, LLP

Matthew F. Boyer, Esq.
Connolly Bove Lodge, Hutz LLP

## I.     NATURE OF THE ACTION:

This action is brought by Plaintiff Robin Nichols against Defendant Bennett pursuant to 19

Del. C. § 710 and 42 U.S.C. § 1981 for race and sex discrimination.

Plaintiff Nichols alleges that Defendant Allen's also discriminated against her based on her

race in violation of 42 U.S.C § 1981. Plaintiff has also brought a claim for defamation and a claim

for tortious interference with contract against Defendant Allen's.

This matter was removed to federal court by the Defendants.

Plaintiff has requested trial by jury of her claims  The issues in this case are raised in

Plaintiff's Complaint and Defendants' Answers thereto. There are no counterclaims, cross-claims

or third party claims involved.

On January 27, 2006, Defendant Bennett and Defendant Allen's filed Motions for

Summary Judgment (D.I. 44, & 46)  On February 9, 2006 Plaintiff Nichols filed her Answering

Brief (D.I. 49 & 51) and on February 16, 2006 Defendant Bennett and Defendant Allen's filed

their Reply Briefs (D.I. 54 & 55).  The Court has not yet ruled on Defendants' Motions for

Summary Judgment.

## II.    JURISDICTION:

This Court has original jurisdiction over Plaintiff's federal law claims pursuant to Title 28

U.S.C. §§ 1331. Jurisdiction over Plaintiff's state law claims is conferred on this Court by Title 28

U.S.C. § 1367.

## III.   STATEMENT OF FACTS WHICH ARE ADMITTED AND REQUIRE NO
##        PROOF:

1. Defendant Bennett Detective and Protective Agency, Inc., is a corporation, incorporated under Delaware law.

2. Defendant Bennett is an "employer" within the jurisdictional coverage of 19 Del. C. § 710, et. seq.

3. At all times relevant to the Complaint, Plaintiff was an "employee" of Defendant Bennett.

4. Defendant Allen's is a corporation, incorporated under Delaware law.

5. Plaintiff timely filed a Complaint with the Delaware Department of Labor against Defendant Bennett. Plaintiff Nichols received a Notice of Right to Sue and timely filed this suit.

6. At all times relevant to this litigation, Mark Habicht and Wayne Keller were vice-presidents of Defendant Bennett Detective & Protective Agency and were acting within the course and scope of their employment with Defendant Bennett.

7. At all times relevant to this litigation, Greg Miller was Manager of Human Resources for Defendant Allen's Family Foods.

8. Bennett had a contractual arrangement with Allen's to furnish uniformed security officers at the Allen's Harbeson, Delaware and Cordova, Maryland plants.

9. Plaintiff, Robin Nichols, (African-American female) was hired as a Security Guard for Bennett in August 2001. Bennett subsequently promoted her to Supervisor.

10. Joseph Whiteman (Caucasian Male) was also a Bennett Security Officer who worked at Allen's Harbeson plant. Ms. Nichols was his supervisor.

11. On December 11, 2005 Plaintiff called the police to investigate an alleged altercation between Joseph Whiteman and her.

12. On or about December 15, 2003, Keller called Plaintiff at home and instructed her not to report to Defendant Allen's plant any longer.

13. Whiteman did not suffer any adverse employment action by Defendant Bennett

## IV.   STATEMENTS OF THE ISSUES OF FACT THAT THE PARTIES CONTEND REMAIN TO BE LITIGATED:

### A.   Plaintiff's issues of fact

1.   Whether Defendant Allen's Family Foods was also Plaintiff's "employer" under the jurisdiction of § 715.

2.   Whether Defendant Allen's Family Foods or Bennett Detective & Protective Agency first sought to transfer Plaintiff's employment or whether they jointly made the decision.

3.   Whether Defendants Allen's and Bennett, through their agents, including Miller, Keller and Habicht, discriminated against Plaintiff because she was a female.

4.   Whether Defendants Allen's and Bennett, through their agents, including Miller, Keller and Habicht, discriminated against Plaintiff because of her race.

5.   Whether Defendants' transfer of Plaintiff from her full-time position as supervisor to a part-time position amounted to discriminatory discharge.

6.   Whether Defendant Allen's, through its employee and agent, Greg Miller, made false representations about Plaintiff to other employees of Defendant Allen's.

7.   Whether the fact that Plaintiff was demoted from her position as a supervisor while her co-worker Joe Whiteman (who attacked Plaintiff), suffered no adverse employment action amounts to discrimination against Plaintiff on the basis of her race and sex.

8.   Whether Greg Miller, as an agent of Defendant Allen's made false oral statements about Plaintiff's work performance to agents of Defendant Bennett.

9.   Whether Miller knew the statements he made to be false when he made them and whether he made such statements with actual malice.

10. Whether such statements constitute tortious interference with Plaintiff's right to continued employment with Defendant Bennett.

### B.    Defendant Bennett's issues of fact

1. Whether Plaintiff can establish a *prima facie* case of discrimination against Bennett based on race and/or sex by establishing an adverse employment action resulting in a constructive discharge.

2. Whether Bennett had a legitimate non-discriminatory purpose for transferring Plaintiff from Allen's site.

3. Whether Bennett's stated reason for transferring Plaintiff from the Allen's site was pretextual.

4. In the event Plaintiff establishes a claim of discrimination against Bennett, whether plaintiff suffered any actual damages and, if so, the nature and extent of those damages.

### C.    Defendant Allen's issues of fact

1. Whether Plaintiff filed a Complaint with the Delaware Department of Labor claiming race or sex discrimination against Defendant Allen's.

2. Whether on December 12, 2003 Mr. Miller called Bennett to inform them that there was an internal conflict between Bennett's staff that they needed to resolve, and "deal with it." Whether the purpose of Mr. Miller's call was to make them aware of the situation that occurred when the State Police were there that seemingly created a called to the plant and created a disruptive environment. Whether Mr. Miller wanted to make sure that the disruption did not happen again. Whether either Mr. Habicht or Mr. Keller offered to make a change, referring to transferring Ms. Nichols from Allen's at their meeting on December 13, 2003 and whether Mr. Miller agreed.

3. Whether Plaintiff was an employee of Allen's.

4. Whether Plaintiff exhausted her administrative remedies with respect to her race and sex claims against Defendant Allen's as required by federal and state law.

5. Whether Mr. Miller was responsible only for approving the payments for Bennett's invoices for the Harbeson plant and was generally Bennett's point of contact.

6. Whether Ms. Nichols was stationed at Allen's Harbeson plant for the majority of her employment.

7. Whether Ms. Nichols was an at-will employee of Bennett and did not have a contract of employment.

8. Whether Plaintiff can state a claim for the implied covenant of good faith and fair dealing when it was not alleged in the complaint.

9. Whether Ms. Brittingham's testimony that Mr. Miller did not discuss the Plaintiff with her precludes Plaintiff's claim of defamation.

10. Whether Mr. Miller had a role in Allen's decision to contract with Bennett for its security services.

11. Whether Mr. Miller had a role in hiring Ms. Nichols.

12. Whether Mr. Miller was responsible for supervising or overseeing Ms. Nichols in any capacity beyond merely having contact with her on a daily basis.

13. Whether, after Ms. Nichols called the police, she called Mr. Habicht to inform him of the incident and the fact that she had called the police.

14. Whether Mr. Habicht told Ms. Nichols to let the police handle the matter.

15. Whether, when Mr. Miller learned that the police were on Allen's property, he left his office for the security post and greeted the State Trooper.

16. Whether, on the morning of December 12, 2005 Keller and Habicht met with Miller at Defendant Allen's Harbeson plant and Ms. Nichols was not present at the meeting.

17. Whether Mr. Miller was aware of what happened to Ms. Nichols after she completed her work week at Allen's.

18. Whether Ms. Nichols completed her workweek at Allen's and was transferred.

19. Whether Mr. Miller asked Ms. Nichols was what going on and whether she provided him a summary of an alleged altercation between Mr. Whiteman and her with the State Trooper present.

20. Whether Ms. Nichols explained what had allegedly happened to Mr. Miller and whether Mr. Miller thanked the State Trooper for coming out and the Trooper assured Mr. Miller that everything was handled

21. Whether the State Trooper and Mr. Miller left the security post concurrently.

22. Whether Mr. Miller spoke to Mr. Whiteman about the alleged altercation between Plaintiff and Mr. Whiteman.

23. Whether Ms. Nichols has any knowledge of what was discussed at the meeting between Keller, Habicht and Miller on December 12, 2005.

24. Whether Mr. Keller and Mr. Habicht were aware of the incident and the details of the altercation between Plaintiff and Whiteman before the meeting on December 12, 2005.

25. Whether Mr. Miller's primary concern for requesting Plaintiff's transfer was the police being called to the plant without his knowledge and that he found the police presence disruptive to plant operations.

26. Whether Bennett discussed with Mr. Miller its future plans for Ms. Nichols beyond the fact that she was being transferred.

27. Whether Mr. Miller asked Bennett to terminate Ms. Nichols, and whether he threatened to terminate Allen's business with Bennett if Bennett refused to transfer Ms. Nichols.

28. Whether Mr. Keller offered Ms. Nichols a position at Perdue's plant in Milford, DE.

29. Whether Ms. Nichols was next offered a position and worked briefly at the Georgetown Family Courthouse.

30. Whether Ms. Nichols took off for Christmas and resigned shortly thereafter.

31. Whether Ms. Nichols last day of employment with Bennett was January 19, 2004.

32. Whether Ms. Nichols knows of anything that Mr. Miller said to Bennett that she would consider to be a false statement.

33. Whether Ms. Nichols initially accepted the position at the Perdue Plant in Milford, and whether she called out sick and could not attend training.

34. Whether Bennett was forced to assign someone else to fill the position at the Perdue plant.

35. Whether Ms. Nichols' employment with Bennett was terminated.

36. Whether Mr. Miller ever spoke to Plaintiff about the altercation between her and Mr. Whiteman.

37. Whether Ms. Nichols began a position as a Certified Nursing Assistant (CNA) at Milford Center on January 19, 2004. Whether the CNA position paid $7.00 per hour during the training and $9.35 per hour thereafter compared to the $7.00 per hour she made at Bennett.

8

38. Whether Linda Fooks (African-American Female) replaced Ms. Nichols as the Security Supervisor at the Harbeson plant.

## V.    STATEMENTS OF THE ISSUES OF LAW THAT THE PARTIES CONTEND REMAIN TO BE LITIGATED:

### A.    Plaintiff's issues of law:

None other than those set forth in Plaintiff's Response in Opposition to Defendants' Motions for Summary Judgment.

### B.    Defendant Bennett's issues of law:

None other than those set forth in Bennett's summary judgment motion.

### C.    Defendant Allen's issues of law:

1. Whether Plaintiff can assert a claim for violations of the Delaware Discrimination Act ("DDA") against Defendant Allen's when her Complaint allegations are **solely** directed at Defendant Bennett.

2. Whether Plaintiff can state a claim for violations of the DDA against Defendant Allen's when Plaintiff never filed a Charge of Discrimination against Allen's with the Delaware Department of Labor, as required by the DDA. See § 712(b) of the DDA.

3. Whether Plaintiff is able to establish Allen's intent to discriminate against her on the basis of race in order to establish the second element of her prima facie case for §1981 race discrimination. *Brown v. Philip Morris Inc.*, 250 F.3d 789, 797 (3d Cir. 2001).

4. Whether Plaintiff's belief that Mr. Miller discriminated against her based on her race because Mr. Miller allegedly allowed Mr. Whiteman (Caucasian male) to provide his version of the events as to what transpired between him and Ms. Nichols, while not providing her the same opportunity constitutes race discrimination prohibited by §1981 when Ms. Nichols admits that

she does not know whether Mr. Miller ever spoke to Mr. Whiteman about the incident, and according to Mr. Miller, he only spoke to Ms. Nichols about the altercation; he never discussed the incident with Mr. Whiteman.

5. Whether Ms. Nichols can state a claim for §1981 race discrimination against Defendant Allen's based on the claims that she was unfairly disciplined (transferred) as result of the incident with Mr. Whiteman while Mr. Whiteman (Caucasian) was not similarly disciplined where Plaintiff admits that Defendant Bennett reassigned her, not Defendant Allen's.

6. Whether Mr. Miller's alleged request to have Plaintiff transferred from the Harbeson plant can be considered race discrimination when there is no evidence that Mr. Miller's request was based on Ms. Nichols' race and where the record establishes that Mr. Miller requested the transfer because of the disruptive environment Ms. Nichols' call to the police caused and her failure to notify him of the call.

7. Whether Mr. Miller's request to transfer two other Security Officers in that past, one of whom, Daniel Steele, was Caucasian undermines Ms. Nichols' claim that Mr. Miller's alleged request to have Plaintiff transferred was racially motivated in violation of §1981.

8. Whether the fact that Ms. Nichols' supervisory position was ultimately filled by another African-American female, Linda Fooks, fails to support Plaintiff's assertions that the decision to transfer her was racially motivated in violation of §1981.

9. Whether Plaintiff has established a claim for tortious interference with a contract where she must show: (1) the existence of a contract, (2) about which the interferer knew and (3) an intentional act that is a significant factor in causing the breach of such contract (4) without

justification (5) that causes injury. *Irwin & Leighton Inc. v. W.M. Anderson Co.*, 532 A.2d 983, 992 (Del. Ch. 1987).

10. Whether an at-will employee can state a claim for tortious interference when one of the elements of the cause of action requires Plaintiff Nichols to demonstrate the existence of a contract. Plaintiff had no contract with which to interfere. *See Leblanc v. Redrow*, 2001 WL 428686 *2 (Del. Super. 2001); *Rizzo v. E.I. Du Pont De Nemours & Co.*, 1989 WL 135651 *1 (Del. Super. 1989) (Where an employee's employment is at-will, there is no cause of action for tortious interference with contractual relations) *Cf. Nelson v. Fleet Natl' Bank et al*, 949 F. Supp. 254, 259-263 (D. Del. 1996)(declining to adopt unreported opinions of State Court in absence of binding State law).

11. Whether Plaintiff can establish the second element of tortious interference when she cannot show that Mr. Miller had any knowledge of a contract between Plaintiff and Defendant Bennett.

12. Whether Plaintiff is able to show that Mr. Miller engaged in an intentional act that is a significant factor in causing the breach of an employment contract in support of her tortious interference claim. Even when taking the facts most favorable to the Plaintiff, Mr. Miller, at worst, only asked that Ms. Nichols be transferred from Allen's Harbeson plant. Mr. Miller, Mr. Habicht and Mr. Keller met to discuss Mr. Miller's concern that the police were called to the plant without his knowledge and that it caused an environment disruptive to plant operations. The testimony is clear that Mr. Miller did not opine on the incident, assess blame, or make any comments regarding Ms. Nichols, other than his alleged request that she be transferred. Mr. Miller never asked for Ms. Nichols to be terminated, he did not threaten to terminate Allen's

business with Bennett if Bennett refused to transfer Ms. Nichols, and in fact, Ms. Nichols was not terminated, she resigned.

13. Whether Plaintiff can establish that Mr. Miller's alleged request to have her transferred was without justification in support of her tortious interference claim. Mr. Miller was justified in voicing his concern that the State Police were called and caused a disruptive environment at the plant. A legitimate complaint to a plaintiff's employer cannot be "tortious." *Leblanc v. Redrow*, 2001 WL 428686 *2 (Del. Super. 2001) (a customer is entitled to voice a grievance about an employee of a business).

14. Whether Plaintiff is able to show that she was injured in support of her tortious interference claim. Plaintiff alleges in her Complaint that she has suffered damages, "including but not limited to, physical and emotional injury, pain and suffering, mental anguish, humiliation and lost wages." Complaint ¶ 31. Ms. Nichols' deposition testimony does not support that she suffered **any** damages as result of Mr. Miller's conduct. After being transferred, Ms. Nichols was offered a position at the Perdue plant. Thereafter she worked briefly at the Georgetown Family Court. Plaintiff then subsequently **resigned**. When she left Bennett she immediately found a position as a Certified Nursing Assistant (CNA) at Milford Center. The CNA position paid $7.00 per hour during the training and $9.35 per hour thereafter, compared to the $7.00 per hour she made at Bennett. Since she was making more money as a CNA than she did in her position with Bennett, she cannot show she was economically injured. Additionally, there was no evidence that Ms. Nichols suffered physical or emotional injury, mental anguish or humiliation. *Griffin Corporate Services, LLC., v. Jacobs et. al.*, 2005 WL 2000775 *4-5 (Del.

Ch. 2005) (no tortious interference where plaintiffs failed to allege any breach of the employment

agreements or support their conclusory allegations of resultant damages).

15. Whether Plaintiff can establish a case of defamation by showing: (1) a defamatory

communication; (2) publication to a third party; (3) a communication referring to the plaintiff; (4)

a third party's understanding of the communication's defamatory character; and (5) injury.

*Spence v. Funk*, 396 A.2d 967 (Del. 1978); Restatement (Second) of Torts § 558 (1977).

16. Whether Plaintiff can show a defamatory statement was made when she has offered

no direct evidence of a communication. Plaintiff's allegations regarding a conversation between

Plaintiff and Ms. Brittingham concerning Mr. Miller's alleged statements about Plaintiff's work

performance were denied by Ms. Brittingham. Mr. Miller similarly denies that any such

statements were ever made. *See Davis v. West Center City Neighborhood Planning Advisory*

*Committee, Inc.*, 2003 WL 908885 *2 (Del. Super. 2003) (no defamation where plaintiff only

offered his own bare and incomplete assertions of defamation and failed to offer a third party to

whom a defamatory statement was made); *Bloss v. Kershner and Labware Inc.*, 2000 WL

303342 *6 (Del. Super. 2000) (no defamation where plaintiff failed to establish a defamatory

statement that was made by the defendant to a third party; testimony from a third party is the

whole basis for a defamation claim); *Williams v. L.H. Howe*, 2004 WL 2828058 *4 (Del. Super.

2004) (same).

17. Whether Plaintiff can state a case for defamation where she cannot show any damages.

After resigning from Defendant Bennett, Ms. Nichols immediately retained another position with

Milford Center as a CNA making more money than she did while she worked with Bennett.

## VI.    EXHIBITS:

### A.    Plaintiff's Exhibits:

1. Bennett Security Agreement with Allen's Family Foods.

2. Resume of Plaintiff Robin Nichols.

3. Bennett Security Service Handbook.

4. Relevant Admissions of Bennett in their Position Statement presented to the Delaware Department of Labor.

5. W-2 Forms for Robin Nichols, 2002.

6. W-2 Forms for Robin Nichols, 2003.

7. W-2 Forms for Robin Nichols, 2004.

8. W-2 Forms for Robin Nichols, 2005

9. Summary of Lost Wages for Robin Nichols.

### B.    Defendant Bennett's objections to Plaintiff's Exhibits:

Bennett joins in Allen's objection to Plaintiff's Exhibit No. 9.

### C.    Defendant Allen's objections to Plaintiff's Exhibits:

Defendant Allen's objects to Plaintiff's Exhibit 9. Plaintiff was asked in discovery (Interrogatory No 9) to itemize with particularity all damages that she seeks in this action and to set forth the manner in which those damages were calculated. Plaintiff failed to present a substantive response. Plaintiff also was asked in Defendant Bennett's request for Production of Documents No. 8 to supply all documents that "relate or refer to, or evidence any damages" that she sustained as result of the Defendants' conduct. Plaintiff failed to submit any documents other than copies of her W-2s and pay stubs. Therefore, Plaintiff should be precluded from presenting an exhibit summarizing lost wages for Plaintiff at trial.

### D.    Defendant Bennett's Exhibits:

1. Condition of Employment signed by Plaintiff.

2. Bennett's position statement presented to Delaware Department of Labor.

### E.    Plaintiff's objections to Defendant Bennett's Exhibits:

14

Plaintiff objects to Defendant Bennett's Exhibit 2 to the extent that it is not part of Plaintiff's exhibit constituting Defendant Bennett's admissions.

### F.     Defendant Allen's Exhibits:

1.  Condition of Employment signed by Plaintiff

2.  Deposition transcript of Robin Nichols

3.  Deposition transcript of Greg Miller

4.  Deposition transcript of Mark Habicht

5.  Deposition transcript of Wayne Keller

6.  Deposition transcript of Valerie Brittingham

7.  Plaintiff's Complaint

8.  Plaintiff's Response to Defendant Bennett's First Request for Production of Documents

9.  Plaintiff's Answers to Defendant Allen's First Set of Interrogatories

10. Defendant Allen reserves the right to introduce any of the Exhibits identified by Plaintiff above.

This list constitutes a preliminary list of Defendant Allen's pre-marked exhibits, other than those to be used for rebuttal or impeachment purposes. Defendant Allen's reserves the right not to introduce any of the exhibits listed above, to introduce only parts of the exhibits listed above, and/or to introduce additional exhibits, which cannot be identified until the time of trial, for impeachment or rebuttal purposes.

### G     Plaintiff's objections to Defendant Allen's Exhibits:

Plaintiff objects to Defendant Allen's Exhibits 2-6 as depositions do not constitute admissible exhibits. Further, even verbal presentations of depositions are admissible only for limited purposes and Plaintiff objects to any such presentation until each page and line has been identified for review and response. Plaintiff also objects to Defendant Allen's Exhibit 7 as Plaintiff's Complaint is irrelevant as it does not constitute a statement of the plaintiff because it was not verified. Plaintiff further objects to Exhibit 8 as Plaintiff's response was not verified. Plaintiff

objects to Exhibit 9 and reserves all objections on all grounds until Defendant identifies the specific answer they seek to offer into evidence.

## VII.  WITNESSES:

### A.    Plaintiff's Witnesses:

1. Plaintiff

2. Raymond Gregory Miller (as on cross)

3. Mark Habicht (as on cross)

4. Wayne Keller (as on cross)

5. Valerie Brittingham

6. Linda Fooks

7. Diane Stokes

### B.    Defendant Bennett's Witnesses:

1. Plaintiff

2. Wayne Keller

3. Mark Habicht

4. Greg Miller

5. Valerie Brittingham

6. Joe Whiteman

7. Linda Fooks

8. Diane Stokes

### C.    Defendant Allen's Witnesses:

1. Joe Whiteman

2. Plaintiff (as on cross)

3. Valerie Brittingham

4. Linda Fooks (as on cross)

5. Diane Stokes (as on cross)

6. Greg Miller

7. Mark Habicht (as on cross)

8. Wayne Keller (as on cross)

Defendant reserves the right not to call any witness listed above and to call rebuttal witnesses previously identified or who cannot be identified until the time of trial. If a witness becomes unavailable for trial, Defendant hereby reserves the right to designate portions of such witness' deposition testimony to be read into the record at trial.

## VIII.   BRIEF STATEMENT OF WHAT PLAINTIFF EXPECTS TO PROVE IN SUPPORT OF HER CLAIM, INCLUDING DETAILS OF DAMAGES SOUGHT AS OF THIS DATE:

Defendants subjected Plaintiff to discrimination on the basis of her race and sex. Defendants acted in concert in wrongfully demoting Plaintiff and transferring her from her full-time position as a supervisor to a part-time position as a security guard.

The wrongful acts committed by Defendants, as stated hereinabove, were committed in bad faith, and Defendants had no reasonable grounds for transferring Plaintiff from Allen's plant. As a direct result of the wrongful and discriminatory conduct of Defendants, Plaintiff has suffered lost wages and other damages.

Defendants further acted in concert in discriminating against Plaintiff on the basis of her race and sex.

Defendant Allen's Family Foods, through its agent Greg Miller, defamed Plaintiff when Greg Miller made disparaging comments to a number of Defendant Allen's employees about Plaintiff's work performance.

Defendant Allen's Family Foods, Inc., through its agent Greg Miller, tortiously interfered with Plaintiff's employment when it made false oral statements to Defendant Bennett's agents, Keller and Habicht, and when Mr. Miller requested that Plaintiff be transferred from the Allen's plant.

Defendant Bennett's claim that it was unable to reassign Plaintiff was pretextual and was an attempt to force Plaintiff to resign from her position and to mask Defendants' discrimination against Plaintiff based on her race and sex. Defendants' transfer and demotion of Plaintiff were

successful in that they resulted in Plaintiff's resignation from her position at Bennett's.
Defendants actions, therefore, resulted in Plaintiff's constructive discharge.

The damages sought by Plaintiff include any and all damages provided by 19 Del. C. § 710
et.seq. and 42 U.S.C. § 1981 and all other applicable remedies available under the law, including
but not limited to, lost wages, salary, employment benefits, back pay, front pay, interest, liquidated
damages, and any and all other pecuniary damages; back pay, including interest; reinstatement, if
feasible, or in the alternative, front pay; compensatory damages, including damages for mental and
emotional pain and suffering; punitive damages; pre-judgment and post-judgment interest,
attorney's fees and costs; and any other relief, whether legal or equitable, that this Court deems just
and appropriate.

## IX.    STATEMENTS OF DEFENSE:

### A.    Defendant Bennett's Defense

Plaintiff cannot prove a *prima facie* case of race or sex discrimination by Bennett. She was
not subjected to an adverse employment action by Bennett. Rather, she was transferred to another
location. She was not constructively discharged. Rather, she voluntarily resigned to take a higher
paying position. The circumstances of her transfer and departure from Bennett do not give rise to
an inference of discrimination as she was replaced at Allen's by a black female.

Bennett had a legitimate, non-discriminatory reason for transferring Plaintiff - its customer,
Allen's, requested that it do so.

Plaintiff cannot sustained her burden of proving Bennett's reason for transferring her was a
pretext for unlawful discrimination.

Plaintiff has sustained no special damages as a result of her departure from Bennett.

### B.    Defendant Allen's Defense:

Plaintiff cannot sustain her allegations against Defendant Allen's. With respect to Ms.
Nichols' claim that Allen's discriminated against her in violation of §1981, she failed to produce
any evidence that Allen's had an intent to discriminate against her on the basis of her race.

Ms. Nichols' tortious interference claims must similarly fail. Plaintiff cannot establish any of the elements for her claim that Greg Miller, Human Resources Manager for Allen's, tortiously interfered with her employment contract with Bennett. Specifically, Ms. Nichols cannot demonstrate the existence of a contract for employment. Even if she had an employment contract, she admits that Mr. Miller would have no knowledge of the contract. She likewise cannot establish an intentional act on the part of Mr. Miller, and even if his request for a transfer is deemed sufficient to constitute an intentional act, Ms. Nichols cannot show that his request was unjustified. Finally, Ms. Nichols cannot show that she suffered damages as result of Mr. Miller's actions. Thus, Plaintiff fails to establish any of the elements for a claim of tortious interference and, therefore, this claim must similarly fail.

Plaintiff's defamation allegations must also be dismissed. Ms. Nichols failed to present any evidence of a defamatory communication. No claim for defamation can lie without a defamatory communication to a third party.

It is undeniable that the allegations in Plaintiff's Complaint regarding violations of the Delaware Discrimination Act ("DDA"), are **solely** directed at Defendant Bennett. Plaintiff alleges in Paragraph 24 of Count I of her Complaint that "Defendant Bennett discriminated against Plaintiff with regard to the terms and conditions of her employment on the basis of her race and sex in violation of Del. Code Ann. Tit. 19, §710 et seq." Count I is void of any reference to Allen's. Further, Plaintiff never filed a Charge of Discrimination against Allen's with the Delaware Department of Labor, as required by the DDA.

## X.    STATEMENTS OF COUNTERCLAIMANTS OR CROSS-CLAIMANTS:

There are no counterclaims or cross-claims in this case.

XI.    **AMENDMENTS TO PLEADINGS**

    **A.**    <u>**Plaintiff**</u>**:**

None.

    **B.**    <u>**Defendant Bennett**</u>**:**

None.

    **C.**    <u>**Defendant Allen**</u>**:**

None.

XII.    **CERTIFICATION OF GOOD FAITH SETTLEMENT NEGOTIATIONS:**

    The undersigned hereby certify that three-way communication has occurred between persons having authority in a good faith effort to explore the resolution of this controversy by settlement.

XIII.    **OTHER MATTERS DEEMED APPROPRIATE BY THE PARTIES:**

    **A.**    <u>**Plaintiff**</u>**:**

None.

    **B.**    <u>**Defendant Bennett**</u>**:**

None.

    **C.**    <u>**Defendant Allen**</u>**:**

None.

XIV.    **THIS ORDER SHALL CONTROL THE SUBSEQUENT COURSE OF THE ACTION UNLESS MODIFIED BY THE COURT TO PREVENT MANIFEST INJUSTICE.**

SCHMITTINGER & RODRIGUEZ, P.A.

BY:  /s/ William D. Fletcher, Jr.
     WILLIAM D. FLETCHER, JR., ESQ.
     (I.D. #362)

BY:  /s/ Noel E. Primos
     NOEL E. PRIMOS, ESQ.
     (I.D. #3124)

BY: /s/ Adam C. Gerber
    ADAM C. GERBER
    (I.D. #4653)
     414 S. State Street
    P.O. Box 497
    Dover, DE 19901
    (302) 674-0140
    *Counsel for Plaintiff*

MURPHY SPADARO & LANDON

BY:  /s/ Roger D. Landon
     ROGER D. LANDON
     (I.D. #2460)
     1011 Centre Road, #210
     Wilmington, DE 19805
     *Counsel for Bennett Detective &
     Protective Agency, Inc.*

CONNOLLY BOVE LODGE HUTZ, LLP

BY: /s/ Matthew F. Boyer
    MATTHEW F. BOYER, ESQ
    (I.D. # 2564)
    1007 N. Orange Street, Nemours Bldg.
    Wilmington, DE 19899

SHAWE & ROSENTHAL, LLP

BY:    /s/ Arthur M. Brewer
       ARTHUR M. BREWER
       LAURA A. PIERSON SCHEINBERG
       20 S. Charles Street, 11th Floor
       Baltimore, MD 21201

*Counsel for Allen's Family Foods, Inc.*

SO ORDERED on _____, 2006.

_____
THE HON. KENT A. JORDAN