**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

---

No. 06-3191

---

ROBIN D. NICHOLS, Appellant,

v.

BENNETT DETECTIVE & PROTECTIVE AGENCY, INC.,
and ALLEN'S FAMILY FOODS, INC., Appellees.

---

On Appeal from the United States District
Court for the District of Delaware
(D.C. Civil No. 05-55)
District Judge: Honorable Kent A. Jordan

---

Submitted Under Third Circuit LAR 34.1(a)
June 8, 2007

Before: SMITH and GREENBERG, *Circuit Judges*,
and POLLAK,[*] *District Judge*.

(Opinion filed:  August 28, 2007 )

---

OPINION

---

POLLAK, District Judge:

---

[*] Honorable Louis H. Pollak, District Judge for the United States District Court of the Eastern District of Pennsylvania, sitting by designation.

Plaintiff-appellant Robin Nichols ("Nichols") appeals from a May 31, 2006 final order of the United States District Court for the District of Delaware granting summary judgment in favor of defendant-appellees Bennett Detective & Protective Agency, Inc. ("Bennett") and Allen's Family Foods, Inc. ("Allen's"). Nichols's suit (1) alleged that her employer, Bennett, and Allen's discriminated against her on the bases of her race and sex, in violation of state and federal law, and (2) alleged related state tort claims against Allen's. Nichols argues that the District Court erred in granting summary judgment because genuine issues of material fact remained in dispute. We have jurisdiction under 28 U.S.C. § 1291 and will affirm.[1]

## I.

### A.

Nichols, an African-American woman, worked as a security guard and supervisor for Bennett from 2001 to January 2004. During the time relevant to this case, Nichols was a supervisor stationed at Allen's plant in Harbeson, Delaware. On December 11, 2003, Nichols had an altercation with one of her subordinates, Joshua Whiteman, a white male. The altercation involved shoving and the summoning of police to the scene, but no charges were filed and no one was arrested. As a result of the altercation, Bennett removed Nichols from her post at Allen's Harbeson plant and re-assigned her to part-time

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367, and 1441.

positions at other locations serviced by Bennett's.[2] Whiteman was not disciplined. (The District Court found, for the purposes of the summary judgment inquiry, that the altercation was caused by Whiteman.) When Bennett had not reassigned her to a full-time position after several weeks, Nichols gave two weeks notice of her resignation on January 5, 2004; her last day of employment with Bennett was January 19, 2004. Nichols was replaced at Allen's by an African-American woman.

**B.**

Nichols filed suit in Delaware Superior Court in December 2004, alleging that (1) Bennett discriminated against her on the basis of race and gender in violation of the Delaware Discrimination Act ("DDA"), Del. C. Ann. tit. 19, § 710, *et seq.*; (2) Bennett and Allen's discriminated against her on the basis of race in violation of 42 U.S.C. § 1981; (3) Allen's tortiously interfered with her employment contract with Bennett; and (4) that Allen's defamed her by making false oral statements about her. The suit was removed to federal court in February 2005.

---

[2] The District Court found that there was an issue of fact as to the exact chain of events that led to Nichols's removal from her post at Allen's. However, the District Court found that this factual dispute was not a material one, because its resolution would not affect, one way or another, the question of whether Nichols could prove her claim.

The factual dispute involved the question of whether Allen's insisted that Nichols be removed from her post, or whether Bennett, perceiving that Allen's was displeased, voluntarily removed Nichols from her post. Managers at Bennett testified in depositions that it was Raymond Miller, the manager of human resources for Allen's Harbeson plant, who first suggested that Nichols be transferred. Miller, on the other hand, acknowledged that he was upset about the altercation and the dispatching of police to the plant, but testified that it was the Bennett managers who "suggested the transfer[,] and that he simply agreed."

On May 31, 2006, the District Court granted summary judgment in favor of Bennett and Allen's on all claims:

As to Nichols's § 1981 discrimination claims against both Allen's and Bennett, the District Court found (a) that Nichols could not establish a prima facie case of discrimination, and (b) that, even if Nichols could establish a prima facie case, she "ha[d] come forward with no evidence" to demonstrate that the legitimate, non-discriminatory explanations proffered by Allen's and Bennett for their actions were, in fact, pretexts for discrimination.

As to Nichols's DDA claim against Bennett, the District Court assumed, *arguendo*, that Nichols had established a prima facie case, but again found that Nichols could not demonstrate that Bennett's proffered explanation for transferring her—that she was transferred to placate a displeased client, namely, Allen's—was pretextual. The District Court explained that "[t]his is true as to discrimination on the basis of both her race and her sex, as Bennett replaced her with an African-American woman and had previously transferred a white male and a black male from Allen."

Finally, as to Nichols's tort claims against Allen's, the District Court found (a) that Nichols had "presented no evidence" to support a finding in her favor on several necessary elements of her claim for tortious interference with contract; and (b) that Nichols's defamation claim failed because it was based solely on inadmissible hearsay evidence. The hearsay evidence in question consisted of statements allegedly made to Nichols by Valerie Brittingham, an Allen's employee. According to Nichols, Brittingham

told Nichols that, in the wake of Nichols's altercation with Whiteman, Raymond Miller, the manager of human resources for Allen's Harbeson plant, was "telling everybody" that Nichols had caused the altercation and that Nichols was incapable of doing her job. ER 49. Brittingham also allegedly stated that Miller was "a racist." ER 49. In deposition testimony, Brittingham stated that she did not recall the conversation and denied making the statements.

## II.

"We exercise plenary review over the District Court's grant of summary judgment." *See In re Flat Glass Antitrust Litig.*, 385 F.3d 350, 356 n.6 (3d Cir. 2004). "[W]e review the district court's decisions to admit or exclude evidence for abuse of discretion, although our review is plenary as to the interpretation or application of a legal standard underlying such a decision." *Id.* at 372 (internal quotation marks omitted).

## III.

In support of her argument that the District Court erred in granting summary judgment, Nichols claims: (1) that the District Court erroneously applied the summary judgment standard because it "failed to construe the facts in a light most favorable to Plaintiff[], and . . . erroneously determined that certain disputed facts were immaterial"; (2) that the District Court erroneously excluded Nichols's account of Valerie Brittingham's statements from the summary judgment record on hearsay grounds; and (3) that "[t]he lower court erred in considering irrelevant and inadmissible evidence of Bennett's treatment of other employees outside the protected class."

Below, we first consider Nichols's evidentiary objections and decide that the District Court did not abuse its discretion in determining what evidence it would consider as part of the summary judgment record. We then consider Nichols's more general objection to the District Court's application of the summary judgment standard and find that the District Court did not err in granting judgment as a matter of law in favor of the defendants.

### A.

Nichols attempted to support both her discrimination and defamation claims with her own testimony about out-of-court statements allegedly made by Allen's employee Brittingham. The District Court refused to consider this evidence as part of the summary judgment record because it found that "Nichols's testimony about what Brittingham told her" was hearsay which could not be produced in an admissible form at trial. *See* Fed. R. Civ. P. 56(c), (e); *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990).[3] On appeal, Nichols argues that the District Court's refusal to consider the hearsay statements was erroneous.[4]

---

[3] Brittingham denied making the statements. Therefore, unlike *J.F. Feeser*, this was not a case where "the out-of-court declarant could later present the evidence through direct testimony." *J.F. Feeser*, 909 F.2d at 1542.

[4] Nichols, citing *Ansell v. Green Acres Construction Co.*, 347 F.3d 515, 519 (3d Cir. 2003), contends that the purported error involved "interpretation of the rules of evidence," and that we therefore review the District Court's determination de novo. We disagree and will review the District Court's decision only for abuse of discretion. *See id.* ("We exercise plenary review over the District Court's interpretation of the rules of evidence; however, assuming that the evidence could be admissible in some circumstances, we review the District Court's decision [whether] to admit that evidence for abuse of

Nichols attempts to skirt the apparent hearsay nature of the statements by arguing that Brittingham's statements are admissible as statements of a party opponent (i.e., not hearsay) because they are statements by Allen's "agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R. Evid. 801(d)(2)(D).  Nichols cites to a single, unreported case from the Delaware District Court, which holds that a statement can concern "a matter that was within the scope of [an employee's] employment or agency" even if the employee was not expressly authorized to make those statements.  *Callaway Golf Co. v. Dunlop Slazenger*, Civ. No. 01-669, 2004 U.S. Dist. LEXIS 15498, at *6 (D. Del. July 28, 2004).  True as this may be, it does not establish that the District Court abused its discretion in refusing to consider Brittingham's out-of-court statements in this case.

In *Callaway*, the District Court found that statements in a letter were not hearsay if offered against Callaway because the declarant "was employed by Callaway at the time he sent the letter, and the letter . . . bear[s] on things that appear to be within the scope of his employment, i.e., Callaway's research and development efforts on new golf balls."  *Id.* at *5–6.[5]  By contrast, Brittingham was employed by Allen's as a "time and attendance specialist."  To the extent the record reflects anything about Brittingham's job duties, it

---

discretion.").

[5] The court in *Callaway* noted, in the alternative, that the hearsay statements contained in the letter in question were likely admissible under Federal Rule of Evidence 807, because the letter possessed "important and highly persuasive indicia of reliability." *Callaway*, 2004 U.S. Dist. LEXIS 15498, at *7 n.1.

reflects that she was charged with the relatively limited task of keeping track of employee hours. Brittingham's alleged statements were (a) that Miller was "a racist"; and (b) that Miller had stated that Nichols was incompetent and that the altercation between Nichols and Whiteman had been Nichols's fault. A reasonable reviewer of the record could conclude that these statements did not concern matters within the scope of Brittingham's employment. Therefore, the District Court did not abuse its discretion in declining to consider the statements. *See Ansell v. Green Acres Constr. Co.*, 347 F.3d 515, 519 (3d Cir. 2003) ("We will not disturb a trial court's exercise of discretion [in making evidentiary rulings] unless no reasonable person would adopt the district court's view." (internal quotation marks omitted)).[6]

### B.

We now turn to Nichols's claim that the District Court erred in granting summary judgment in favor of Bennett and Allen's on all counts of her complaint. Upon de novo review, we apply the same standard as the district court. *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 466 (3d Cir. 2005). Summary judgment is proper only if it appears "that there

---

[6] Nichols's other evidentiary objection is that the District Court erred by considering evidence that Bennett had previously transferred two other employees—a black male and a white male—at Allen's request, because such evidence constituted prohibited "evidence of prior acts . . . 'to prove the character of a person to show action in conformity therewith.'" (quoting Fed. R. Evid. 404(b)). The evidence in question was cited by defendants in support of summary judgment, *see* ER 256, but Nichols failed to raise the 404(b) issue before the District Court. We decline to address the merits of this issue raised for the first time on appeal. *See Delaware Nation v. Pennsylvania*, 446 F.3d 410, 416 (3d Cir. 2006) ("Absent exceptional circumstances, this Court will not consider issues raised for the first time on appeal.").

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  "[T]he non-moving party . . . is entitled to every favorable inference that can be drawn from the record." *Kautz*, 412 F.3d at 466.

As explained briefly below, without admissible evidence of Valerie Brittingham's alleged out-of-court statements, Nichols was left with very little evidence of either defamation or intentional discrimination, and we therefore conclude that the District Court did not err in granting summary judgment.

**1. Defamation claim**

As the District Court noted, Nichols's defamation claim against Allen's was dependent on Valerie Brittingham's alleged recounting of Raymond Miller's alleged defamatory statements.  Aside from Brittingham's statements, Nichols's offered no evidence of defamation.  Accordingly, because we conclude that the District Court did not abuse its discretion in excluding Brittingham's statements as hearsay, *see supra* Part III.A, we reach the further conclusion that the District Court did not err in granting summary judgment in favor of Allen's on Nichols's defamation claim.

**2. Discrimination under § 1981 and the DDA**

Claims under both § 1981 and the DDA are analyzed according to the familiar *McDonnell-Douglas* standard, and both require proof of discriminatory intent.  *See Desi's Pizza, Inc. v. City of Wilkes-Barre*, 321 F.3d 411, 425 (3d Cir. 2003) (proof of discriminatory intent required to state claim under § 1981); *Rizzitiello v. McDonald's*

*Corp.*, 868 A.2d 825, 830 (Del. Super. Ct. 2005) (stating same requirement under DDA).

As noted above, *see supra* Part I.B, the District Court found, as to each of Nichols's discrimination claims, that Nichols failed to establish a triable issue at the third step of the *McDonnell-Douglas* analysis—pretext.[7]

> At the third *McDonnell-Douglas* step,
>
> to defeat summary judgment when the defendant answers the plaintiff's prima facie case with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

The District Court correctly determined that, given the inadmissibility of Brittingham's statements, the only evidence in the summary judgment record to support an inference of discriminatory intent by either Allen's or Bennett was the fact that, in the wake of the December 11, 2003 altercation, "[Joshua] Whiteman was not transferred, while Nichols was." For the purposes of a summary judgment analysis we, like the District Court, assume the truth of this fact, and also assume that the altercation was wholly the fault of Whiteman. We are thus presented with a single incident where Bennett and/or Allen's treated a member of the protected class(es) differently from a non-

---

[7] As to some of the claims, the District Court also found that Nichols could not establish a *prima facie* case. *See supra* Part I.B. However, "we assume *arguendo* that the[ first two] steps have been satisfied and proceed to step three of the [*McDonnell-Douglas*] analysis." *Simpson v. Kay Jewelers*, 142 F.3d 639, 644 (3d Cir. 1998).

-10-

member of the protected class(es).  The District Court found this evidence insufficient to create a jury question on the issue of discriminatory intent.  We agree.  While such evidence is arguably sufficient to allow Nichols to make out a prima facie case of discrimination, it is not enough, standing alone, to support an inference of discriminatory intent "at the pretext stage where the factual inquiry into the alleged discriminatory motives of the employer has risen to a new level of specificity."  *Simpson v. Kay Jewelers*, 142 F.3d 639, 646 (3d Cir. 1998); *cf. id.* at 645 ("[T]he mere favorable treatment of one younger manager as compared to one older manager may not be sufficient to infer age discrimination.").

It is not "that evidence of the more favorable treatment of a single member of a non-protected group is never relevant, but rather that the evidence can not be viewed in a vacuum."  *Id.* at 646.  A court considering summary judgment must consider the whole record with a view toward deciding "whether the [employment] decision was motivated by the affected employee's [membership in a protected class]."  *Id.*  Considering the whole record in this case—including the facts that (a) Allen's had previously requested the transfer of two other security guards, a white man and a black man; and (b) Nichols's replacement was an African-American woman—the District Court concluded that no rational trier of fact could find that the legitimate nondiscriminatory reasons proffered by the defendants for their respective roles in removing Nichols from her placement at Allen's were merely pretexts for discrimination on the prohibited grounds of race or sex.  Having considered the same summary judgment record, we find no error in the District

-11-

Court's conclusion.

Viewed in the light most favorable to her, Nichols's evidence amounts to a showing of disparate treatment between Nichols and a white male employee on a single occasion. The incident in question, as far as the record shows, had no overt racial or sex-related content. Allen's and Bennett offered legitimate reasons for their actions. According to Allen's, whether or not the incident was caused by Nichols, it was disruptive and they wanted her out. And, as the District Court stated, Bennett argued that it "did nothing more than transfer Nichols to placate an angry client." Nichols does not point to evidence from which a rational fact-finder could (a) disbelieve these explanations, or (b) believe that the actions of Bennett or Allen's were more likely than not the product of racial or sex-based discrimination. *See Fuentes*, 32 F.3d at 764; *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108–109 (3d Cir. 1997) (en banc) ("[F]ederal courts are not arbitral boards ruling on the strength of 'cause' for [an adverse employment action]. The question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is discrimination." (internal quotation marks omitted)).

Accordingly, the District Court did not err in granting summary judgment in favor of Bennett as to Nichols's DDA claim and in favor of Bennett and Allen's as to Nichols's § 1981 claim.

### 3. Tortious interference with contract

Nichols's claim that Allen's tortiously interfered with her Bennett employment

-12-

contract required, *inter alia*, that she plead and prove damages.  *See AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 437 n.7 (Del. Super. Ct. 2005).  The District Court stated that:

> Nichols . . . presented no evidence that she was injured by her transfer, as is required to make out a claim of tortious interference with contract.  After being transferred, Nichols resigned from Bennett, and immediately started a new job making more money than she had made while working for Bennett.  Nichols leaves it to speculation that she suffered a loss during the brief period between her transfer and resignation.

Although Nichols challenges the District Court's conclusion that she could not establish other elements of tortious interference with contract (e.g., an intentional, unjustified act by Allen's that was a significant factor in causing Bennett to breach its employment contract with Nichols), Nichols does not challenge the District Court's conclusion that she had not pointed to any evidence of damages.  If the nature of Nichols's damages could be easily inferred from the record evidence (e.g., if she had been unemployed for an extended period after leaving Bennett), her failure to point to specific evidence might not be fatal.  But here, as the District Court noted, Nichols's own evidence established that, upon leaving Bennett, she immediately starting working for more money elsewhere.  Moreover, although Allen's brief on appeal argues in some detail that Nichols "is unable to show that she was injured," Nichols neglects to address the issue of damages, except to state, in passing, that "she has shown . . . damages, i.e.,  the loss of her full-time position."  This is insufficient in light of the evidence that upon "los[ing] . . . her full-time position," she immediately took another, better-paying

-13-

position.  *Cf. Griffin Corporate Servs., LLC v. Jacobs*, Civ. No. 396-N, 2005 WL 2000775, at *5 (Del. Ch. Aug. 9, 2005) (granting motion to dismiss tortious interference claim where plaintiff "failed to . . . support their conclusory allegation of . . . damages" with sufficient factual allegations).

* * * * *

For the reasons set forth above, the judgment of the District Court will be affirmed.